# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., <br><br><br>        Plaintiff, <br><br> v. <br><br> NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board, <br><br>        Defendants. | Case No.  1:24-cv-00001 |

## PROPOSED INTERVENORS' MOTION TO INTERVENE AND INCORPORATED MEMORANDUM OF LAW

# TABLE OF CONTENTS

**Page**

MOTION TO INTERVENE ......................................................................................... 1

I.     INTRODUCTION ............................................................................................. 1

II.    ISSUES IN DISPUTE ..................................................................................... 3

III.   BACKGROUND ............................................................................................. 4

IV.   ARGUMENT ................................................................................................... 7

     A.    Proposed Intervenors are Entitled to Intervene as of Right. .................................. 8

          1.    The Motion is Timely. ............................................................. 8

          2.    Proposed Intervenors Have a Legally Protected Interest in the Subject of this Case ................................................................. 9

          3.    Disposition of this action may impair Proposed Intervenors' ability to vindicate their rights. ....................................... 10

          4.    Proposed Intervenors Have Interests that May Not Be Otherwise Adequately Represented. ................................... 10

     B.    Permissive Intervention is Separately Appropriate ............................................ 15

V.    CONCLUSION ............................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Brumfield v. Dodd,*
    749 F.3d 339 (5th Cir. 2014) ............................................................................10, 14

*Clark v. Putnam Cty.,*
    168 F.3d 458 (11th Cir. 1999) ...................................................................................12

*Edwards v. City of Houston,*
    78 F.3d 983 (5th Cir. 1996) ..................................................................................8, 15

*Fund for Animals, Inc. v. Norton,*
    322 F.3d 728 (D.C. Cir. 2003) ...........................................................................13, 14

*In re Lease Oil Antitrust Litig.,*
    570 F.3d 244 (5th Cir. 2009) .......................................................................................7

*League of United Latin Am. Citizens, Council No. 4434 v. Clements,*
    884 F.2d 185 (5th Cir. 1989) ..................................................................................4, 15

*McDonalds USA, LLC & Fast Food Workers Committee and Service Employees*
*Int'l Union,*
    368 NLRB No. 134 (Dec. 12 2019) ...........................................................................11

*Planned Parenthood of Wis., Inc. v. Kaul,*
    942 F.3d 793 (7th Cir. 2019) .....................................................................................15

*Ross v. Marshall,*
    426 F.3d 745 (5th Cir. 2005) .......................................................................................8

*SEC v. U.S. Realty & Imp. Co.,*
    310 U.S. 434 (1940) .....................................................................................................15

*Sierra Club v. Espy,*
    18 F.3d 1202 (5th Cir. 1994) ...................................................................7, 11, 12, 13

*Stallworth v. Monsanto Co.,*
    558 F.2d 257 (5th Cir. 1977) .......................................................................................8

*Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin,*
    338 F.R.D. 364 (W.D. Tex. 2021) .............................................................................15

2919909.5

**TABLE OF AUTHORITIES**
(continued)

Page

*Texas v. U.S.*,
805 F.3d 653 (5th Cir. 2015) ......................................................................9, 11, 13

*Texas v. U.S.C.I.S.*,
No. 6:23-cv-00007, 2023 WL 3025080 (S.D. Tex. Apr. 19, 2023).........................................15

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972)...........................................................................................11, 12

*U.S. v. Allegheny-Ludlum Indus., Inc.*,
517 F.2d 826 (5th Cir. 1975), *cert. denied*, 425 U.S. 944 (1976).............................................8

*U.S. v. Texas E. Transmission Corp.*,
923 F.2d 410 (5th Cir. 1991) ....................................................................................8

*UAW v. Scofield*,
382 U.S. 205 (1965).........................................................................................2, 11

*Utah Ass'n of Ctys. v. Clinton*,
255 F.3d 1246 (10th Cir. 2001) ................................................................................12

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
834 F.3d 562 (5th Cir. 2016) ...........................................................................4, 7, 8, 9

**Court Rules**

Fed. R. Civ. P. 24(a)(2)........................................................................................8, 9

L.R. 7.1(D)..............................................................................................................3

**Treatises**

6 Matthew Bender, *Moore's Federal Practice*, § 24.03 (3d ed. 2023).........................................11

**Other Authorities**

https://www.businessinsider.com/twitter-trust-safety-yoel-roth-fled-home-elon-
musk-report-2022-12 ................................................................................................1

- iii -

## <u>MOTION TO INTERVENE</u>

Pursuant to Federal Rule of Civil Procedure 24, Scott Beck, Paige Holland-Thielen, Deborah Lawrence, and Tom Moline ("Proposed Intervenors") bring this motion to intervene in the above-captioned matter, alleging as follows:

## I.   <u>INTRODUCTION</u>

Proposed Intervenors are four of the eight former employees of Plaintiff Space Exploration Technologies Corp. ("SpaceX") whose charges of unfair labor practices against SpaceX are the subject of the Defendant National Labor Relations Board's ("NLRB") consolidated complaint against SpaceX.[1]  They seek intervention as defendants under Federal Rule of Civil Procedure 24 as of right or, alternatively, permissively.

Proposed Intervenors, along with four of their colleagues, were fired by SpaceX for writing an open letter to SpaceX executives protesting the company's handling of sexual harassment in the workplace (hereinafter, "Open Letter"). Proposed Intervenors and their colleagues filed charges of unfair labor practices with the NLRB's Region 31 in Los Angeles because virtually all of the relevant conduct—the place of employment, the drafting of the Open Letter, and the subsequent terminations—took place at SpaceX's headquarters in Hawthorne, California (15 miles from downtown Los Angeles). Region 31 issued a consolidated complaint

---

[1] Counsel for Proposed Intervenors represent all eight former employees. The Proposed Intervenors have courageously agreed to publicly file declarations with their names, while the other former employees have opted to remain anonymous (and filed under pseudonyms with the NLRB) due to fear of online "doxing"—the mass publication of private, identifying information with the intent to intimidate—by followers of CEO Elon Musk. Burgess Decl., ¶ 7. This fear is well founded. *See, e.g.*, https://www.businessinsider.com/twitter-trust-safety-yoel-roth-fled-home-elon-musk-report-2022-12 (former Twitter employee forced to move from home after threats of violence following his criticism of Musk) (last visited Jan. 8, 2024). To avoid burdening this Court with redundant declarations from all eight former employees that would require redaction and adjudication of a motion to seal, Proposed Intervenors and counsel instead personally attest to the relevant facts in their declarations.

with 37 allegations against SpaceX asserting that SpaceX's treatment of Proposed Intervenors violated the National Labor Relations Act ("NRLA"). A hearing before an administrative law judge on the allegations in the complaint is scheduled to occur in Los Angeles, beginning March 5, 2024.

SpaceX's complaint for declaratory and injunctive relief in this Court directly and materially affects the Proposed Intervenors' legal rights—indeed, it threatens to wholly eliminate and/or substantially alter and delay their ability to vindicate the rights guaranteed them under the NLRA.

If SpaceX had advanced all the arguments in its Complaint in the proceeding pending before the NLRB administrative law judge, the Proposed Intervenors would have had a right to participate in the trial, any appeal to the NLRB, and any further proceeding in a court of appeals. Indeed, the Supreme Court has held that individuals in the precise posture of the Proposed Intervenors have a right to intervene in a challenge to an NLRB order brought in a court of appeals. *UAW v. Scofield*, 382 U.S. 205, 208 (1965) ("charging party . . . [has] a right to intervene").

Proposed Intervenors' interests are not adequately represented by the existing parties to this suit. As to SpaceX – it barely mentions the existence, let alone rights of, the Proposed Intervenors who brought the underlying charges forward, who provided significant time developing the underlying case, who stand ready to proceed to trial, and whose ability to obtain recourse for SpaceX's wrongful termination of their employment hangs in the balance. Clearly, SpaceX has no intention of acknowledging any rights whatsoever of Proposed Intervenors; it failed to give then any notice whatsoever, formal or informal, that it filed its Complaint. Declaration of Laurie Burgess In Support of Motion To Intervene ("Burgess Decl."), ¶ 14. The

Defendant NLRB, by contrast, has found merit to and is prepared to prosecute Proposed Intervenors' claims. However, the government agency's interests are statutorily prescribed to focus upon the broad public interest and to privilege that interest above that of individual charging parties when those interests diverge. In other words, no party in the litigation represents the Proposed Intervenors' unique interests—the "real parties in interest" in the underlying matter. SpaceX can hardly disagree, as it successfully advanced this same argument last year in seeking to intervene as of right as a co-defendant in an action brought against the government.[2]

Critically, Proposed Intervenors affirmatively bring information to the table that would aid the Court's adjudication of the preliminary matter of venue. Along with this Motion to Intervene, Proposed Intervenors respectfully submit a Motion to Transfer Venue to the Central District of California.[3] Proposed Intervenor's Motion to Transfer is based upon facts relevant to venue uniquely in their possession and is based upon their compelling interest in having this matter heard in their home state, California.

Proposed Intervenors conferred with the parties in this case. L.R. 7.1(D).[4] Plaintiff SpaceX opposes intervention, and Defendants take no position.

## II.   ISSUES IN DISPUTE

Whether the Court should grant intervention as of right under Federal Rule of Civil Procedure 24(a). In making this determination, the Court considers whether (1) the application is

---

[2] *Center for Biological Diversity v. FAA*, 23-cv-01204-CJN (D.C. May 19, 2023), Memorandum In Support of Space Exploration Technologies Corp.'s Motion to Intervene at 9-10 (arguing that that "even if" the government takes a legal position resonant with SpaceX, its "arguments will not necessary represent SpaceX's interests as a regulated party or its specific business interests"), (attached as Exhibit B to the Burgess Declaration).

[3] The proposed Motion to Transfer Venue is attached to the Burgess Declaration as Exhibit A.

[4] Within this brief, unless otherwise indicated, all citations and internal quotation marks within quotations are omitted and any emphasis has been added.

timely; (2) the proposed intervenors "have an interest relating to the property or transaction which is the subject of the action"; (3) they are "so situated that the disposition of the action may, as a practical matter, impair or impede [their] ability to protect that interest"; and (4) their interests are "inadequately represented by the existing parties to the suit." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016).

Alternatively, whether the Court should grant permissive intervention under Federal Rule of Civil Procedure 24(b). The Court considers whether the "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 n.2 (5th Cir. 1989).

## III.    **BACKGROUND**

Proposed Intervenors, along with four of their colleagues (collectively, "Terminated Employees"), were unlawfully fired by SpaceX in retaliation for engaging in concerted protected activity under Section 7 of the NLRA.

Terminated Employees were software and hardware engineers at SpaceX. Declaration of Scott Beck In Support of Motion to Intervene ("Beck Decl."), ¶¶ 2-3; Declaration of Paige Holland-Thielen In Support of Motion to Intervene ("Holland-Thielen Decl."), ¶ 2; Declaration of Deborah Lawrence In Support of Motion to Intervene ("Lawrence Decl."), ¶ 2; Declaration of Tom Moline In Support of Motion to Intervene ("Moline Decl."), ¶¶ 3-4; Declaration of Laurie Burgess in Support of Motion to Intervene ("Burgess Decl."), ¶¶ 8-11. Seven of the eight Terminated Employees resided in California during the time of all relevant actions that triggered the underlying consolidated Complaint and worked at SpaceX's headquarters in Hawthorne, California. Beck Decl., ¶ 4; Holland-Thielen Decl., ¶ 3; Moline Decl., ¶ 5; Burgess Decl., ¶ 4.

The eighth employee worked at a SpaceX office in Redmond, Washington. Lawrence Decl., ¶ 3. As is demonstrated below, each of the eight Terminated Employees participated in protected concerted activity that took place in California and that indisputably led to Plaintiff's termination of their employment. Compl., ¶¶ 43-46.

During their otherwise highly productive careers at SpaceX the Terminated Employees became concerned about a series of disturbing incidents related to SpaceX's handling of sexual harassment in the workplace that interfered with their ability to function at work. For instance, Terminated Employees were disconcerted to learn from published accounts by several former SpaceX employees of having been sexually harassed at SpaceX, and then having been retaliated against by HR for reporting it. Beck Decl., ¶ 5; Holland-Thielen Decl., ¶ 4; Lawrence Decl., ¶ 4; Moline Decl., ¶ 6. Terminated Employees' concerns over SpaceX's failure to properly address allegations of harassment was heightened when CEO Elon Musk was accused of sexually harassing a SpaceX flight attendant and publicly ridiculed the alleged victim. Beck Decl., ¶ 6; Holland-Thielen Decl., ¶ 5; Lawrence Decl., ¶ 5; Moline Decl., ¶ 7. To the Employees' dismay, instead of affirming the right to speak up about harassment without fear of retaliation, the company's President, Gwynne Shotwell actively and vociferously supported Musk. *Id.* All of this took place against a background of a continual stream of public posts on social media by CEO Elon Musk degrading women and the LGBTQ community and featuring inappropriate sexual comments and jokes. Beck Decl., ¶ 7; Holland-Thielen Decl., ¶ 6; Lawrence Decl., ¶ 6; Moline Decl., ¶ 8. These posts were actively circulated in the workplace, with many actually posted on internal SpaceX platforms. *Id.* It was impossible for employees to avoid Musk's degrading and demeaning comments and management, ever fearful of the mercurial, quixotic and vengeful Musk, failed to take any action to remediate the hostile work environment or to request

2919909.5

Musk to at least comport his behavior within the confines of legal mandates. Beck Decl., ¶ 8; Holland-Thielen Decl., ¶ 7; Lawrence Decl., ¶ 7; Moline Decl., ¶ 9.

Desperate to effect change in the workplace and bring the company into compliance with the law, in late May 2022 the Terminated Employees decided to work together to take action to protest the company's handling of sexual harassment. Beck Decl., ¶ 9; Holland-Thielen Decl., ¶ 8; Lawrence Decl., ¶ 8; Moline Decl., ¶ 10. After a series of meetings at SpaceX headquarters in Hawthorne and at nearby off-campus locations, they ultimately wrote an Open Letter to SpaceX's executive team asking that the company distance itself from Musk's social media comments—that is, make clear that those comments were not SpaceX's own position—and that it clarify and enforce an anti-harassment policy in the workplace. *Id.* They shared this letter internally within SpaceX channels on June 15, 2022. Beck Decl., ¶ 10; Holland-Thielen Decl., ¶ 9; Lawrence Decl., ¶ 9; Moline Decl., ¶ 11.

The next day, June 16, 2022, SpaceX fired Mr. Beck, Ms. Holland-Thielen, Mr. Moline, and one other Terminated Employee in meetings in Hawthorne, California. Beck Decl., ¶¶ 3, 11-12; Holland-Thielen Decl., ¶¶ 2, 10-11; Moline Decl., ¶¶ 4, 12-13; Burgess Decl., ¶ 10. The June 16 meetings were each attended by HR Vice President, Brian Bjelde, HR Manager Rebecca Balayan, and President Gwynne Shotwell, all of whom were based in Hawthorne. *Id.* These SpaceX officials told the Terminated Employees that they were being fired for conceiving of, drafting, and distributing the Open Letter. *Id.* Later that day, President Shotwell sent an email to the entire company confirming that it had performed an investigation into the Open Letter and terminated those involved. Lawrence Decl., ¶ 10.

But the retaliation did not stop there. Over the next several weeks, SpaceX's HR department proceeded to interrogate employees that it suspected of involvement in the Open

Letter, and fired the remaining four Terminated Employees for their participation. Lawrence Decl., ¶¶ 10-11; Burgess Decl., ¶¶ 8-9, 11. This intimidation campaign was headed by HR Director Lindsay Chapman, based in Hawthorne, and the interrogations and firings took place in Hawthorne, with the exception of one Terminated Employee who was located in Redmond, Washington—she was interrogated by Ms. Chapman in Redmond, and later fired by Ms. Chapman via email. Lawrence Decl., ¶ 11; Burgess Decl., ¶¶ 8-9, 11.

Terminated Employees retained counsel and filed charges of unfair labor practices with the NLRB Region 31 in Los Angeles on November 16, 2022. Beck Decl., ¶¶ 13-14; Holland-Thielen Decl., ¶¶ 12-13; Lawrence Decl., ¶¶ 12-13; Moline Decl., ¶¶ 14-15 & Ex. A.  Amended charges were filed to conform to the evidence elucidated during the investigation and on January 3, 2024, after over a year investigating the charges, the NLRB issued a consolidated administrative complaint on behalf of all eight Terminated Employees alleging 37 separate violations of the NLRA. Moline Decl. ¶16 & Ex. B; Burgess Decl., ¶ 13. A hearing before an NLRB administrative law judge is scheduled to commence on March 5, 2024 in Los Angeles.

## IV.  <u>ARGUMENT</u>

The Court should allow intervention. Notably, "[a]lthough the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed" to allow intervention. *Wal-Mart Stores*, 834 F.3d at 565. Thus intervention should be permitted "where no one would be hurt and greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994). Any doubts over the propriety of intervention should be "resolved in favor of the proposed intervenor." *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 248 (5th Cir. 2009). As set forth below, Proposed Intervenors satisfy Rule 24's requirements to intervene both as of right and permissively.

2919909.5

### A.        Proposed Intervenors are Entitled to Intervene as of Right.

A nonparty may intervene as of right where (1) the application is timely; (2) the proposed intervenors "have an interest relating to the property or transaction which is the subject of the action"; (3) they are "so situated that the disposition of the action may, as a practical matter, impair or impede [their] ability to protect that interest"; and (4) their interests are "inadequately represented by the existing parties to the suit." *Wal-Mart Stores*, 834 F.3d at 565 (citations omitted); Fed. R. Civ. P. 24(a)(2). In rendering this assessment "the inquiry under subsection (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application. . . . intervention of right must be measured by a practical rather than technical yardstick." *U.S. v. Texas E. Transmission Corp.*, 923 F.2d 410, 413 (5th Cir. 1991) (quoting *U.S. v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 841 (5th Cir. 1975), *cert. denied*, 425 U.S. 944 (1976)); *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996).

As explained below, Proposed Intervenors satisfy each of these criteria and thus have a right to intervene in this action.

### 1.        The Motion is Timely.

This first requirement is easily satisfied. There is no set deadline to file a motion to intervene. Instead, courts consider a number of factors—for example, any prejudice to the existing parties on account of a delay. *See Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977). Here, the underlying action was filed just last week—in fact, only two business days ago. There is simply no question that this intervention motion is timely. *Cf. Ross v. Marshall*, 426 F.3d 745, 754-55 (5th Cir. 2005) (intervention motion filed six months after learning of interest was not tardy).

**2.** **Proposed Intervenors Have a Legally Protected Interest in the Subject of this Case.**

Proposed Intervenors have an "interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). The Fifth Circuit has interpreted the interest needed for intervention as of right as a "direct, substantial, legally protectable interest in the proceedings." *Texas v. U.S.*, 805 F.3d 653, 657 (5th Cir. 2015). This "inquiry turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Id.* And this interest need not give rise to standing: "[A]n interest is sufficient if it is of the type that the law deems worthy of protection." *Wal-MartStores,*, 834 F.3d at 566.

The "property or transaction" here is right of the right of the Proposed Intervenors to have their claims of unlawful surveillance, coercive interrogation, and termination legally prosecuted through the usual NLRB adjudicative process. The hearing on the underlying Consolidated Complaint set to commence on March 5th in Los Angeles provides the only mechanism available to the Terminated Employees for putting Musk, Shotwell, Bjelde, Balayan, and Chapman on the witness stand and challenging SpaceX's unlawful termination of their employment in retaliation for collectively speaking up to rectify serious workplace concerns. And of course the trial outcome has a very real and critical "property" interest for the Terminate Employees, namely, the right to backpay and reinstatement. Plaintiff's Complaint seeks to pull the rug out from underneath that process—potentially eviscerating the Terminated Employees' right to a trial before the NLRB or dramatically delaying the process. Each passing day that the trial is thwarted the Terminated Employees are not made whole and suffer economic losses. Their "property" rights could not be more real and significant.

- 9 -

2919909.5

3. **Disposition of this action may impair Proposed Intervenors' ability to vindicate their rights.**

Proposed Intervenors must also "demonstrate that disposition of that action may, as a practical matter, impair or impede [their] ability to protect [their] interest." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014). The impairment must be "practical," not merely "theoretical." *Id.* Nothing about the effect of this case is theoretical. Simply put, by challenging the constitutionality of the NRLB's structure, SpaceX threatens to eliminate Proposed Intervenors' right to obtain relief before the NLRB in pending litigation against SpaceX. Plaintiff seeks to enjoin the NLRB from vindicating Proposed Intervenors' rights and, because there is no private right of action under the NLRA, such relief would effectively bar Proposed Intrrevenor's from obtaining any remedy for the violation of their rights. Indeed, the outcome of the pending Complaint potentially impacts all workers subject to the NLRA's protections. But while all private sector workers have a general interest that would warrant *amicus* participation in this matter, the Proposed Intervenors have a heightened and unique interest in this matter because it is *their* right to have the unlawful termination of *their* employment that has triggered SpaceX's action here. For Proposed Intervenors, adjudication of the instant Complaint has a very real and immediate impact on their rights and welfare yet Proposed Intervenors did not even learn about SpaceX's Complaint until contacted by a media outlet for comment,[5] demonstrating that intervention is the best way for them to stay apprised of and contribute to this action that critically affects their rights.

4. **Proposed Intervenors Have Interests that May Not Be Otherwise Adequately Represented.**

Finally, the Proposed Intervenors have met the low burden of demonstrating that as

---

[5] Burgess Decl., ¶ 14.

currently captioned, there is inadequate representation of their interests in the pending matter. The burden of demonstrating this element is "minimal." *Sierra Club*, 18 F.3d at 1207. "The movant need not show that the representation by existing parties will be, for certain, inadequate.... [T]he applicant's burden on this matter should be viewed as 'minimal.'" 6 Matthew Bender, *Moore's Federal Practice*, § 24.03 (3d ed. 2023) (quoting *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n. 10 (1972)). Indeed, "the Rule is satisfied if the applicant shows that the representation of [their] interest ***may*** be inadequate." *Texas*, 805 F.3d at 661.

That burden is met here. Notwithstanding the fact that the NLRB has issued a complaint alleging that SpaceX violated the Proposed Intervenors' rights, ultimately the NLRB's commitment is to the mandates of the statute; the undersigned counsel's ethical obligations, by contrast are to protect the rights of the employees themselves, including their individual pecuniary interests. The NLRB's General Counsel does not represent the Proposed Intervenors and is not bound to follow their directions.[6] There is no guarantee that an NLRB administrative law judge will find in favor of Proposed Intervenors, or that the Board itself would do so. Simply put, the NLRB's goal is to follow its adjudicative process, whereas Proposed Intervenors' goal is to win on their claims. This adversity in goals between the NLRB and the Proposed Intervenors here tips the balance in favor of permitting intervention. Because of these differing interests, Courts have long recognized the right of workers in wrongful termination cases under the NLRA and other labor matters to intervene in court litigation to support the NLRB's position. *See, e.g., UAW*, 382 U.S. at 208 ("We hold that both the successful charged party (in Scofield) and the successful charging party (in Fafnir) have a right to intervene in the Court of Appeals proceeding

---

[6] *See, e.g., See McDonalds USA, LLC & Fast Food Workers Committee and Service Employees Int'l Union*, 368 NLRB No. 134 at 5 (Dec. 12 2019) (holding that the NLRB's General Counsel can settle a case over the objection of the charging parties).

which reviews or enforces Labor Board orders. We think that Congress intended to confer intervention rights upon the successful party to the Labor Board proceedings in the court in which the unsuccessful party challenges the Board's decision."); *Trbovich*, 404 U.S. at 528 (reversing lower court and Court of Appeals' failure to permit union members the right to intervene in enforcement proceedings brought by the United States Department of Labor in enforcement proceedings under the Act).

Indeed, SpaceX itself successfully advanced this very argument in a motion to intervene as a defendant in an action brought against the Federal Aviation Administration. *Center for Biological Diversity v. FAA*, 23-cv-1204-CJN (May 19, 2023).[7] As SpaceX argued there, "a government agency charged with considering broader public interests cannot adequately represent SpaceX's private interests." *Id*. at 1; *see also id*. at 9 (citing cases for the proposition that intervention is "especially" warranted when the existing party is the government).

Fifth Circuit case law supports intervention where, as here, the government is charged with pursuing interests that do not equally protect private individuals' legal interests in litigation. In one case, the Court of Appeals reversed the failure to grant intervention where the intervenors —private entities—complained that the government had broader interests in the litigation that failed to properly protect their own pecuniary interests. *Sierra Club*, 18 F.3d 1202.[8] As the *Sierra*

---

[7] SpaceX's brief is attached to the Burgess Declaration as Exhibit B, along with a copy of the docket showing the court's order granting SpaceX's motion to intervene.

[8] Other Courts of Appeal have similarly adopted this rationale.  *See, e.g. Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1255-56 (10th Cir. 2001) ("representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation); *Clark v. Putnam Cty*., 168 F.3d 458, 461 (11th Cir. 1999) (holding that government did not necessarily represent the interest of individual voter-intervenors just because it represented all voters, in particular where intervenors would pursue their favored remedy with zeal while the government would pursue settlement); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736

Court explained in its reversal, "[t]he government must represent the broad public interest, not just the economic concerns of the timber industry. Given the minimal burden on the movants to satisfy this requirement, we conclude that the government's representation of the intervenors' interest is inadequate. " *Id*. at 1208.

For similar reasons, in *Texas v. United States*, 805 F.3d 653, the Fifth Circuit reversed denial of intervention in a case involving a government agency. There, three non-citizens sought to intervene in an action brought by twenty-six states against the Department of Homeland Security ("DHS") challenging its Deferred Action for Parents of Americans and Lawful Permanent Residents ("DAPA") program. *Id*. at 656. The Court of Appeals held that the individuals satisfied the criteria for intervention by right because it was their interests in remaining in the United States that were actually at stake in the matter. *Id*. at 661. The Court specifically found that the intervenors' interest did not wholly overlap with DHS's:

> Although both the Government and the Jane Does seek to uphold DAPA, the Government's interests are in securing an expansive interpretation of executive authority, efficiently enforcing the immigration laws, and maintaining its working relationship with the States, who often assist it in detaining immigrants like the Jane Does. In contrast, the Jane Does' concerns are to remain in their long-time home state of Texas, to retain custody of their U.S. citizen children, and to obtain work authorization, driver's licenses, and lawful employment so that they can provide for their families.

*Id*. at 664.

Similarly, in *Brumfield v. Dodd*, the Fifth Circuit reversed a lower court's failure to grant

---

(D.C. Cir. 2003) ("[W]e have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors.")

2919909.5

private parties' mandatory right to intervene in a case brought by the government, noting "[w]e cannot say for sure that the state's more extensive interests will *in fact* result in inadequate representation, but surely they might, which is all that the rule requires." 749 F.3d at 346. Indeed, as the court went on to explain, "[t]he very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions." *Id.* at 344-45. *See also Fund for Animals*, 322 F.3d at 735 ("[I]t is not enough to deny intervention under 24(a)(2) because applicants may vindicate their interests in some later, albeit more burdensome, litigation.")

The Proposed Intervenors here have a similar compelling interest in intervention. Indeed, even at this very early stage in litigation, the Terminated Employees have articulated a compelling interest in transferring this matter to their home state, California. They cannot be assured that the NLRB shares this interest and hence are seeking leave to intervene to file their own motion to change venue. It is impossible for the Terminated Employees to predict the other issues that may arise during the course of this litigation that may affect their interests but which the NLRB has no similar interest or desire to act. Having already demonstrated one critical interest—namely seeking change of venue to their home state— Proposed Intervenors respectfully submit that the "minimal" burden of demonstrating the need for independent standing as Intervenors in this matter has been met. As the *Brumfield* Court held: "[t]he lack of unity in all objectives, combined with real and legitimate additional or contrary arguments, is sufficient to demonstrate that the representation *may* be inadequate, so this requirement of Rule 24(a) is met." *Brumfield*, 749 F.3d at 346.[9]

---

[9] Indeed, if the Terminated Employees waited until they discovered a clear adverse position with the NLRB before seeking intervention such a delay could be used as a basis for denying intervention. *See, e.g. Edwards,* 78 F.3d 983 (reversing denial of intervention based upon delay in seeking to intervene).

- 14 -

### B.      Permissive Intervention is Separately Appropriate.

Permissive intervention is appropriate under Rule 24(b) when "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *League of United Latin Am. Citizens*, 884 F.2d at 189 n.2.[10] These first two factors—timeliness and interest in the subject matter of the case—are addressed above and are satisfied. The third factor—undue and delay and prejudice—"is essentially the same as the timeliness analysis." *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 338 F.R.D. 364, 372 (W.D. Tex. 2021). Again, Proposed Intervenors filed their motion less than a week after the case initiated, and thus there is no potential for undue delay or prejudice.

Additionally, when assessing an application for permissive intervention, courts consider "whether the intervenor's presence is likely to provide significant contributions to the development of the underlying factual issues." *Texas v. U.S.C.I.S.*, No. 6:23-cv-00007, 2023 WL 3025080, at *1 (S.D. Tex. Apr. 19, 2023) (citing *League of United Latin Am. Citizens*, 884 F.2d at 189). This is undoubtedly the case here because the Proposed Intervenors are *already* providing significant contribution to this dispute via their unique, intimate knowledge of the facts in the underlying case that are imperative for the Court's assessment regarding whether this is the appropriate venue for this matter to be heard. As their attached proposed Motion to

---

[10] Of course, under this theory there is no need to demonstrate direct interest or that Proposed Intervenors' interests are inadequately represented. *See SEC v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 459 (1940) ("[Permissive intervention] plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation."); *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 801 n.4 (7th Cir. 2019) ("[P]ermissive intervention . . . does not require the [movant] to demonstrate that its interests are inadequately represented under any standard.").

- 15 -

Change Venue demonstrates, Proposed Intervenors respectfully aver that this is not the proper venue and that the matter should be transferred forthwith to their home state of California, where the underlying litigation was filed and is scheduled to proceed.

**V.    <u>CONCLUSION</u>**

In the absence of intervention the Proposed Intervenors—who are the real parties in interest in the underlying litigation—will be forced to the sidelines watching their fate unfold without the right to provide the Court with information in their sole possession that could be of assistance to the Court in adjudicating the matters presented in the Complaint. Indeed, but for a tip from the media the Terminated Employees would not have even been aware of this action, which threatens their right to vindicate their unlawful termination. For the reasons stated herein, the Court should grant this motion to intervene as of right, or alternatively, permissively.

Dated: January 8, 2024                    Respectfully submitted,


                                          */s/ Nimish R. Desai*
                                          Nimish R. Desai
                                          Attorney-in-charge
                                          Texas Bar No. 24105238
                                          Southern District of Texas Bar No. 3370303
                                          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                          275 Battery Street, 29th Floor
                                          San Francisco, CA 94111-3339
                                          Phone: (415) 956-1000
                                          Fax: (415) 956-1008
                                          ndesai@lchb.com

                                          Anne B. Shaver (*pro hac vice* forthcoming)
                                          Of Counsel
                                          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                          275 Battery Street, 29th Floor
                                          San Francisco, CA 94111-3339
                                          Phone: (415) 956-1000
                                          Fax: (415) 956-1008
                                          ashaver@lchb.com

                                          Laurie M. Burgess (*pro hac vice* forthcoming)
                                          Of Counsel
                                          BURGESS LAW OFFICES, P.C.
                                          498 Utah Street
                                          San Francisco, CA 94110
                                          Phone: (312) 320-1718
                                          lburgess@burgess-laborlaw.com


                                          *Counsel for Proposed Intervenors*

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

*/s/  Nimish R. Desai*
Nimish R. Desai

2919909.5