### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | |
|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.,** | |
| **Plaintiff,** | Civil Action No. 1:24-cv-00001 |
| **v.** | |
| **NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,** | |
| **Defendants.** | |

### PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................4

ARGUMENT ........................................................................................................................6

I.     SpaceX is likely to succeed on the merits of its constitutional claims. .............................7

     A.     NLRB ALJs are unconstitutionally insulated from removal. .................................7

     B.     The NLRB's Board Members are unconstitutionally insulated from
           removal. ...............................................................................................................8

     C.     The NLRB's adjudication of private rights and legal relief violates the
           Seventh Amendment. ..........................................................................................10

     D.     The NLRB Members' blending of functions violates the separation of
           powers and due process. ......................................................................................14

II.    SpaceX will suffer irreparable harm without a preliminary injunction. ..........................17

     A.     The unconstitutionality of the NLRB proceedings inflicts irreparable
           harm. ..................................................................................................................18

     B.     The unconstitutional NLRB proceedings inflict irreparable economic
           harm. ..................................................................................................................20

III.   The balance of harms and public interest favor a preliminary injunction. .......................21

IV.   Severability arguments cannot defeat SpaceX's right to a preliminary injunction. ..........22

CONCLUSION...................................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alpine Sec. Corp. v. FINRA*,
No. 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023) ....................................................19

*Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.*,
309 U.S. 261 (1940) ...........................................................................................................13

*Assoc. Builders & Contractors of Tex. Gulf Coast, Inc. v. U.S. Dep't of Energy*,
451 F. Supp. 281 (S.D. Tex. 1978) .........................................................................................20

*Atlas Roofing Co., Inc. v. OSHRC*,
430 U.S. 442 (1977) ...................................................................................................13, 14

*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023) ................................................................................................ *passim*

*Ayotte v. Planned Parenthood of N. New England*,
546 U.S. 320 (2006) ...................................................................................................22, 25

*BST Holdings, L.L.C. v. OSHA*,
17 F.4th 604 (5th Cir. 2021) ...............................................................................................21

*Burgess v. FDIC*,
639 F. Supp. 3d 732 (N.D. Tex. 2022) ..................................................................................19

*Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*,
494 U.S. 558 (1990) ...........................................................................................................13

*Cochran v. SEC*,
20 F.4th 194 (5th Cir. 2021) ...............................................................................................19

*Collins v. Dep't of the Treasury*,
No. 22-20632, 2023 WL 6630307 (5th Cir. Oct. 12, 2023) ....................................................18

*Collins v. Yellen*,
141 S. Ct. 1761 (2021) .......................................................................................................10

*Community Fin. Servs. Ass'n of Am. Ltd. v. CFPB*,
51 F.4th 616, 625 (5th Cir. 2022) .........................................................................................18

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
710 F.3d 579 (5th Cir. 2013) .........................................................................................17, 21

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
    661 F.2d 328 (5th Cir. 1981) ...............................................................18

*Doran v. Salem Inn, Inc.*,
    422 U.S. 922 (1975)...........................................................................22

*Fortune v. Nat'l Cash Reg. Co.*
    364 N.E.2d 1251 (Mass. 1977) .........................................................12

*Free Enter. Fund v. PCAOB*,
    561 U.S. 477 (2010) .................................................................. *passim*

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989)......................................................................13, 14

*Horne v. Polk*,
    394 P.3d 651 (Ariz. 2017) ...........................................................15, 16

*Humphrey's Ex'r v. United States*,
    295 U.S. 602 (1935)......................................................................9, 10

*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022) ..................................................... *passim*

*League of Women Voters of U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ..............................................................21

*Louisiana v. Biden*,
    55 F.4th 1017 (5th Cir. 2022) .......................................................6, 21

*Lucia v. SEC*,
    138 S. Ct. 2044 (2018).................................................................8, 24

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993)...........................................................................12

*Myers v. United States*,
    272 U.S. 52 (1926)...............................................................................7

*Nken v. Holder*,
    556 U.S. 418 (2009)...........................................................................21

*NLRB v. Jones & Laughlin Steel Corp.*,
    301 U.S. 1 (1937)........................................................................13, 14

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
    138 S. Ct. 1365 (2018)................................................................13, 14

*Overstreet v. El Paso Disposal, L.P.*,
625 F.3d 844 (5th Cir. 2010) .......................................................................2, 9

*Petermann v. Teamsters Loc. 396*,
344 P.2d 25 (Cal. Ct. App. 1959) .......................................................................12

*Ramspeck v. Federal Trial Exam'rs Conf.*,
345 U.S. 128 (1953) .......................................................................24

*Seila L. LLC v. CFPB*,
140 S. Ct. 2138 (2020) ....................................................................... *passim*

*SpaceX v. Bell*,
No. 1:23-cv-00137, 2023 WL 8885128 (S.D. Tex. Nov. 8, 2023) ................................. *passim*

*Stern v. Marshall*,
564 U.S. 462 (2011) .......................................................................14, 21

*Thryv, Inc.*,
372 N.L.R.B. No. 22 (Dec. 13, 2022) ................................................................ *passim*

*Tull v. United States*,
481 U.S. 412 (1987) .......................................................................11, 12

*United States v. Nat'l Treas. Emps. Union*,
513 U.S. 454 (1995) .......................................................................25

*United States v. Texas*,
599 U.S. 670 (2023) .......................................................................9

*Ward v. Vill. of Monroeville*,
409 U.S. 57 (1972) .......................................................................19

*Westrock Servs., Inc.*,
366 N.L.R.B. No. 157 (Aug. 6, 2018) .......................................................................8

*Williams v. Pennsylvania*,
579 U.S. 1 (2016) ....................................................................... *passim*

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......................................................................1, 6

**Statutes**

5 U.S.C. § 1202(d) .......................................................................2, 7, 8

5 U.S.C. § 7521(a) .......................................................................2, 7, 8

8 U.S.C. § 1324b .......................................................................14

29 U.S.C. § 153(a) ...................................................................................2, 8, 10

29 U.S.C. § 154 ...................................................................................................9

29 U.S.C. § 159 ...................................................................................................9

29 U.S.C. § 160 ...................................................................................................9

29 U.S.C. § 160(c) ........................................................................................11, 17

29 U.S.C. § 160(e) .............................................................................................17

29 U.S.C. § 160(f) .............................................................................................17

29 U.S.C. § 160(j) ........................................................................................ *passim*

Civil Service Act of 1978, Pub. L. No. 95-454, § 1202(d), 92 Stat. 1111 ....................24

National Labor Relations Act ....................................................................... *passim*

**Other Authorities**

5 C.F.R. § 1200.1 ...............................................................................................24

11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
    PROCEDURE § 2948.1 (3d ed. 2023) ..........................................................18

Civil Service Reform: Hearings on H.R. 11280 Before the H. Comm. on Post Off.
    & Civ. Serv., 95th Cong. 824 (1978) ..........................................................24

Daniel P. O'Gorman, *Construing the National Labor Relations Act: The NLRB
    and Methods of Statutory Construction*, 81 TEMP. L. REV. 177 (2008)..................24

FED. R. CIV. P. 65(a) ............................................................................................1

General Counsel, *Section 10(j) Manual* (Feb. 2014), https://www.nlrb.gov/sites/
    default/files/attachments/basic-page/node-1727/MASTER%20REVISED%20
    2013%2010(J)%20MANUAL.pdf..................................................15, 16, 17

Michael J. Heilman, *The National Labor Relations Act at Fifty: Roots Revisited,
    Heart Rediscovered*, 23 DUQ. L. REV. 1059, 1069 (1985)......................................25

NAT'L LABOR RELATIONS BD., LEGISLATIVE HISTORY OF THE NATIONAL LABOR
    RELATIONS ACT OF 1935 (1949)...................................................................25

U.S. CONST. amend. VII ............................................................................. *passim*

U.S. CONST. amend XIV ....................................................................................15

U.S. Const. art. II ............................................................................................................. *passim*

U.S. Const. art. III ............................................................................................................ *passim*

Space Exploration Technologies Corp. ("SpaceX") respectfully moves for an order preliminarily enjoining ongoing administrative proceedings against SpaceX, to be entered against Defendants the National Labor Relations Board ("NLRB"), Jennifer Abruzzo, Lauren M. McFerran, Marvin E. Kaplan, Gwynne A. Wilcox, and David M. Prouty, and the Administrative Law Judge ("ALJ") who will soon be assigned to preside over the administrative hearing. FED. R. CIV. P. 65(a). The administrative hearing is currently scheduled to begin on March 5, 2024, and without the requested relief, SpaceX will suffer irreparable harm as described below.

## INTRODUCTION

SpaceX has filed this action to avoid serious and irreparable injuries that it will otherwise suffer from being subjected to an unconstitutional administrative proceeding. Defendants are currently prosecuting and presiding over such a proceeding accusing SpaceX of violating federal law. Because the structure of that proceeding violates the United States Constitution under Supreme Court and Fifth Circuit precedent, SpaceX respectfully requests an order halting the NLRB proceedings unless and until the constitutional defects are remedied.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). SpaceX satisfies each of these requirements.

SpaceX is likely to succeed in establishing that the structure of the NLRB proceedings violates the Constitution four times over:

*First*, the administrative proceeding is being heard by an ALJ who is unconstitutionally exercising substantial executive functions while being insulated from presidential control in violation of Article II of the Constitution. *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023). Indeed, three different layers of removal protections impede the

President's ability to remove the NLRB's ALJs: (1) while an agency—here the NLRB—may take steps to remove an ALJ, it may do so "only for good cause established and determined by the Merit Systems Protection Board [("MSPB")]," 5 U.S.C. § 7521(a); (2) the President may remove members of the MSPB only for "inefficiency, neglect of duty, or malfeasance in office," 5 U.S.C. § 1202(d); and (3) the President may remove NLRB board members only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). In *Jarkesy*, the Fifth Circuit held that a matching set of removal restrictions was unconstitutional as applied to ALJs of the Securities Exchange Commission ("SEC"). 34 F.4th at 463–64. The same conclusion follows here.

*Second*, the Members who lead the NLRB are also unconstitutionally insulated from removal by the President. Article II requires that the President maintain "unrestricted removal power" over all federal officials "who wield executive power," subject to only two exceptions. *Seila Law LLC v. CFPB*, 140 S. Ct. 2138, 2191–92 (2020). The potentially relevant exception here—"for multimember expert agencies that do not wield substantial executive power," *id.* at 2199-200—is inapplicable because the NLRB *does* wield substantial executive power. As just one example, Section 10(j) of the National Labor Relations Act ("NLRA") gives Board Members "the power, upon issuance of [an administrative] complaint . . . charging that any person has engaged in or is engaging in an unfair labor practice, to petition [a] United States district court . . . for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j). This "[p]etition power under § 10(j) is prosecutorial in nature" and thus a quintessential form of executive power. *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010).

*Third*, the NLRB proceeding violates SpaceX's Seventh Amendment jury-trial right by adjudicating private rights outside the confines of an Article III court. The Board's General Counsel alleges that SpaceX wrongfully terminated certain employees and seeks a broad range of

compensatory monetary damages for those employees. *See generally Thryv, Inc.*, 372 N.L.R.B. No. 22 (Dec. 13, 2022) (holding that the Board will provide expansive monetary compensation for wrongfully terminated employees). The Board thus seeks to vindicate private rights for the benefit of private parties. But because the Constitution only permits the Board to adjudicate public rights through its non-jury, administrative proceedings, such proceedings violate the Seventh Amendment. *See Jarkesy*, 34 F.4th at 451–55 (holding that SEC administrative adjudications violate the Seventh Amendment "because such claims do not concern public rights alone").

*Fourth*, by exercising prosecutorial, legislative, and adjudicatory authority within the same proceeding, the NLRB transgresses the separation of powers and violates SpaceX's due-process rights. The Supreme Court has held that "an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016). Yet that is exactly what Board Members do when they authorize Section 10(j) injunctive relief (a prosecutorial function) and then adjudicate and announce new legal rules during an administrative appeal of an ALJ ruling (judicial and legislative functions). The General Counsel's attorneys have conveyed that they plan to seek the Board Members' authorization for Section 10(j) proceedings against SpaceX, while ultimately relying on the Board Members to resolve the administrative proceeding as a whole. In this way, too, the Board's structure violates the Constitution's guarantees and SpaceX's constitutional rights.

SpaceX will be irreparably harmed by these violations of its constitutional rights unless the Court preliminarily enjoins the NLRB proceedings pending a final decision on the merits. Even if the Court can ultimately cure some of these structural defects in its final judgment, it cannot undo the injury SpaceX will suffer in the meantime through "subjection to an illegitimate proceeding, led by an illegitimate decisionmaker" in "proceedings [that] violate the separation of powers."

*Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023). Under binding Supreme Court precedent, such harm is "a here-and-now injury" that "is impossible to remedy once the proceeding is over." *Id.* (citation omitted); *accord SpaceX v. Bell*, No. 1:23-cv-00137, 2023 WL 8885128, at *4 (S.D. Tex. Nov. 8, 2023) (Olvera, J.). And on top of its constitutional injury, SpaceX will suffer the practical harms of undergoing an extensive administrative proceeding that distracts from its important missions, including launching satellites critical to U.S. defense and intelligence agencies and flying NASA astronauts to space. These harms also will be irreparable even if the Court ultimately finds that the NLRB's structural flaws can be corrected prospectively. The balance of equities and public interest weigh strongly in SpaceX's favor for similar reasons. *See id.* at *4.

Because SpaceX satisfies the preliminary injunction factors for its four claims, this Court should grant SpaceX's motion and preliminarily enjoin the NLRB proceedings against it.

## BACKGROUND

SpaceX was founded in 2002 with the audacious goal of making life multiplanetary. Gallman Decl. (attached as Exhibit A), ¶ 4. Today, SpaceX operates a space launch business and a global satellite-based internet service known as Starlink. *Id.* ¶ 5. It employs over 14,000 people in facilities around the country, including in its Starbase facility in Boca Chica, Texas where it is developing, manufacturing, and launching Starship, the most powerful rocket ever built; its rocket development facility in McGregor, Texas; its human spaceflight mission operations and integration facility in Houston, Texas; its Starlink manufacturing facility in Bastrop, Texas; and its facilities in Florida, Washington State, California, and Washington, D.C. *Id.* ¶ 9.

SpaceX's missions serve, among others, NASA, various U.S. government defense and intelligence agencies, commercial customers from around the world, and international space agencies *Id.* ¶ 67. Starship—the largest rocket ever built—has been selected by NASA to return American astronauts to the Moon. *Id.* ¶ 7. Sending crewed spacecraft to the Moon, the International

Space Station, and beyond requires the utmost vigilance, discipline, technical excellence, and teamwork of SpaceX personnel across all its facilities—as does building and maintaining its constellation of thousands of Starlink satellites and serving millions of Starlink customers in more than 70 countries around the world. *See id.* ¶ 20.

On June 15, 2022, a small group of SpaceX employees sent an open letter (the "Open Letter") to almost all SpaceX employees across all of SpaceX's locations, in many cases flooding multiple channels of communication, and demanding that SpaceX take certain actions addressing perceived shortcomings and soliciting employees to fill out a hyperlinked survey to indicate support for the Open Letter's demands and provide feedback. Compl. ¶¶ 43–44, ECF No. 1. The Open Letter overwhelmed many of SpaceX's communication channels and caused significant disruption to SpaceX operations around the country, including at Starbase and the other Texas facilities. It was a blatant and gross violation of company policies. *Id.* ¶¶ 34, 45. SpaceX discharged a few of the employees involved with the Open Letter for these policy violations. *Id.* ¶ 46.

In November 2022, former SpaceX employees (the "Charging Parties") filed charges with the NLRB alleging that SpaceX committed unfair labor practices when it terminated their employment (the "Charges"). *Id.* ¶ 47. SpaceX submitted to the NLRB a position statement refuting the Charging Parties' allegations, along with supporting evidence. *Id.* ¶ 48. The position statement and evidence spanned 700 pages, and its preparation was a burdensome effort.

On December 14, 2023, the investigating NLRB Region informed SpaceX that it had made determinations on the Charges and had authorized an administrative complaint against SpaceX on nearly every single charge, breaking with established legal precedent to avoid narrowing the issues at all. The NLRB, in its eagerness to subject SpaceX to its burdensome hearing process, seemed to ignore even basic information provided by SpaceX, such as the supervisory status of one

charging party (making them exempt from the NLRA's protections) and clear evidence that another charging party was actually terminated for a well-documented history of substandard performance. *Id.* ¶ 48. On January 3, 2024, the Regional Director for Region 31 issued an order consolidating the administrative cases, with a consolidated administrative complaint and notice that an ALJ hearing would occur just two months later, on March 5, 2024. *Id.* ¶ 49.

The next day, SpaceX filed this suit seeking preliminary and permanent injunctive relief and declaratory relief, based on four distinct constitutional problems with the NLRB proceedings. *See generally* Compl., ECF No. 1. SpaceX inquired whether the NLRB would agree to stay its proceedings to give this Court time to adjudicate these issues. Eschbach Decl. (attached as Exhibit B), ¶¶ 4, 6. The NLRB's counsel instructed SpaceX to file any request for postponement with the Regional Office. *Id.* ¶ 7. SpaceX has now filed such a request with the Regional Office, but the General Counsel opposes a postponement until after this Court has decided the claims in this action. *Id.* ¶ 8 & Ex. B-2. Because SpaceX currently faces a January 17, 2024 deadline to answer the administrative complaint and is already gearing up for a March 5, 2024 hearing, and because the General Counsel opposes postponing the administrative proceedings pending this litigation, time is of the essence. In the ways described above, and others, the administrative proceeding is causing ongoing harm by requiring SpaceX to devote significant resources preparing for the unconstitutional administrative proceedings. Gallman Decl. ¶¶ 13–20.

## ARGUMENT

Preliminary injunctive relief is proper when a movant establishes (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20; *see also, e.g.*, *Louisiana v. Biden*, 55 F.4th 1017, 1022 (5th Cir. 2022). SpaceX satisfies all four factors.

I.      **SpaceX is likely to succeed on the merits of its constitutional claims.**

A.      **NLRB ALJs are unconstitutionally insulated from removal.**

Article II vests all executive power in the President, "who must 'take Care that the Laws be faithfully executed.'" *Seila L.*, 140 S. Ct. at 2191. The president does not execute federal law "alone and unaided." *Myers v. United States*, 272 U.S. 52, 117 (1926). "He must execute them by the assistance of subordinates." *Id.* But because the executive responsibility remains vested in the President, the officers of every administrative agency—including "independent" ones—must be subject to presidential oversight. *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513–14 (2010). The Constitution thus requires that the President have the "power to remove—and thus supervise—those who wield executive power on his behalf." *Seila L.*, 140 S. Ct. at 2191.

SpaceX is likely to succeed on the merits of its constitutional challenge to the NLRB ALJs' removal protections. Indeed, that conclusion is required by existing Fifth Circuit precedent. In *Jarkesy*, the Fifth Circuit held that an indistinguishable "statutory removal restrictions" for SEC ALJs "are unconstitutional." 34 F.4th at 465. Under 5 U.S.C. § 7521(a), "SEC ALJs may be removed by the Commission 'only for good cause established and determined by the [MSPB] on the record after opportunity for hearing.'" 34 F.4th at 464. And the Fifth Circuit determined that SEC Commissioners and MSPB members themselves "can only be removed by the President for cause." *Id.*; *see* 5 U.S.C. § 1202(d) (MSPB members). The SEC ALJs were "sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy*, 34 F.4th at 464. But these multiple "layers of for-cause protection"—for the SEC Commissioners and the MSPB members—unconstitutionally "stand in the President's way." *Id.* at 465.

*Jarkesy* is dispositive. There is no relevant difference between SEC ALJs and NLRB ALJs. Both are "inferior officers" who "have substantial authority" in agency investigations and

enforcement actions. *Jarkesy*, 34 F.4th at 464; *see Westrock Servs., Inc.*, 366 N.L.R.B. No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]"). And like SEC ALJs, NLRB ALJs are covered by "at least two layers of for-cause protection" that "stand in the President's way." *Jarkesy*, 34 F.4th at 465. Indeed, 5 U.S.C. § 7521(a), which allows an employing agency to remove its ALJs only when the MSPB finds good cause, applies equally to both sets of ALJs; and 5 U.S.C. § 1202(d) applies equally to the MSPB members in both cases as well. And the NLRA explicitly creates removal protection for Board Members: they are removable only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). So, like the SEC ALJs, NLRB ALJs are unconstitutionally insulated from the President's oversight. *See Jarkesy*, 34 F.4th at 464.

The *Jarkesy* holding on SEC ALJs is binding on this Court and flows straightforwardly from prior Supreme Court precedent. *See id.* at 464–65 (applying *Free Enter.*, 561 U.S. at 495–508, and *Lucia v. SEC*, 138 S. Ct. 2044, 2053–54 (2018)). Supreme Court precedent establishes that multi-layer removal-protection violates Article II because it "not only protects [the inferior officers] from removal except for good cause, but withdraws from the President any decision on whether that good cause exists." *Free Enter.*, 561 U.S. at 495. Under this binding precedent, SpaceX is likely to—indeed must—prevail on the merits of this claim.

**B.     The NLRB's Board Members are unconstitutionally insulated from removal.**

The removal protections of the NLRB's Board Members are unconstitutional as well. Unlike ALJs, the NLRB Members are not merely inferior officers; they are *principal* officers who exercise substantial executive power in administering and enforcing the NLRA. Though they are appointed by the President and confirmed by the Senate as principal officers, the President is deprived of his constitutional power to oversee their work because the President can remove them only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).

Recent Supreme Court precedent strongly suggests that this strict removal protection violates Article II of the Constitution given the substantial executive power that the Board wields.

As noted, removal restrictions for executive branch officials are generally unconstitutional. For principal officers, the Supreme Court has recognized only one narrow exception "for multimember expert agencies that do not wield substantial executive power." *Seila L.*, 140 S. Ct. at 2199–200. This exception originated in *Humphrey's Executor v. United States*, 295 U.S. 602, 628 (1935), which determined that the Commissioners of the Federal Trade Commission ("FTC") did not at the time exercise "executive power in the constitutional sense." *Id.* at 628.

Whatever might have been true of FTC Commissioners in 1935, NLRB Members exercise substantial executive power through their administrative, policymaking, and prosecutorial authority. They enforce the NLRA in many ways, including, for example, determining appropriate units for the purpose of collective bargaining, directing representation elections, deciding unfair labor practice charges, and seeking enforcement of unfair labor practice orders in federal court. 29 U.S.C. §§ 159, 160. They also have authority to appoint inferior officers including the executive secretary, attorneys, examiners, regional directors, ALJs, and others. *Id.* § 154.

The Board Members' executive functions are clearly seen in NLRA Section 10(j), which gives the Board quintessentially prosecutorial power: "[t]he Board shall have power . . . to petition [a] United States district court . . . for appropriate temporary relief or restraining order" in response to an alleged unfair labor practice. *Id.* § 160(j). As the Fifth Circuit has found, this petition power "is prosecutorial in nature." *Overstreet*, 625 F.3d at 852. And prosecuting someone for alleged violations of federal law lies at the heart of the Constitution's concept of Executive Power. *See, e.g.*, *United States v. Texas*, 599 U.S. 670, 678–79 (2023); *Seila L.*, 140 S. Ct. at 2200.

Additionally, the removal protections for NLRB Members are also stricter than those that

insulated the FTC Commissioners in 1935 (and still do). The latter are removable "for inefficiency, neglect of duty, or malfeasance in office," *Humphrey's Ex'r*, 295 U.S. at 620 (quoting 15 U.S.C. § 41). NLRB Members, in contrast, are removably only "for neglect of duty or malfeasance in office," but not for other causes like inefficiency, 29 U.S.C. § 153(a). Allowing Congress to eliminate the President's ability to remove principal officers for inefficiency would be an unjustified expansion of *Humphrey's Executor*. *See Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021) ("The President must be able to remove not just officers who disobey his commands but also those he finds 'negligent and inefficient[.]'" (quoting *Myers*, 272 U.S. at 135)).

The Supreme Court has repeatedly declined to expand *Humphrey's Executor*. For example, in *Free Enterprise*, the Court held that *Humphrey's Executor* does not apply when inferior officers are shielded by two layers of removal protections. *Free Enter.*, 461 U.S. at 493. In *Seila Law* and *Collins*, the Court confirmed that *Humphrey's Executor* does not apply when an independent agency is led by a single director. *Seila L.*, 140 S. Ct. at 2192; *Collins*, 141 S. Ct. at 1783–84. Indeed, *Humphrey's Executor* has recently been called into serious question. *See, e.g.*, *Seila L.*, 140 S. Ct. at 2198 n.2; *id.* at 2217 (Thomas, J., concurring in part and dissenting in part). While recognizing that only the Supreme Court has the prerogative to overrule its own decisions, SpaceX expressly preserves the argument that *Humphrey's Executor* should be overturned, particularly given more recent precedent. *Id.* But the key point here is that there is no basis to expand *Humphrey's Executor* to NLRB Members, who wield greater executive power than the 1935 FTC yet are more protected from presidential oversight. SpaceX is likely to prevail on this claim, too.

## C. The NLRB's adjudication of private rights and legal relief violates the Seventh Amendment.

The NLRB proceeding against SpaceX also violates the Seventh Amendment, which preserves the right to trial by jury "[i]n Suits at common law." U.S. CONST. amend. VII. Today's

Board claims authority to award extensive compensatory damages to make employees whole for alleged violations of their legal rights. This effort to adjudicate private rights and afford legal relief without the safeguards of juries and an impartial judiciary, as Article III requires, far exceeds the constitutional bounds for administrative adjudications.

The Fifth Circuit has recently reaffirmed that the right to trial by jury "is a 'fundamental' component" of the American legal system and "one of our most vital barriers to governmental arbitrariness." *Jarkesy*, 34 F.4th at 452 (citation omitted). In applying the Seventh Amendment, a court must determine (1) "whether [the] action's claims arise 'at common law' under the Seventh Amendment" and, if so, (2) "whether the Supreme Court's public-rights cases nonetheless permit Congress to assign it to agency adjudication without a jury trial." *Id.* at 453 (citation omitted). "This analysis applies not only to common-law forms of action, but also to causes of action created by congressional enactment." *Tull v. United States*, 481 U.S. 412, 417 (1987).

The NLRB proceeding against SpaceX involves claims that arise at common law within the meaning of *Jarkesy* and *Tull*. The Board has lately taken the view that it may, and should, award broad monetary relief "to compensate affected employees for all direct or foreseeable pecuniary harms that these employees suffer as a result of the [employer's] unfair labor practice." *See Thryv*, 372 N.L.R.B. No. 22, slip op. at 1. This compensation includes not just backpay, *see* 29 U.S.C. § 160(c), but also such items as "interest and late fees on credit cards" and other "credit card debt," "penalties" based on "early withdrawals" from a "retirement account" to cover living expenses, compensation for loss of a "car" or "home" based on an inability "to make loan or mortgage payments" or "rent," and new or increased "transportation or childcare costs," among other things. *Thryv*, 372 N.L.R.B. No. 22, slip op. at 9–10 (citation omitted). Other than backpay, these categories of monetary relief are not found in the statute. But the Board has nonetheless

11

authorized them to "mak[e] employees whole" and "to restore the wronged to the position he would have occupied but for the action of the wrongdoer." *Id.* at 8, 10 (citation omitted); *see also id.* at 12.

In accordance with *Thryv*, the NLRB's administrative complaint against SpaceX specifies that the General Counsel seeks all relief as may be just and proper to remedy the unfair labor practices alleged. *See* Eschbach Decl., Ex. B-1 at 9. Under current Board precedent, this relief would include the newly authorized damages "to compensate [unlawfully terminated] employees for all direct or foreseeable pecuniary harms that these employees suffer as a result of" the unlawful termination. *Thryv*, 372 N.L.R.B. No. 22, slip op. at 1.

The Supreme Court has recognized that "compensatory damages," or "monetary relief for all losses . . . sustained as a result of the alleged breach of . . . duties," are "the classic form of *legal* relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (some emphasis omitted). And an action by an employee against an employer seeking full compensation arising from an alleged wrongful discharge is akin to a proceeding seeking compensatory and consequential damages for a breach of contract or for a tort. *Cf. Fortune v. Nat'l Cash Reg. Co.* 364 N.E.2d 1251, 1257 (Mass. 1977) (treating bad-faith discharge of an at-will employee as a breach of contract); *Petermann v. Teamsters Loc. 396*, 344 P.2d 25, 27–28 (Cal. Ct. App. 1959) (recognizing cause of action for discharge in violation of public policy). For this reason, the Board's administrative proceeding against SpaceX is "more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty." *Tull*, 481 U.S. at 417.[1]

The public-rights doctrine does not authorize Congress to assign these claims to

---

[1] SpaceX believes backpay is compensatory relief and thus legal in nature, but even if backpay were considered equitable, the other forms or relief recently authorized by the NLRB in *Thryv* and sought in the administrative proceedings are clearly compensatory and thus legal in nature.

administrative agencies. Again, the Board's admitted purpose is "making employees whole" and remedying the private wrong. *Thryv*, 372 N.L.R.B. No. 22, slip op. at 8, 10, 12. In this way, the Board is explicitly aiming beyond the vindication of public rights—"the public interest in effecting federal labor policy"—and instead focusing on "the wrong done the individual employee." *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 573 (1990) (citation omitted). Denying the Board the ability to award this form of compensation would not "dismantle the statutory scheme." *Jarkesy*, 34 F.4th at 455. "Common-law courts have [awarded compensatory damages] for centuries," *id.*, yet the Board's latest claim of authority to do so is a novelty, not something expressly authorized by the statute itself.

The fact that the original design of the NLRB may have passed constitutional scrutiny under the Seventh Amendment, *see NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 47 (1937); *Atlas Roofing Co., Inc. v. OSHRC*, 430 U.S. 442, 453 (1977), does not mean that the agency's current operations do. Nor, in any event, would Congress have carte blanche to ignore the Seventh Amendment and Article III, even if it had wanted to do so, simply by creating a new statutory framework and administrative agency. Congress cannot "conjure away the Seventh Amendment by mandating that traditional legal claims" proceed before "an administrative tribunal." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989); *see also Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1372–73 (2018) ("Congress cannot 'confer the Government's "judicial Power" on entities outside Article III.'"). As originally conceived, the NLRB was limited to awarding the narrow relief enumerated in the statute, consistent with the Board's mandate to act as "as a public agent" rather than a provider of a "private administrative remedy." *Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.*, 309 U.S. 261, 265, 269 (1940) (citation omitted). Now, however, the Board aims to provide full compensatory relief to make

13

private individuals whole—*i.e.*, private legal remedies—violating the Seventh Amendment and thus Article III as well. *See Oil States*, 138 S. Ct. at 1379 (noting the connection between the Seventh Amendment right and Article III).

The *Thryv* majority's decision to become a source of compensatory damages to remedy private wrongs readily differentiates this case from *Bell*, where this Court preliminarily found, pending further summary judgment briefing, that 8 U.S.C. § 1324b administrative proceedings, which enforce "immigration and employment laws" through a set of enumerated remedies that include specific monetary penalties, "protect[ed] public rights and are thus excepted from the Seventh Amendment." 2023 WL 8885128, at *5. The broad compensatory monetary damages at issue in the Board's administrative proceeding is not a vindication of public rights but an effort to adjudicate private rights focused on the alleged wrong done to the individual employees identified in the charge. *See, e.g.*, *Stern v. Marshall*, 564 U.S. 462, 489 (2011) (observing that "the liability of one individual to another under the law" is a matter "of private right" (citation omitted)). Under *Jarkesy* and the Supreme Court precedent that it implements, SpaceX is likely to succeed on the merits of this claim.[2]

### D. The NLRB Members' blending of functions violates the separation of powers and due process.

The final structural constitutional defect in the NLRB's proceedings against SpaceX is the combination of both prosecutorial and adjudicative functions by the Board Members. The Regional

---

[2] SpaceX expressly preserves the argument that the Supreme Court should revisit *Jones & Laughlin* and *Atlas Roofing* to the extent that they could be read more broadly as allowing the NLRB to adjudicate disputes between employers and employees. *See, e.g.*, *Granfinanciera*, 492 U.S. at 66 (Scalia, J., concurring in part and concurring in the judgment) ("The notion that the power to adjudicate a legal controversy between two private parties may be assigned to a non-Article III, yet federal, tribunal is entirely inconsistent with the origins of the public rights doctrine.").

Director has indicated that it has submitted or will soon submit to the NLRB's Injunction Litigation Branch a recommendation on whether the Board Members should petition a federal court for injunctive relief under Section 10(j) of the NLRA. *See* Compl. ¶ 128; ECF No. 29 at 4, 11 n.59. Under the Board's procedures, the Board Members themselves authorize decisions to seek Section 10(j) relief,[3] but then also preside over administrative appeals from NLRB ALJs' unfair labor practice decisions involving the same subject matter. In other words, when Board Members accept a recommendation to file a Section 10(j) petition, they act both as prosecutors and adjudicators.

The Constitution does not permit the same agency officials to be both prosecutors and judges. Even for *state* officials, the Supreme Court has held that "an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Williams*, 579 U.S. at 8. In *Williams*, the Supreme Court held that a state supreme court justice violated the Fourteenth Amendment Due Process Clause by participating in postconviction review proceedings in a death-penalty case whose prosecution he had authorized decades earlier. 579 U.S. at 4–7. The Court concluded that the justice's dual prosecutorial and adjudicative roles violated "[t]he due process guarantee that 'no man can be a judge in his own case.'" *Id.* at 9. The Constitution therefore mandated that the prior prosecutor recuse from serving as an adjudicator. *Id.* at 16.

This constitutional principle applies equally in the agency context, as the Arizona Supreme Court explained in *Horne v. Polk*, 394 P.3d 651 (Ariz. 2017). There, the court reviewed a due-process challenge to the dual roles a "Special Arizona Attorney General" played when both prosecuting a violation of the Arizona campaign finance laws and reviewing (and rejecting in part) the ALJ's recommendation. In analyzing the constitutional challenge, the Arizona Supreme Court

---

[3] *See* Office of the General Counsel, *Section 10(j) Manual* §§ 5.2–5.5, at 13–16 (Feb. 2014), https://www.nlrb.gov/sites/default/files/attachments/basic-page/node-1727/MASTER%20 REVISED%202013%2010(J)%20MANUAL.pdf.

concluded that both federal and state law (including *Williams*) dictated "that due process does not allow the same person to serve as an accuser, advocate, and final decisionmaker in an agency adjudication." *Id.* at 659. While "[t]he agency head may supervise personnel involved in such functions . . . if she makes the final agency decision, she must be isolated from advocacy functions and strategic prosecutorial decisionmaking and must supervise personnel involved in those functions in an arms-length fashion." *Id.* Because the Special Arizona Attorney General "assumed an advocacy role during the ALJ proceedings," the court concluded that "the due process guarantee prohibited her from then serving as the final adjudicator" on appeal. *Id.*

The Section 10(j) approval process that is evidently already underway against SpaceX[4] violates not just due process principles but also the separation of powers rules that apply within the federal government.  Because a Section 10(j) proceeding seeks preliminary injunctive relief, the decision also rests on whether the alleged violations threaten "irreparable harm" to the Board or the Charging Parties. *Section 10(j) Manual*, *supra*, §§ 4.0, 5.2.1, at 10, 13. In these ways, NLRB Members who grant their approval to request Section 10(j) relief express their assessment that (1) the subject of the enforcement proceeding is likely to lose on the merits of the case and (2) the NLRB's interests outweigh the subject's interests.

This approval process is far from neutral. By design, the NLRB's Section 10(j) approval process relies primarily on the presentation in the "Go 10(j)" memorandum prepared by one side— the NLRB inferior officers who wish to litigate the alleged statutory violations. This memorandum provides the administrators' views about "the relevant facts and legal arguments and authorities establishing the violations," the NLRB officials' "responses to defenses raised by the [charged

---

[4] In its Motion to Transfer (ECF No. 29 at 11 n.59), the NLRB admits that a Section 10(j) proceeding against SpaceX "is being considered."

party],'" and the administrators' "responses [to the charged party's] arguments against 10(j)" relief. *Section 10(j) Manual*, *supra*, § 5.2.1, at 13. Even after relying on this one-sided presentation of the facts and law as their primary basis for authorizing Section 10(j) proceedings, the same NLRB Members often judge whether the same charged parties have engaged in the alleged unfair labor practices, and issue findings of fact, orders, and remedies that are then subject to deferential judicial review. 29 U.S.C. § 160(c), (e)–(f).

After having placed their imprimatur on a federal-court filing that alleges, on behalf of the NLRB itself, that a specific party has likely violated the NLRA in ways that cause irreparable harm to the Board or third parties, there is a substantial risk that such NLRB Members will be "psychologically wedded" to that position when they adjudicate the administrative complaint. *Williams*, 579 U.S. at 11 (citation omitted). If, in the meantime, the agency's bid for Section 10(j) relief has succeeded, that risk is even greater. For Board Members might "be influenced by an improper, if inadvertent, motive to validate and preserve the result obtained through the adversary process" in federal court. *Id.* The Constitution prohibits adjudicative proceedings that are tainted in this way, and SpaceX is likely to succeed on this claim also.

## II.    SpaceX will suffer irreparable harm without a preliminary injunction.

SpaceX also meets the second requirement for a preliminary injunction: irreparable harm. Without preliminary relief from this Court, SpaceX will be required to undergo an unconstitutional proceeding before an insufficiently accountable agency official, without the jury it is entitled to, and without the basic due process of an unbiased decisionmaker consistent with the separation of powers. None of these constitutional injuries would be remediable after the administrative process. Unless this Court grants a preliminary injunction blocking the NLRB proceedings, SpaceX will suffer "harm for which there is no adequate remedy at law." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013).

A.      **The unconstitutionality of the NLRB proceedings inflicts irreparable harm.**

In general, deprivations of constitutional rights are irreparable injuries, as this Court has recognized. *Bell*, 2023 WL 8885128, at *4 ("Deprivation of a constitutional right unquestionably constitutes irreparable injury." (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Other authorities are in accord. *See, e.g.*, *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (denial of constitutional rights "for even minimal periods of time constitutes irreparable injury"); 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (3d ed. 2023) (Where "deprivation of a constitutional right is involved, . . . most courts hold that no further showing of irreparable injury is necessary.").

And the Supreme Court recently held that a party that is subject to a proceeding before a decisionmaker who is unconstitutionally insulated from presidential oversight suffers irreparable harm. *Axon*, 598 U.S. at 191. The Court recognized that "being subjected to unconstitutional agency authority . . . by an unaccountable ALJ . . . is a here-and-now injury" that is "impossible to remedy once the proceeding is over." *Id*. An appellate court "could of course vacate the [agency]'s order," but a "separation-of-powers claim" challenging unconstitutional removal protections "is not about that order." *Id*. Such a claim "is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker." *Id.* And once the proceeding has concluded, a court is unable to remedy that harm: "[a] proceeding that has already happened cannot be undone," and so "[j]udicial review . . . would come too late to be meaningful." *Id*. at 191–92. This reasoning is directly applicable to both of SpaceX's removal-protection claims.

The NLRB may point to inapposite cases where courts have refused to invalidate agency action taken by unconstitutionally insulated Executive Branch officials. *See, e.g., Community Fin. Servs. Ass'n of Am. Ltd. v. CFPB*, 51 F.4th 616, 625 (5th Cir. 2022) (plaintiffs sought to enjoin enforcement of already-promulgated regulation); *Collins v. Dep't of the Treasury*, No. 22-20632,

2023 WL 6630307, at *7 (5th Cir. Oct. 12, 2023). Such cases are not on-point because they did not reject the availability of relief from the continuing burdens of ongoing unconstitutional proceedings. The Supreme Court has made clear that a challenge to an agency's "power to proceed at all" differs from a challenge to "action[s] [already] taken in the agency proceedings." *Axon*, 598 U.S. at 192. Being subjected "to an illegitimate proceeding, led by an illegitimate decisionmaker," again, is a constitutional injury that "cannot be undone" after the fact. *Id*. at 191; *see also Cochran v. SEC*, 20 F.4th 194, 212-213 (5th Cir. 2021), *aff'd and remanded sub nom.*, *Axon*, 598 U.S. 175 (if removal claim is "meritorious," plaintiff should not be "forc[ed] to litigate before an ALJ who is unconstitutionally insulated from presidential control"); *Alpine Sec. Corp. v. FINRA*, No. 23-5129, 2023 WL 4703307, at *3 (D.C. Cir. July 5, 2023) (Walker, J., concurring) (finding an injunction of an administrative adjudication pending appeal appropriate based on *Axon* because the plaintiff was likely to prevail on claim that officers were unlawfully "shielded from removal").

The deprivation of SpaceX's right to a jury during the NLRB proceedings will also create irreparable harm. Because SpaceX is "entitled under the Seventh Amendment to a jury trial, the irreparable injury requirement is automatically satisfied without the need to consider Plaintiff's particular showings." *Burgess v. FDIC*, 639 F. Supp. 3d 732, 749 (N.D. Tex. 2022). As with having to proceed before unaccountable executive officials, having to proceed without a jury outside an Article III court cannot be remedied after the proceeding has already run its course. *Cf. Ward v. Vill. of Monroeville*, 409 U.S. 57, 61–62 (1972) (A flawed adjudicative process cannot "be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication. Petitioner is entitled to a neutral and detached judge in the first instance.").

Proceeding before biased adjudicators is an irreparable injury as well. Even if a court eventually orders a rehearing without participation by any Board Members who authorized the

19

Section 10(j) petition, this may not "guarantee complete relief." *Williams*, 579 U.S. at 16. For example, any newer Board Members appointed after the Section 10(j) petition who preside over the eventual administrative appeal and are "exposed to a disqualified [Member]" who did authorize the petition, may be "influenced by their colleague's views when they rehear the case." *Id.* And, more broadly, being "deprived of procedural due process . . . is in itself irreparable injury." *Assoc. Builders & Contractors of Tex. Gulf Coast, Inc. v. U.S. Dep't of Energy*, 451 F. Supp. 281, 286 (S.D. Tex. 1978). In short, each constitutional claim poses its own irreparable harm.

**B.     The unconstitutional NLRB proceedings inflict irreparable economic harm.**

While the unconstitutional nature of the proceeding is enough to establish irreparable harm, the record reflects that the real-world burdens of that proceeding constitute additional irreparable harm. Responding to the charges and preparing for the upcoming hearing has involved and will continue to involve extensive preparation by SpaceX and its counsel. Gallman Decl. ¶¶ 13-17. This comes at a time when SpaceX is preparing for numerous challenging missions, including national security missions for U.S. defense/intelligence agencies and flying astronauts for NASA and civilian spaceflight participants. *Id.* ¶¶ 18-19. Having to prepare for and participate in the NLRB proceedings imposes significant burdens on employee time and company resources. *Id.* ¶¶ 17, 20. In addition, the existence of the NLRB's complaint and media coverage of the proceedings are likely to hurt SpaceX's reputation and thus its ability to compete for and retrain talent, as SpaceX values its reputation as a leading engineering employer while the government publicly (and falsely) portrays SpaceX as having engaged in unfair labor practices. *Id.* ¶¶ 21-23. The federal government often uses these financial and reputational harms to its advantage. *Cf. Axon*, 598 U.S. at 216 (Gorsuch, J., concurring) ("Aware, too, that few can outlast or outspend the federal government, agencies sometimes use this as leverage to extract settlement terms they could not lawfully obtain any other way."). But there is no way to recover the lost time, money, or talent caused by these

proceedings, even if SpaceX is eventually successful in getting an administrative rehearing that avoids the constitutional defects identified above. Without a stay of these proceedings until the Court can award a constitutionally adequate remedy, SpaceX will suffer concrete harm that will not be recoverable.

### III.   The balance of harms and public interest favor a preliminary injunction.

SpaceX satisfies the two remaining preliminary injunctive factors as well. Where, as here, the government is a defendant, the balance of harms and the public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Both factors tilt strongly in favor of SpaceX. Given its likelihood of success on the merits, an injunction would not harm Defendants because the government suffers no cognizable harm from stopping "the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *see also, e.g.*, *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021). Nor would an injunction "disserve the public interest." *Louisiana*, 55 F.4th at 1022; *see also BST Holdings*, 17 F.4th at 618; *Daniels Health Scis.*, 710 F.3d at 585 ("[T]he public is served when the law is followed."); *League of Women Voters*, 838 F.3d at 12. It is not in the public interest to have an increasingly expansive Executive Branch that nonetheless "slip[s] from the Executive's control, and thus from that of the people," *Free Enter.*, 561 U.S. at 499, or that infringes the constitutional imperative that "the judiciary remain[] truly distinct from . . . the executive," *Stern*, 564 U.S. at 483 (alteration in original) (quoting THE FEDERALIST No. 78, at 466 (Alexander Hamilton) (C. Rossiter ed. 1961)). And even if the Court grants the injunction but ultimately determines the proceedings are constitutional (or fixes the constitutional defects), Defendants could then proceed with the NLRB proceedings at that time. The NLRB took from November 16, 2022 until January 3, 2024 to file a complaint on the employees' charges. Compl. ¶¶ 47-50. A brief additional delay would not work any meaningful harm.

**IV.     Severability arguments cannot defeat SpaceX's right to a preliminary injunction.**

SpaceX anticipates that Defendants may argue against a preliminary injunction on the premise that any constitutional defects that may exist within the NLRA are severable from the statute as a whole. In *Bell*, this Court declined to issue a preliminary injunction on the removal-protection claims there based on a finding of severability. 2023 WL 8885128, at *5. SpaceX respectfully submits that the possibility of ultimately severing unconstitutional provisions from the NLRA does not detract from SpaceX's entitlement to a preliminary injunction now.

The question of severability is relevant to the scope of the remedy at final judgment, not whether SpaceX is entitled to preliminary relief pending the Court's final decision. *See Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328, (2006) (describing severability as "a question of remedy"). Courts may issue a preliminary injunction to preserve parties' rights even if the ultimate relief they could receive differs from the requested preliminary injunctive relief. *See e.g., Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) (noting that a party seeking only declaratory relief was still entitled to a preliminary injunction because "prior to final judgment there is no established declaratory remedy comparable to a preliminary injunction; unless preliminary relief is available upon a proper showing, plaintiffs in some situations may suffer unnecessary and substantial irreparable harm"). So even if the unconstitutional statutory provisions here could all ultimately be severed at final judgment without impeding other aspects of the NLRB's functions, such a possibility neither undermines SpaceX's likelihood of success on the merits of its constitutional claims nor its demonstration of irreparable harm in the meantime.

As to likelihood of success, the severability of an unconstitutional provision would not mean that SpaceX's claim fails. Just the opposite: SpaceX seeks declaratory relief as well as injunctive relief. For example, in *Free Enterprise*, the Supreme Court severed an unconstitutional removal protection, but still ruled in the challengers' favor: even though the challengers were "not

entitled to broad injunctive relief against the [PCAOB's] continued operations," they were still "entitled to declaratory relief sufficient to ensure that the [legal] standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive." 561 U.S. at 513. SpaceX seeks and is entitled that same relief here, even if the Court ultimately determines not to permanently enjoin the NLRB's operations.

And as to irreparable harm, once again, the Supreme Court has recognized the "here-and-now injury" that exists when a party is subject to an unconstitutional administrative proceeding. *Axon*, 598 U.S. at 191. SpaceX "will lose [its] rights not to undergo the complained-of agency proceedings if they cannot assert those rights until the proceedings are over." *Id.* at 192. Without a stay or other postponement of the NLRB proceedings, much of those proceedings will have already happened by the time the Court issues a final decision on the merits of SpaceX's claims. At that point, a declaratory remedy would no longer be able to fully repair the constitutional harm.

In any event, this case is a particularly bad candidate to make the availability of preliminary injunctive relief turn on the possibility of severing unconstitutional provisions. The severability questions here are much more daunting than in *Bell*. The removal-protection problems here are markedly worse than in *Bell*, where ALJ in the Office of the Chief Administrative Hearing Officer ("OCAHO") was subject to for-cause removal by the Attorney General, an official who is already removable at will. So severing the removal protections for the ALJ and the MSPB members "make the OCAHO ALJs accountable to the President." *Bell*, 2023 WL 8885128, at *5. In this case, by contrast, severing those same provisions would not necessarily fix the problems, because the ALJs are subject to for-cause removal by the NLRB Members, who are *not* removable at will. Even if the President can remove MSPB Members without cause, and even if the NLRB can remove its ALJs without cause, such ALJs still are not directly accountable to the President because the NLRB

Members' removal protection would remain a barrier. Put differently, while the ALJs in *Bell* had two layers of removal protection, the ALJs here have three. And it is not at all clear which of the removal protections, if any, Congress would have been willing to give up.

On the one hand, the removal protections that the APA gives to ALJs are "a central part of the Act's overall scheme." *Lucia*, 138 S. Ct. at 2060 (Breyer, J., concurring in the judgment in part) (explaining that the APA's creation of independent ALJs was, in part, a response to complaints about "the perceived 'evils' of commingling adjudicative and prosecutorial functions in agencies" (quoting *Wong Yang Sung v. McGrath*, 339 U.S. 33, 41–46 (1950)). Congress enacted and, over time, refined these protections so ALJs would not be perceived as "mere tools of the agency concerned and subservient to the agency heads." *Ramspeck v. Federal Trial Exam'rs Conf.*, 345 U.S. 128, 130 (1953). To that end, Congress eventually created the MSPB in the Civil Service Act of 1978, Pub. L. No. 95-454, § 1202(d), 92 Stat. 1111, and provisions designed to "confer upon [MSPB] members a tenure akin to that of the Federal judiciary." Civil Service Reform: Hearings on H.R. 11280 Before the H. Comm. on Post Off. & Civ. Serv., 95th Cong. 824 (1978); *see* 5 C.F.R. § 1200.1 ("The [MSPB] is an independent Government agency that operates like a court."). Severing the ALJ and MSPB removal protections would override Congress's choices.

At the same time, Congress also designed the NLRB to be an independent agency insulated from presidential, and thus political, control. Both the text of the provision creating the Board and the legislative history make clear that "Congress wanted the Board to be independent of the executive branch." Daniel P. O'Gorman, *Construing the National Labor Relations Act: The NLRB and Methods of Statutory Construction*, 81 TEMP. L. REV. 177, 183 (2008). Senator Wagner, the key architect of the original NLRA (often called the "Wagner Act"), stated that the creation of the NLRB was a response to pleas "for a dignified administrative tribunal, detached from any

particular administration that happens to be in power, and entitled to deal quasi-judicially with issues with which the courts have neither the time nor the special facilities to cope." NAT'L LABOR RELATIONS BD., LEGISLATIVE HISTORY OF THE NATIONAL LABOR RELATIONS ACT OF 1935, at 1428 (1949). The NLRB was designed against the backdrop of a prior labor board, the National Labor Board, which was seen as ineffective because of its reliance on the Justice Department to enforce its orders and which answered directly to the President. *See* Michael J. Heilman, *The National Labor Relations Act at Fifty: Roots Revisited, Heart Rediscovered*, 23 DUQ. L. REV. 1059, 1069 (1985). This history is very different from that which the Court considered in addressing severability in *Seila Law*, where the petitioners failed to show that the independence of the Consumer Financial Protection Board ("CFPB") was a driving factor for establishing the agency. *Seila Law* 140 S. Ct. at 2210.

Given the interrelationship between these statutes, deciding which removal restrictions to sever is a difficult question better suited to full briefing on the merits rather than a preliminary injunction decision, or better yet to Congress. Each of the three removal protections reflects Congress's conscious decision to instill administrative proceedings with political independence (rather than political accountability). And deciding at this juncture to sever one, two, or three of these deliberately adopted provisions risks "circumvent[ing] the intent of the legislature," *Ayotte*, 546 U.S. at 330, and violating the "obligation to avoid judicial legislation," *United States v. Nat'l Treas. Emps. Union*, 513 U.S. 454, 479 (1995). Severability should be addressed a later stage and/or in a different branch, and SpaceX's right to avoid unconstitutional administrative proceedings should be protected in the meantime.

## CONCLUSION

For all these reasons, the Court should enter a preliminary injunction against the NLRB's administrative proceedings against SpaceX.

Dated: January 12, 2024

Respectfully submitted,

By:      *s/ Catherine L. Eschbach*

**MORGAN LEWIS & BOCKIUS LLP**
Catherine L. Eschbach
Attorney-In-Charge
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5006
catherine.eschbach@morganlewis.com
(713) 890-5719

Harry I. Johnson, III (*pro hac vice*)
2049 Century Park East, Suite 700
Los Angeles, CA 90067-3109
(310) 907-1000

Michael E. Kenneally (*pro hac vice*)
Amanda L. Salz (*pro hac vice*)
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004-2541
michael.kenneally@morganlewis.com
amanda.salz@morganlewis.com
(202) 739-3000

*Attorneys for Plaintiff*
*Space Exploration Technologies Corp.*

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.1(d), I hereby certify that on January 12, 2024, I conferred with counsel for the Defendants via email, who represented that Defendants oppose the foregoing motion.

_s/ Catherine L. Eschbach_
Catherine L. Eschbach

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification to all parties of record.

_s/ Catherine L. Eschbach_
Catherine L. Eschbach
