**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., <br><br>        Plaintiff, <br><br>   v. <br><br> NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board, <br><br>        Defendants. | Case No. 24-cv-0001 |

**DEFENDANTS' RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Background .................................................................................................................. 1

   I. Statutory and regulatory background ................................................................. 1

   II. Procedural history .......................................................................................... 4

Legal Standard .......................................................................................................... 6

Argument .................................................................................................................. 7

   I. SpaceX cannot establish irreparable harm, the lack of which is fatal to its injunction bid. .... 7

      A.    There is no irreparable harm as to ALJ or Board member removability (Counts I and II) ........................................................................................................ 8

      B.    SpaceX's Seventh Amendment claim is too speculative to constitute irreparable harm (Count III). ............................................................................................... 15

      C.    SpaceX's combination-of-functions claim is also too speculative to constitute irreparable harm (Count IV). ........................................................................... 16

      D.    Harms incident to litigation do not constitute irreparable injury. ................. 18

   II. SpaceX is not likely to succeed on any of its claims. ......................................... 19

      A.    Because venue in the Southern District of Texas is improper, the case should be dismissed or transferred; declaratory relief is unavailable to SpaceX. ................. 19

      B.    SpaceX fails to show that any ALJ would have been removed but for removal protections (Count I); in addition, ALJ tenure protections are constitutional...................... 20

      C.    Board members' removal protections (Count II) are constitutional under Humphrey's Executor and Fifth Circuit law. .......................................................................... 24

      D.    SpaceX's Seventh Amendment claim (Count III) is beyond this Court's subject-matter jurisdiction and contrary to controlling law............................................ 28

      E.    Not only is jurisdiction lacking to hear SpaceX's combined-functions claim (Count IV), the Fifth Circuit recently rejected an indistinguishable argument. ................. 32

   III. The balance of the equities and the public interest factors counsel against granting a preliminary injunction........................................................................................ 33

Conclusion ................................................................................................................ 35

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aerojet Gen. Corp.*,
  144 NLRB 368 (1963) ................................................................................ 34

*Agwilines, Inc. v. NLRB*,
  87 F.2d 146 (5th Cir. 1936) ............................................................ 16, 26, 30

*Air Prods. & Chems., Inc. v. FERC*,
  650 F.2d 687 (5th Cir. 1981) .................................................................... 32

*Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*,
  No. 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023) ......................... 10

*Anibowei v. Morgan*,
  70 F.4th 898 (5th Cir. 2023) ........................................................................ 6

*Anniston Yarn Mills*,
  103 NLRB 1495 (1953) .............................................................................. 21

*Ashcroft v. Mattis*,
  431 U.S. 171 (1977) ................................................................................... 15

*Associated Builders & Contractors of Texas Gulf Coast, Inc. v. U.S. Dep't of Energy.*,
  451 F. Supp. 281 (S.D. Tex. 1978) ............................................................ 17

*Atlas Roofing Co. v. OSHRC*,
  430 U.S. 442 (1977) ............................................................................. 29, 30

*Axon Enter., Inc. v. FTC*,
  598 U.S. 175 (2023) ........................................................................... passim

*Ayotte v. Planned Parenthood of Northern New England*,
  546 U.S. 320 (2006) ................................................................................... 14

*Baldwin Metals Co., Inc. v. Donovan*,
  642 F.2d 768 (5th Cir. 1981) .................................................................... 17

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
  140 S. Ct. 2335 (2020) .............................................................................. 11

*Barrera-Montenegro v. United States*,
  74 F.3d 657 (5th Cir. 1996) ...................................................................... 17

*Benisek v. Lamone*,
  138 S. Ct. 1942 (2018) (per curiam) ............................................................ 7

*Bill Johnson's Rests., Inc. v. NLRB*,
  461 U.S. 731 (1983) ................................................................................... 34

*Boire v. Pilot Freight Carriers, Inc.*,
  515 F.2d 1185 (5th Cir. 1975) ................................................................ 4, 32

*Bokat v. Tidewater Equip. Co.*,
  363 F.2d 667 (5th Cir. 1966) ................................................... 4, 16, 31, 32

*Bradley Lumber Co. of Ark. v. NLRB*,
  84 F.2d 97 (5th Cir. 1936) ........................................................................ 18

*Burgess v. FDIC*,
  639 F. Supp. 3d 732 (N.D. Tex. 2022) ..................................................... 10

*Burnley v. Thompson*,
  524 F.2d 1233 (5th Cir. 1975) ........................................................................ 17
*Byrum v. Landreth*,
  566 F.3d 442 (5th Cir. 2009) ............................................................................ 7
*Calcutt v. FDIC*,
  37 F.4th 293 (6th Cir. 2022) ....................................................................... 10, 11
*Care One, LLC v. NLRB*,
  No. 3:23-cv-00831 (RNC), 2023 WL 6457641 (D. Conn. Oct. 4, 2023) ............... 10
*Carpenters Loc. 370 (E. Contractors Ass'n)*,
  332 NLRB 174 (2000) ...................................................................................... 21
*CashCall, Inc.*,
  35 F.4th 734 (9th Cir. 2022) ............................................................................ 10
*Chacon v. Granata*,
  515 F.2d 922 (5th Cir. 1975) ........................................................................... 15
*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ......................................................................................... 15
*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
  51 F.4th 616 (5th Cir. 2022) ................................................................. 9, 10, 11
*Collins v. Dep't of the Treasury*,
  83 F.4th (5th Cir. 2023) ............................................................................. 9, 10
*Collins v. Yellen*,
  141 S. Ct. 1761 (2021) ......................................................................... 9, 10, 11
*Consumers' Rsch. v. Consumer Prod. Safety Comm'n*,
  No. 22-40328, 2024 WL 177326 (5th Cir. Jan. 17, 2024) ......................... passim
*Curtis v. Loether*,
  415 U.S. 189 (1974) ....................................................................................... 30
*Decker Coal Co. v. Pehringer*,
  8 F.4th 1123 (9th Cir. 2021) ........................................................................... 23
*Deerfield Med. Ctr. v. City of Deerfield Beach*,
  661 F.2d 328 (5th Cir. 1981) ............................................................................ 7
*Dish Network Corp. v. NLRB*,
  953 F.3d 370 (5th Cir. 2020) ............................................................... 3, 21, 27
*Distributed v. U.S. Dep't of State*,
  838 F.3d 451 (5th Cir. 2016) ........................................................................... 34
*Doran v. Salem Inn*,
  422 U.S. 922 (1975) ....................................................................................... 14
*Eisenberg v. Holland Rantos Co.*,
  583 F.2d 100 (3d Cir. 1978) ............................................................................ 33
*Elrod v. Burns*,
  427 U.S. 347 (1976) ......................................................................................... 7
*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,
  762 F.2d 464 (5th Cir. 1985) ........................................................................... 19
*ESI, Inc.*,
  296 NLRB 1319  (1989) ................................................................................... 21
*Exela Enter. Sols. v. NLRB*,
  32 F.4th 436 (5th Cir. 2022) ...................................................................... 23, 27

*Fiberboard Paper Products v. NLRB*,
  379 U.S. 203 (1964)......................................................................................... 29

*Flamingo Hilton-Laughlin v. NLRB*,
  148 F.3d 1166 (D.C. Cir. 1998)....................................................................... 33

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010).................................................................................. passim

*FTC v. Standard Oil Co. of Cal.*,
  449 U.S. 232 (1980)......................................................................................... 18

*Garner v. Team,*
  *sters, Chauffeurs & Helpers Loc. Union No. 776*, 346 U.S. 485 (1953) ................ 23

*Gibson v. Tex. Dep't of Ins.–Div. of Workers Comp.*,
  700 F.3d 227 (5th Cir. 2012) ........................................................................... 33

*Glazier Grp., Inc. v. Mandalay Corp.*,
  No. CIV.A. H-06-2752, 2007 WL 2021762 (S.D. Tex. July 11, 2007) ............ 19

*Gonzalez-Droz v. Gonzalez-Colon*,
  573 F.3d 75 (1st Cir. 2009) ............................................................................. 17

*Hartz Mountain Corp. v. Dotson*,
  727 F.2d 1308 (D.C. Cir. 1984) ......................................................................... 4

*Hendricks v. Bank of Am., N.A.*,
  408 F.3d 1127 (9th Cir. 2005) ......................................................................... 19

*HHS v. Jarboe*,
  2023 MSPB 22 (Aug. 2, 2023) .......................................................................... 3

*Horne v. Polk*,
  394 P.3d 651 (Ariz. 2017) ............................................................................... 33

*Humphrey's Ex'r*,
  295 U.S. ..................................................................................................... 22, 27

*Illumina, Inc. v. FTC*,
  88 F.4th 1036 (5th Cir. 2023)............................................................... 24, 25, 33

*In re NLRB*,
  304 U.S. 486 (1938).......................................................................................... 3

*Integrity Advance, LLC v. CFPB*,
  48 F.4th 1161 (10th Cir. 2022) ....................................................................... 10

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022)......................................................... 10, 20, 21, 29

*Jarkesy v. SEC*,
  51 F.4th 644 (5th Cir. 2022)............................................................................ 20

*K & R Contractors, LLC v. Keene*,
  86 F.4th 135 (4th Cir. 2023)............................................................................ 10

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
  335 F.3d 357 (5th Cir. 2003)............................................................................. 6

*Kessel Food Mkts., Inc. v. NLRB*,
  868 F.2d 881 (6th Cir. 1989)........................................................................... 33

*Kim v. Fin. Indus. Regul. Auth., Inc.*,
  1:23-CV-02420 (ACR), 2023 WL 6538544 & n.19 (D.D.C. Oct. 6, 2023)......... 8, 10

*Law Offs. of Crystal Moroney, P.C.*,
  63 F.4th 174 (2d Cir. 2023) ....................................................................... 10, 11

*Leachco, Inc. v. Consumer Prod. Safety Commission,*
   No. CIV-22-232-RAW, 2023 WL 4934989 (E.D. Okla. Aug. 2, 2023) ............................... 8, 10

*League of United Latin Am. Citizens v. Abbott,*
   601 F. Supp. 3d 147 (W.D. Tex. 2022)....................................................................... 35

*Lebus v. Manning, Maxwell & Moore, Inc.,*
   218 F. Supp. 702 (W.D. La. 1963) ........................................................................... 4

*Leedom v. Kyne,*
   358 U.S. 184 (1958)................................................................................................. 4

*Lewis v. Casey,*
   518 U.S. 343 (1996)................................................................................................. 14

*Lucia v. SEC,*
   585 U.S. ___, 138 S. Ct. 2044 (2018)................................................................. 10, 21

*M. D. ex rel. Stukenberg v. Abbott,*
   907 F.3d 237 (5th Cir. 2018) .................................................................................. 16

*Miss. Power & Light Co. v. United Gas Pipe Line Co.,*
   760 F.2d 618 (5th Cir. 1985) .................................................................................. 8

*Morrison v. Olson,*
   487 U.S. 654 (1988)......................................................................................... 22, 24

*Munaf v. Geren,*
   553 U.S. 674 (2008)................................................................................................. 6

*Myers v. Bethlehem Shipbuilding Corp.,*
   303 U.S. 41 (1938)........................................................................................... passim

*Myers v. United States,*
   272 U.S. 52 (1926).................................................................................................. 22

*Nathanson v. NLRB,*
   344 U.S. 25 (1953).................................................................................................. 34

*Nat'l Licorice Co. v. NLRB,*
   309 U.S. 350 (1940)............................................................................................... 34

*Nken v. Holder,*
   556 U.S. 418 (2009)................................................................................................. 7

*NLRB v. Aakash, Inc.,*
   58 F.4th 1099 (9th Cir. 2023)................................................................................. 23

*NLRB v. Jones & Laughlin Steel Corp.,*
   301 U.S. 1 (1937)........................................................................................... passim

*NLRB v. Mia. Coca-Cola Bottling Co.,*
   360 F.2d 569 (5th Cir. 1966) .................................................................................. 31

*NLRB v. Sanford Home for Adults,*
   669 F.2d 35 (2d Cir. 1981) ..................................................................................... 33

*NLRB v. Strong,*
   393 U.S. 357 (1969)............................................................................................... 31

*NLRB v. Washington Aluminum Co.,*
   370 U.S. 9 (1962).................................................................................................... 1

*Oil States Energy Servs. LLC v. Greene's Energy Grp. LLC,*
   138 S. Ct. 1365 (2018)........................................................................................... 29

*Overstreet v. El Paso Disposal, L.P.,*
   668 F. Supp. 2d 988 (W.D. Tex. 2009)..................................................................... 4

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
　　734 F.3d 406 (5th Cir. 2013) ............................................................... 35

*Pom Wonderful LLC v. FTC*,
　　894 F. Supp. 2d 40 (D.D.C. 2012) ...................................................... 20

*Pub. Serv. Co. of N.H. v. Town of W. Newbury*,
　　835 F.2d 380 (1st Cir. 1987) ................................................................. 7

*Raley's*,
　　337 NLRB 719 (2002) ......................................................................... 23

*Republic Steel Corp. v. NLRB*,
　　311 U.S. 7 (1940) ................................................................................. 26

*Half Price Books, Recs., Mags., Inc. v. Riepe*,
　　No. CIV.A.3:98-CV-0585-P, 1998 WL 329383 (N.D. Tex. June 12, 1998) ............................. 19

*S. Tours, Inc. v. NLRB*,
　　401 F.2d 629 (5th Cir. 1968) ............................................................... 31

*Schlesinger v. Reservists Comm. to Stop the War*,
　　418 U.S. 208 (1974) ............................................................................. 14

*SEC v. Jarkesy*,
　　143 S. Ct. 2688 (2023) ......................................................................... 21

*Sheffield v. Bush*,
　　604 F. Supp. 3d 586 (S.D. Tex. 2022) .................................................. 7

*Siegel v. Lepore*,
　　234 F.3d 1163 (11th Cir. 2000) ............................................................ 7

*Seila L. LLC v. Consumer Fin. Prot. Bureau*,
　　591 U.S. ---, 140 S. Ct. 2183, 207 L. Ed. 2d 494 (2020) ............ passim

*Sierra Club v. Atlanta Reg'l Comm'n*,
　　171 F. Supp. 2d 1349 (N.D. Ga. 2001) ............................................... 15

*Space Expl. Techs., Corp. v. Bell*,
　　--- F. Supp. 3d ---, No. 1:23-cv-00137, 2023 WL 8885128 (S.D. Tex. Nov. 8, 2023).. 10, 21, 29

*SSA v. Anyel*,
　　58 MSPR 261 (1993) .............................................................................. 3

*SSA v. Burris*,
　　39 MSPR 51 (1988) ................................................................................ 3

*SSA v. Goodman*,
　　19 MSPR 321 (1984) .............................................................................. 3

*St. Paul Ins. Co. v. Trejo*,
　　39 F.3d 585 (5th Cir. 1994) ................................................................. 19

*Swish Mktg., Inc. v. FTC*,
　　669 F. Supp. 2d 72 (D.D.C. 2009) ...................................................... 20

*Tex. All. for Ret. Ams. v. Hughs*,
　　976 F.3d 564 (5th Cir. 2020) ............................................................... 35

*Total Gas & Power N. Am., Inc. v. FERC*,
　　2016 WL 3855865 (S.D. Tex. July 15, 2016) ...................................... 20

*Transwestern Pipeline Co. v. FERC*,
　　626 F.2d 1266 (5th Cir. 1980) ............................................................. 17

*UAW Loc. 283 v. Scofield*,
　　382 U.S. 205 (1965) ............................................................................. 34

*United States v. Benitez-Villafuerte,*
   186 F.3d 651 (5th Cir. 1999) ............................................................. 33
*United States v. Perkins,*
   116 U.S. 483 (1886) ................................................................... 22, 24
*Util. Workers v. Consol. Edison Co. of N.Y.,*
   309 U.S. 261 (1940) ....................................................................... 34
*Va. Elec. & Power Co. v. NLRB,*
   319 U.S. 533 (1943) ....................................................................... 29
*Vaca v. Sipes,*
   386 U.S. 171 (1967) ....................................................................... 34
*Valentine v. Collier,*
   956 F.3d 797 (5th Cir. 2020) ............................................................. 35
*WestRock Services, Inc.,*
   366 NLRB No. 157, slip op. at 3 (2018) ................................................. 2
*Wheeler v. Wexford Health Sources, Inc.,*
   689 F.3d 680 (7th Cir. 2012) .............................................................. 7
*White v. Carlucci,*
   862 F.2d 1209 (5th Cir. 1989) ............................................................ 7
*Wiener v. United States,*
   357 U.S. 349 (1958) ....................................................................... 22
*Williams v. Pennsylvania,*
   579 U.S. 1 (2016) ......................................................................... 33
*Wilson v. Off. of Violent Sex Offender Mgmt.,*
   584 F. App'x 210 (5th Cir. 2014) ......................................................... 7
*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) .................................................................. 6, 7, 16
*Withrow v. Larkin,*
   421 U.S. 35 (1975) ........................................................................ 33

## Statutes

5 U.S.C. § 1202(d) ............................................................................. 4, 12
5 U.S.C. § 3105 .................................................................................. 2, 20
5 U.S.C. § 7521 ...................................................................................... 21
5 U.S.C. § 7521(a) ......................................................................... 3, 11, 12
8  U.S.C. § 1324b .................................................................................. 29
15 U.S.C. § 41 ...................................................................................... 27
15 U.S.C. § 2053(a) ................................................................................ 28
15 U.S.C. §§ 2056(a), 2057, 2064, 2076, 2069(a)–(b), 2071(a) .................................. 26
28 U.S.C. § 1406 .................................................................................... 19
29 U.S.C. §160(e), (f) ......................................................................... 26, 29
29 U.S.C. § 153(a) ....................................................................... 2, 12, 27, 28
29 U.S.C. § 153(d) ....................................................................... 20, 23, 27
29 U.S.C. § 154(a) ................................................................................... 2
29 U.S.C. § 156 ..................................................................................... 20
29 U.S.C. § 157 ...................................................................................... 1
29 U.S.C. § 159(c) .................................................................................. 26

29 U.S.C. § 160(b) ........................................................................................... 2, 14, 26
29 U.S.C. § 160(c) ................................................................................................... passim
29 U.S.C. § 160(j) ........................................................................................ 4, 25, 32
29 U.S.C. §§ 151, 160 ......................................................................................... 34
29 U.S.C. §§ 154, 159, and 160 ......................................................................... 25
Pub. L. 89-554 ...................................................................................................... 21
Pub. L. 92–573 ...................................................................................................... 27
Pub. L. 95-454, 92 Stat. 1137 (1978) ................................................................. 21

Regulations

29 C.F.R. § 101.37 ........................................................................................... 4, 32
29 C.F.R. § 102.46(a) ....................................................................................... 2, 20

Plaintiff Space Exploration Technologies Corp. ("SpaceX") demonstrates no likelihood of irreparable harm arising from Defendant National Labor Relations Board's administrative proceeding because it makes no showing of causal harm as to its officer-removability claims, for which severance—not an injunction—would be the only proper remedy even if harm were actually shown, and because its Seventh Amendment and combination-of-functions claims pose purely speculative harms. Nor is SpaceX likely to succeed on the merits because this Court is an improper venue, jurisdiction is lacking to hear SpaceX's Seventh Amendment and combination-of-function claims, and all four of its claims are foreclosed by binding precedent. Finally, SpaceX also fails to show that the balance of hardships and public interest favor injunctive relief. For these reasons, SpaceX's motion for a preliminary injunction should be denied.

BACKGROUND

## I. Statutory and regulatory background

The National Labor Relations Board ("NLRB") is the principal federal agency protecting the rights of employees under the National Labor Relations Act ("NLRA") to form and join unions and engage in concerted activity for mutual aid and protection.[1] One of the key functions of the Agency—and the function directly at issue in this case—is its role in adjudicating allegations that an employer or union has committed an "unfair labor practice" ("ULP").[2] Such allegations arise out of charges filed by members of the public, and formal proceedings do not commence unless and until the NLRB's General Counsel, or her delegate, finds merit to the

---

[1] 29 U.S.C. § 157 (specifying that employees also have the right to refrain from such activity). The NLRB also protects these rights whether or not employees are unionized or seek or oppose union representation. *See, e.g.*, *NLRB v. Washington Aluminum Co.*, 370 U.S. 9, 14-15 (1962).

[2] *Id.* § 160.

1

charge and issues a complaint.[3] In most cases where a complaint is issued, it will be issued concurrently with a notice of hearing before an administrative law judge ("ALJ").[4]

The NLRB's ALJs are appointed in accordance with the Civil Service Reform Act[5] and the NLRA.[6] Once an ALJ issues a recommended decision, parties may file "exceptions" on any contested issue, asking the Board itself to rule upon the matter.[7] In so deciding, the Board is not bound to accept either the ALJ's findings of fact or conclusions of law.[8] Indeed, the Board has explicit statutory authorization to take additional evidence upon notice to the parties.[9]

The Board is comprised of five members who are appointed by the President with the advice and consent of the Senate.[10] Board members serve five-year, staggered terms, and may only be removed "for neglect of duty or malfeasance in office."[11] The Board issues  final decisions in ULP cases, and upon finding a violation orders "such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies" of the Act.[12] The Board also

---

[3] *Id.* § 160(b).

[4] A hearing may instead be held "before the Board or a member thereof." 29 U.S.C. § 160(b).

[5] 5 U.S.C. § 3105.

[6] 29 U.S.C. § 154(a); *see WestRock Services, Inc.*, 366 NLRB No. 157, slip op. at 3 (2018).

[7] 29 C.F.R. § 102.46(a).

[8] 29 U.S.C. § 160(c).

[9] *Id.*

[10] 29 U.S.C. § 153(a).

[11] *Id.* Traditionally, the five seats on the Board are split between three members from the President's party and two from the opposition party. 2 The Developing Labor Law: The Board, the Courts, and the National Labor Relations Act ch. 31.I.B (John E. Higgins, Jr., et al., eds., 7th ed. 2017).

[12] 29 U.S.C. § 160(c).

conducts and certifies the outcome of representation elections,[13] and promulgates rules and regulations implementing the NLRA.[14]

Orders of the Board are not self-enforcing. Section 10(e) of the NLRA provides that the Board must seek enforcement of its orders from an appropriate court of appeals for such orders to become enforceable as judicial injunctions.[15] Conversely, any "aggrieved person" may seek to set aside a final Board order in a court of appeals under Section 10(f) of the NLRA.[16] Upon enforcement by a court of appeals, a Board order becomes fully effective against a respondent.[17]

ALJ removal proceedings are defined by statute. With a handful of listed exceptions, "[a]n action may be taken against an [ALJ] . . . by the agency in which the [ALJ] is employed only for good cause established and determined by the Merit Systems Protection Board [("MSPB")] on the record after opportunity for hearing before the [MSPB]."[18] Accordingly, removal of an NLRB ALJ is a two-step process: (1) the Board must bring an action to remove an ALJ; and (2) the MSPB must determine that good cause for removal has been established. The MSPB has applied "good cause" to remove or suspend ALJs for a variety of reasons.[19] MSPB

---

[13] *Id.* § 159.

[14] *Id.* § 156.

[15] *Id.* § 160(e).

[16] *Id.* § 160(f).

[17] *Dish Network Corp. v. NLRB*, 953 F.3d 370, 375 n.2 (5th Cir. 2020) ("The Board is given no power of enforcement. Compliance is not obligatory until the court, on petition of the Board or any party aggrieved, shall have entered a decree enforcing the order as made, or as modified by the court.") (quoting *In re NLRB*, 304 U.S. 486, 495 (1938)).

[18] 5 U.S.C. § 7521(a).

[19] *See*, *e.g.*, *HHS v. Jarboe*, 2023 MSPB 22, ¶ 3 (Aug. 2, 2023) ("failure to follow instructions"); *SSA v. Anyel*, 58 MSPR 261, 269 (1993) ("ignor[ing] binding agency interpretations of law"); *SSA v. Burris*, 39 MSPR 51, 57 (1988) ("disrespectful conduct"); *SSA v. Goodman*, 19 MSPR 321, 328 (1984) ("poor performance").

members also can only be removed for cause.[20] Thus, ALJs, Board members, and MSPB members receive for-cause removal protection.

District courts generally lack jurisdiction to review or supervise the conduct of NLRB proceedings.[21] But when a final Board order in a ULP case may be rendered ineffective by the time it takes for the Agency's usual processes to unfold, the Board may authorize an action in district court for temporary injunctive relief under Section 10(j) of the NLRA. Any such injunction expires when the Board issues its final order in the underlying case.[22] Longstanding Agency practice is to seek such relief in the venue where the ULPs were allegedly committed.[23]

## II. Procedural history

This case stems from eight ULP charges, all filed on November 16, 2022, by or on behalf of individual discharged employees who reported to or were supervised by managers at the SpaceX facility located in Hawthorne, California (the "Hawthorne Facility").[24] SpaceX maintains its principal place of business at the Hawthorne Facility.[25]

---

[20] *See* 5 U.S.C. § 1202(d) ("Any member of the Board may be removed by the President, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause.").

[21] *Bokat v. Tidewater Equip. Co.*, 363 F.2d 667, 673 (5th Cir. 1966) (district courts "have a very very minor role to play in this statutory structure"); *see also Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48 (1938) ("The District Court is without jurisdiction to enjoin [ULP] hearings . . . .") (cited in *Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023)); *Hartz Mountain Corp. v. Dotson*, 727 F.2d 1308, 1311 (D.C. Cir. 1984) ("it hornbook law that, except in the rarest of circumstances, district courts are without jurisdiction to entertain direct appeals of Board actions in representation or unfair labor practice cases;" characterizing *Leedom v. Kyne*, 358 U.S. 184 (1958), as an "extremely narrow exception to [that] general rule.").

[22] *See* 29 C.F.R. § 101.37; 29 U.S.C. § 160(j); *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1188 (5th Cir. 1975).

[23] *See, e.g., Lebus v. Manning, Maxwell & Moore, Inc.,* 218 F. Supp. 702, 703 (W.D. La. 1963); *Overstreet v. El Paso Disposal, L.P.*, 668 F. Supp. 2d 988, 991 (W.D. Tex. 2009).

[24] Doc. 29 at 3 n.16.

[25] *Id*. at 3-4 n.17.

On December 19, 2023, Region 31 of the NLRB, in Los Angeles, advised SpaceX that the Agency was considering Section 10(j) injunction proceedings, which would be filed in the Central District of California.[26] Following an investigation, the Regional Director found merit to the ULP charges and issued an administrative complaint ("ULP Complaint"), on behalf of the General Counsel, on January 3, 2024.[27] That complaint alleges a course of unlawful conduct by SpaceX supervisors and agents taking place nearly entirely at the Hawthorne Facility,[28] including the allegation that SpaceX fired eight employees in response to their NLRA-protected conduct in organizing an Open Letter related to working conditions.[29] The ULP Complaint contains no reference to Texas; it includes a notice setting a hearing on March 5, 2024 in Los Angeles.[30]

On January 4, 2024, SpaceX filed the instant Complaint in the Southern District of Texas.[31] It contains four Counts, which respectively allege that: the NLRB's ALJs (Count I) and Board members (Count II) are unconstitutionally insulated from removal, the NLRB's adjudicative process violates the Seventh Amendment (Count III), and the Board's authorization of proceedings under Section 10(j) results in a combination of functions that violates the separation of powers and due process (Count IV).[32]

---

[26] *Id*. at 4 n.20.

[27] *Id*. at 4 n.21.

[28] *Id*. at 4-5 n.22-25; *see also* Doc. 31 (sealed exhibit to Doc. 29, "ULP Compl.") ¶¶ 6, 8-10, 12-13, 19-20, 24-28 (concerning conduct alleged to have occurred at the Hawthorne Facility over several days); ULP Compl. ¶¶ 21-23 (regarding conduct affecting one employee that was alleged to have occurred in Redmond, Washington on a single day).

[29] Doc. 29 at 4 n.23.

[30] *Id*. at 5 n.26, n.27.

[31] Doc. 1 ("Compl.).

[32] *Id*. at 10, 12, 15, and 19.

On January 11, 2024, Defendant NLRB[33] filed a motion to transfer venue pursuant to 28 U.S.C. § 1406(a) and § 1404(a),[34] which remains pending. The next day, SpaceX filed the instant motion for a preliminary injunction.[35] Since then, SpaceX has filed two pre-hearing motions with the Board as to the ULP complaint: a request for special permission to appeal the Regional Director's denial of SpaceX's motion to postpone the hearing until the resolution of the instant court proceeding, as well as a motion to dismiss.[36]

## LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy" that should "never [be] awarded as of right."[37] The "decision to grant a preliminary injunction is to be treated as the exception rather than the rule."[38] A plaintiff must make "a clear showing" that it is "entitled to such relief."[39] A plaintiff must establish "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest."[40] A plaintiff must satisfy all four requirements to obtain a preliminary

---

[33] The Complaint also names various NLRB officials as co-Defendants. Hereinafter, references to "Defendant" or "NLRB" should be understood to encompass all Defendants.

[34] Doc. 29.

[35] Doc. 37 ("PI Mot.").

[36] These motions, respectively filed on January 24, 2024 and January 30, 2024, are available on the Board's website at https://www.nlrb.gov/case/31-CA-307446.

[37] *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citation omitted).

[38] *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363–64 (5th Cir. 2003).

[39] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

[40] *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023), *cert. denied*, No. 23-199 (U.S. Jan. 8, 2024).

injunction.[41] Irreparable harm, the second factor, must "without question…be satisfied by independent proof, or no injunction may issue."[42] The Supreme Court clarified in *Winter v. Natural Resources Defense Council, Inc.* that harm to the movant must be "likely" and not a mere possibility.[43] And the third and fourth factors of the preliminary injunction analysis—harm to others and the public interest—"merge when the Government is the opposing party."[44]

## ARGUMENT

### I. SpaceX cannot establish irreparable harm, the lack of which is fatal to its injunction bid.

SpaceX fails to offer "independent proof" of irreparable harm, let alone establish that such harm is likely to occur.[45] This fundamental defect applies to all four of SpaceX's counts. And SpaceX does not allege the kind of constitutional injury that warrants injunctive relief.[46] Instead, SpaceX primarily asserts that the Supreme Court's decision in *Axon* makes such proof

---

[41] *See Wilson v. Off. of Violent Sex Offender Mgmt.*, 584 F. App'x 210, 212 (5th Cir. 2014) (mem.) (citing *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)).

[42] *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989).

[43] 555 U.S. 7, 20 (2008).

[44] *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see also Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (per curiam) (explaining that balance of equities and public interest factors may overcome other two factors even in cases involving constitutional claims).

[45] *See White*, 862 F.2d at 1211.

[46] *Contra* PI Mot. at 18 (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976), and *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)). Courts have "expressly declined to find that the irreparable harm requirement for injunctive relief is automatically satisfied by a plaintiff's allegation that his constitutional rights have been violated." *Sheffield v. Bush*, 604 F. Supp. 3d 586, 609 (S.D. Tex. 2022); *see, e.g., Siegel v. Lepore*, 234 F.3d 1163, 1178 (11th Cir. 2000) (en banc) (the "only areas of constitutional jurisprudence where we have said that an ongoing violation may be presumed to cause irreparable injury" involve privacy, certain First Amendment claims"); *Pub. Serv. Co. of N.H. v. Town of W. Newbury*, 835 F.2d 380, 382 (1st Cir. 1987) (no irreparable harm where plaintiff only "alleg[ed] a deprivation of a constitutional right" to procedural due process); *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 682 (7th Cir. 2012) ("equitable relief depends on irreparable harm, even when constitutional rights are at stake").

unnecessary.[47] But *Axon* did not address injunctive relief and does not bear on the question of irreparable harm. Rather, the narrow question decided in that case was whether a district court had jurisdiction to hear structural constitutional challenges to ongoing agency proceedings.[48] Reading *Axon* to require a preliminary injunction any time a party challenges administrative proceedings on constitutional grounds would not only disrupt timely law-enforcement efforts by federal agencies across the government, but also overwhelm the courts with preliminary injunction requests amounting to a judicial preclearance process. That would contravene the baseline principle that a "preliminary injunction is an extraordinary remedy" and "[t]he decision to grant [one] is to be treated as the exception rather than the rule."[49]

### A. *There is no irreparable harm as to ALJ or Board member removability (Counts I and II)*

1. SpaceX fails to allege causal harm, which is a prerequisite to prevailing on its irreparable-harm claim.

In Counts I and II, SpaceX alleges that a yet-to-be-named ALJ and the NLRB's members are unconstitutionally insulated from removal by the President.[50] But SpaceX cannot show

---

[47] PI Mot. at 18-20 (citing *Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023)). In *Axon*, the Supreme Court recognized a "here-and-now" injury stemming from "subjection to an unconstitutionally structured decisionmaking process," concluding this would effectively foreclose all meaningful judicial review, absent district court jurisdiction. 598 U.S. at 192. The parties there "object[ed to an agency's] power generally, not to anything particular about how that power was wielded," which meant that the constitutional challenge was wholly collateral. *Id.* at 193. Moreover, the claims there as to separation of powers effectively fell outside of the area of agency expertise and further justified district court jurisdiction rather than judicial review occurring only at the appellate level. *Id.* at 194-95.

[48] *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, No. CIV-22-232-RAW, 2023 WL 4934989, at *2 (E.D. Okla. Aug. 2, 2023) ("*Axon* simply answered a jurisdictional question; it did not include an injunction analysis" and "a violation of a constitutional right alone constitutes irreparable harm [only in] cases involving individual rights, not the allocation of powers among the branches of government."); *accord Kim v. FINRA*, No. 1:23-CV-02420 (ACR), 2023 WL 6538544, at *13 & n.19 (D.D.C. Oct. 6, 2023).

[49] *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

[50] Compl. ¶¶ 51-82; PI Mot. at 1-2, 7-10.

irreparable harm on these claims. Despite insisting that the alleged harm would be "impossible to remedy once the proceeding is over," it has not alleged any of the facts necessary to establish a right to relief.[51] Nowhere does *Axon* say that any assertion of a separation-of-powers violation, by itself, establishes irreparable harm. Indeed, in *Collins v. Yellen*, the Supreme Court held that invalid removal restrictions do not necessarily show entitlement to a remedy.[52] Rather, a plaintiff must show that the removal restriction actually "cause[d] harm" to the plaintiff.[53] The Fifth Circuit subsequently explained that there are "three requisites for proving harm" for a removal claim: "(1) a substantiated desire by the President to remove the unconstitutionally insulated actor; (2) a perceived inability to remove the actor due to the infirm provision; and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor."[54]

Here, SpaceX has not established that the President has sought to remove the yet-to-be-named ALJ or the yet-to-act Board members, or that, but for the removal restrictions, "the challenged actions taken by" these individuals would not have occurred.[55] And SpaceX has failed to state which actions by the ALJ or Board members it is challenging.[56] Indeed, to date, no ALJ or Board members have acted on any matter related to the Region's administrative complaint.

Unlike challenges to an improper appointment, abstract removability challenges affect "the conditions under which those officers might someday be removed [rather than] the validity

---

[51] PI Mot. at 18 (quoting *Axon,* 598 U.S. at 191).

[52] *Collins v. Yellen*, 141 S. Ct. 1761, 1788-89 (2021).

[53] *Id.* at 1789.

[54] *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022) ("*CFSA*"), *cert. granted on other grounds*, No. 22-448 (argued Oct. 3, 2023); *see also Collins v. Dep't of the Treasury*, 83 F.4th at 970, 982 (5th Cir. 2023).

[55] *CFSA*, 51 F.4th at 632; *see Collins v. Yellen*, 141 S. Ct. at 1789.

[56] *See, e.g.,* Compl. ¶¶ 10-11, 51-56, 61, 65-74, 79 (no challenge to actual ALJ or Board actions).

of any officer's continuance in office."[57] Every reported case on this issue thus requires a challenger to specifically show that a removal protection actually harmed that very challenger.[58] And every court faced with the question—including this Court, in a case recently brought by this very Plaintiff—has denied a preliminary injunction sought on ALJ removability grounds.[59] The authorities relied upon by SpaceX are not to the contrary.[60]

The Fifth Circuit also rejected the argument that *Collins v. Yellen*'s causal-harm rule should be limited to requests for retrospective relief, rather than prospective relief, explaining that *Collins v. Yellen*'s "remedial inquiry focused on whether a harm occurred that would create an entitlement to a remedy, rather than the nature of the remedy, and [the] determination as to

---

[57] *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 508 (2010); *cf. Lucia v. SEC*, 585 U.S. ___, 138 S. Ct. 2044, 2055 (2018) (remedy for Appointments Clause violation is "hearing before a properly appointed" official).

[58] *Collins v. Dep't of the Treasury*, 83 F.4th at 982-84; *CFSA*, 51 F.4th at 632-33; *see also K & R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023); *CFPB v. Law Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023), *petition for cert. filed*, No. 22-1233 (U.S. June 21, 2023); *Integrity Advance, LLC v. CFPB*, 48 F.4th 1161, 1170 (10th Cir. 2022); *CFPB v. CashCall, Inc.*, 35 F.4th 734, 742-43 (9th Cir. 2022); *Calcutt v. FDIC*, 37 F.4th 293, 318-20 (6th Cir. 2022), *rev'd per curiam on other grounds*, 143 S. Ct. 1317 (2023).

[59] *See Space Expl. Techs. Corp. v. Bell*, --- F. Supp. 3d ----, No. 1:23-cv-00137, 2023 WL 8885128, at *4-5 (S.D. Tex. Nov. 8, 2023); *Care One, LLC v. NLRB*, No. 3:23-cv-00831 (RNC), 2023 WL 6457641, at *3-4 (D. Conn. Oct. 4, 2023), *appeal docketed*, No. 23-7475 (2d Cir. Oct. 20, 2023); *Leachco*, 2023 WL 4934989, at *2; *Burgess v. FDIC*, 639 F. Supp. 3d 732, 747 (N.D. Tex. 2022), *appeal docketed sub nom. Burgess v. Whang*, No. 22-11172 (5th Cir. Dec. 5, 2022).

[60] In *Jarkesy v. SEC*, upon which SpaceX relies, the Fifth Circuit held that SEC ALJs' removal protections were unconstitutional, but it avoided the *Collins v. Yellen* causal-harm issue by granting relief based on other constitutional violations in that case and declining to decide whether that relief would be appropriate based on the removal issue alone. 34 F.4th 446, 463 n.17 (5th Cir. 2022), *cert. granted*, No. 22-859 (argued Nov. 29, 2023). In addition, SpaceX relies on Judge Walker's statement concurring in a per curiam order granting a motion for injunction pending appeal in *Alpine Securities Corp. v. FINRA*, No. 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023) (Pl. Mot. at 19). But the company in *Alpine* faced the "corporate death penalty," *id.* at *1, and raised several issues not present here. And since neither of the other judges on the panel joined Judge Walker's concurrence, the rationale for the D.C. Circuit's order is unclear. Thus, Judge Walker's statement is not binding even within the D.C. Circuit. *See Kim*, 2023 WL 6538544, at *9 (disagreeing with Judge Walker's analysis).

whether an unconstitutional removal protection inflicted harm remains the same whether the petitioner seeks retrospective or prospective relief."[61] SpaceX cannot evade *Collins v. Yellen's* clear holding by distinguishing between ongoing and past administrative proceedings.[62] Rather, it must demonstrate actual prejudice from removal restrictions; SpaceX has not even alleged such prejudice, let alone demonstrated that it is suffering irreparable harm.

2. <u>Preliminary injunctive relief is unavailable where severance can resolve the threat of appearing before an unconstitutionally insulated adjudicator.</u>

Beyond SpaceX's failure to allege causal harm, its claim of irreparable harm must fail because, under Supreme Court precedent, severing any statutory removal restrictions found to be unconstitutional would be the appropriate remedy, not enjoining the Agency's operations. There is "a strong presumption of severability," under which courts "invalidate[] and sever[] unconstitutional provisions from the remainder of the law rather than raz[e] whole statutes or Acts of Congress."[63] Generally, statutes are severable if "the remainder of the law is capable of functioning independently and thus would be fully operative as a law."[64] And "it is fairly unusual for the remainder of a law not to be operative."[65]

The procedure for removing ALJs, which SpaceX challenges, specifies that ALJs are removable "by the agency in which the [ALJ] is employed only for good cause established and determined by the [MSPB] on the record after opportunity for hearing before the Board."[66] MSPB members "may be removed by the President only for inefficiency, neglect of duty, or

---

[61] *CFSA*, 51 F.4th at 631 (internal quotations and citations omitted); *accord Crystal Moroney*, 63 F.4th at 180-81; *Calcutt*, 37 F.4th at 316.

[62] PI Mot. 18-19.

[63] *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2350 (2020).

[64] *Id.* at 2353.

[65] *Id.* at 2352.

[66] 5 U.S.C. § 7521(a).

malfeasance in office."[67] Should this Court find ALJs' removal protections to be unconstitutional at final judgment, it could sever the second half of the sentence in § 7521(a) after "good cause," as to the ALJ presiding over SpaceX's case. The same principle applies as to NLRB members' removability. If this Court finds their removal protections unconstitutional, rather than render the NLRA inoperable, it could sever the "for cause" provision in 29 U.S.C. § 153(a).[68] The administrative proceedings could thus proceed without the alleged constitutional defects.

Severance would be consistent with how the Supreme Court dealt with unlawful removal protections in recent cases. In *Free Enterprise Fund*, the plaintiffs sued to stop an ongoing investigation by the Public Company Accounting Oversight Board ("PCAOB"). The Court found the PCAOB's removal protections unconstitutional, but it rejected plaintiffs' attempt to enjoin the PCAOB's operations and granted declaratory relief only, severing the offending statutory provisions, and leaving the members of the PCAOB freely subject to removal by the Securities and Exchange Commission.[69] Likewise, in *Seila Law LLC v. Consumer Finance Protection Bureau*, the Court found the removal protections for the Consumer Financial Protection Bureau's ("CFPB's") Director unconstitutional.[70] But it did not limit any of the CFPB's operations. Instead, it again severed the Director's removal protection, noting that "[t]he provisions of the [statute] bearing on the CFPB's structure and duties remain fully operative without the offending tenure restriction" and that "[t]hose provisions are capable of functioning independently."[71]

---

[67] 5 U.S.C. § 1202(d).

[68] *See* 29 U.S.C. §§ 153(a) ("Any member of the Board may be removed by the President, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause."); *id.* § 166 (NLRA severability clause).

[69] *Free Enter. Fund*, 561 U.S. at 508, 513.

[70] 140 S. Ct. 2183, 2207-08 (2020).

[71] *Id.* at 2209.

SpaceX argues that because Congress enacted the removal protections in question to protect the independence of ALJs and the Board, such provisions are not severable, and thus injunctive relief is necessary for Counts I and II.[72] Defendants agree that Congress's goal of ALJ and Board independence is a consideration in the severance analysis here. But it makes no sense to further assume that Congress would have preferred no ALJ proceedings at all, much less no Board proceedings, in order to resolve a removability problem.[73]

The Supreme Court rejected a similar argument in *Seila Law*, where the petitioner argued that Congress' desire to protect an agency's independence foreclosed severance. The petitioner "highlight[ed] . . . references to the CFPB's independence in the statutory text and legislative history," to show that Congress would have wanted to disband the CFPB if the removal restrictions were found unconstitutional.[74] The Court was unpersuaded. Although petitioner's "observations certainly confirm[ed] that Congress preferred an independent CFPB to a dependent one," they "shed little light on the critical question whether Congress would have preferred a dependent CFPB to *no agency at all*."[75] The Court stressed that disbanding the CFPB "would trigger a major regulatory disruption and would leave appreciable damage to Congress's work in the consumer-finance industry," as other agencies lack the resources to take over its work and none have the authority to administer the new prohibitions in the Dodd-Frank Act, which created the CFPB.[76] Therefore, it was "far from evident that Congress would have preferred no CFPB to a CFPB led by a Director removable at will by the President."[77]

---

[72] *See* PI Mot. at 22-25.

[73] *Free Enter. Fund*, 561 U.S. at 509.

[74] 140 S. Ct. at 2210.

[75] *Id.*

[76] *Id.*

[77] *Id.*

The same reasoning applies even more so here. The fact that the NLRA does not require the use of ALJs at all suggests that Congress would prefer severance of ALJs' removal protections over nonenforcement of the NLRA.[78] To halt resolution of these claims altogether, as SpaceX suggests, would do more violence to congressional intent than simply severing removal protections.

Accordingly, even if the Court were to find the ALJs' or Board members' removal protections unconstitutional, SpaceX would not be entitled to an injunction (preliminary or otherwise) of the administrative proceedings.[79] Rather, the most SpaceX could potentially obtain, at the end of the instant case, would be a declaratory judgment invalidating the offending removal provisions, with any "invalidation" being no broader than necessary to remedy SpaceX's alleged injuries.[80] But this Court need not decide now precisely how it would sever the statute or how broad a declaratory judgment would be, in order to find that SpaceX is not entitled to its requested injunction regarding its Board member and ALJ removability allegations.

---

[78] *See* 29 U.S.C. § 160(b) (ULP hearings can be held "before the Board or a member thereof").

[79] SpaceX's reference to *Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 328 (2006) is unavailing. PI Mot. at 22. That case emphasized judicial restraint and the need "to limit the solution to the problem" when confronting a statute's constitutional flaw. *Id*. It warned courts not to "nullify more of a legislature's work than necessary" and identified declaratory judgments, injunctive relief, and severance as examples of judicial restraint. 546 U.S. at 329-31. Here, where severance would fully remedy the asserted injury, that remedy would do less harm to legislative intent than the declaratory and injunctive relief sought by SpaceX. *Doran v. Salem Inn*, 422 U.S. 922, 931 (1975) is inapposite because there, the defendant conceded that absent preliminary relief, plaintiffs would suffer a substantial loss of business, even bankruptcy. *Id.* at 932. That type of irreparable harm is absent from the instant case.

[80] *See*, *e.g.*, *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 222 (1974) (when "the relief sought produces a confrontation with one of the coordinate branches of the Government," the "framing of relief" may be "no broader than required" to address any "concrete injury").

**B. SpaceX's Seventh Amendment claim is too speculative to constitute irreparable harm (Count III).**

In Count III, SpaceX alleges that the NLRB's proceeding, and particularly a subset of potential make-whole remedies referenced in *Thryv, Inc*., 372 NLRB No. 22 (Dec. 13, 2022), *petition for review filed*, No. 23-60132 (5th Cir. Mar. 17, 2023), violates a "Seventh Amendment jury-trial right by adjudicating private rights outside the confines of an Article III Court."[81] But SpaceX cannot demonstrate that it will suffer irreparable harm from proceeding without a jury.[82]

First, the potential injury SpaceX alleges remains entirely speculative. No ALJ has recommended, nor has the Board ordered, any remedy, let alone the *Thryv*-type remedies on which SpaceX hangs its Seventh Amendment claims.[83] Such speculation "is insufficient" for SpaceX to obtain the relief it seeks.[84] Moreover, the Board's rulings on SpaceX's pending motions to postpone the administrative hearing until the resolution of this lawsuit and to dismiss the ULP Complaint may dispose of the ULP case entirely or eliminate the hearing's imminency.

More importantly, even if this Court concludes that the Board lacks authority to order *Thryv*-type remedies, this purported defect would not taint the Agency's entire proceeding.[85] This is because such a finding by this Court would not bear on the Board's power to seek other

---

[81] PI Mot. at 2-3, 10-14.

[82] PI Mot. at 19.

[83] PI Mot. at 10-14. *See, e.g., Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975) ("An injunction is appropriate only if the anticipated injury is imminent and irreparable.") (internal citations omitted); *Sierra Club v. Atlanta Reg'l Comm'n*, 171 F. Supp. 2d 1349, 1358 (N.D. Ga. 2001) (irreparable injury "must be neither remote nor speculative, but actual and imminent.").

[84] *Ashcroft v. Mattis*, 431 U.S. 171, 172 n.2 (1977); *see City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("The speculative nature of future injury requires a finding that this prerequisite [to Article III standing for injunctive relief] has not been fulfilled").

[85] Under *Axon*, the plaintiff must challenge the decisionmakers' constitutional power generally, not the particulars of how that power would be wielded. 598 U.S. at 192-193.

statutory remedies such as back pay, long deemed outside the Seventh Amendment's reach.[86] Instead, the appropriate relief would be *at most* to enjoin the agency from seeking those remedies in its administrative proceedings, not the "extraordinary remedy" of a preliminary injunction enjoining the entire administrative process.[87] And even if the Board orders remedies under *Thryv*, SpaceX can seek review of such remedies in the court of appeals, just as Thryv itself is doing.

### C. SpaceX's combination-of-functions claim is also too speculative to constitute irreparable harm (Count IV).

In Count IV, SpaceX claims that the combination of prosecutorial and adjudicative functions by Board members creates a structural constitutional defect by violating separation of powers and due process considerations.[88] Assuming, *arguendo*, the merits of that claim, SpaceX fails to establish irreparable harm from proceeding before allegedly biased adjudicators.

Its theory of harm rests on a series of hypothetical occurrences. *If* (1) the General Counsel seeks authorization from the Board to file a suit for temporary injunctive relief against SpaceX under Section 10(j), and (2) the Board authorizes a Section 10(j) petition to be filed, and (3) the Board later determines the merits of the ULP case in a final Board order and rules against SpaceX, and (4) upon Section 10 review of that final Board order, a circuit court orders the administrative case remanded to the Board, to be re-decided without participation by any member who authorized the Section 10(j) petition, and (5) the members who ultimately preside

---

[86] *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937) (holding, on review of a Board order providing for backpay, that that the Seventh Amendment "has no application to cases where recovery of money damages is an incident to equitable relief"); *Agwilines, Inc. v. NLRB*, 87 F.2d 146, 150-51 (5th Cir. 1936); *see also* below at 29-31 (discussing *Thryv* remedies).

[87] *Winter v. NRDC*, 555 U.S. at 24; *see M. D. ex rel. Stukenberg v. Abbott*, 907 F.3d 237, 272 (5th Cir. 2018) ("[I]njunctions must be narrowly tailored to remedy the specific action which gives rise to the order.") (internal modifications and quotation marks omitted). *But see* below at 28-29, 31 (discussing *Myers v. Bethlehem Shipbuilding Corp.* 303 U.S. 48, 51 (1938), *Bokat*, 363 F.2d at 673, and *Axon*, 598 U.S. at 189, 192).

[88] PI Mot. at 14-17; Compl. ¶¶108-138.

over the remanded ULP case were exposed to the Board members who originally authorized a Section 10(j) petition; *then*, SpaceX protests, (6) those new members "*may* be influenced by their colleague's views."[89]

This lengthy chain of speculation does not constitute the type of imminent, irreparable harm requiring injunctive relief.[90] Board members authorizing Section 10(j) litigation act to preserve the Board's ability to later order an effective remedy, not to prosecute the case on the merits.[91] And because judicial review of SpaceX's constitutional claim is "guaranteed by the right to appeal" adverse Board decisions to a federal court of appeals, SpaceX will "suffer no irreparable injury by being required to exhaust administrative remedies before bringing [its] claims to federal court."[92] Although SpaceX claims deprivation of procedural due process is irreparable,[93] it is properly remedied by more process rather than an injunction.[94]

---

[89] PI Mot. at 20 (cleaned up) (emphasis added).

[90] *Cf. Chacon*, above n.83. Notably, because the Fifth Circuit has found combined-functions arguments unavailing in analogous contexts, *Burnley v. Thompson*, 524 F.2d 1233, 1241 (5th Cir. 1975), SpaceX is at no risk of the downstream consequences of such a decision.

[91] *See* below n.194 (citing multiple courts holding that no due process violation is created by the Section 10(j) process).

[92] *Baldwin Metals Co., Inc. v. Donovan*, 642 F.2d 768, 773 (5th Cir. 1981); *see also Transwestern Pipeline Co. v. FERC*, 626 F.2d 1266, 1270-71 (5th Cir. 1980). SpaceX's reliance on *Associated Builders & Contractors of Texas Gulf Coast, Inc. v. United States Department of Energy* is unavailing. Courts had no jurisdiction to review final agency decisions there, foreclosing plaintiffs' opportunity to raise constitutional claims in the appropriate judicial forum. 451 F. Supp. 281, 283 (S.D. Tex. 1978).

[93] PI Mot. at 20.

[94] *Barrera-Montenegro v. United States*, 74 F.3d 657, 661 (5th Cir. 1996); *see Gonzalez-Droz v. Gonzalez-Colon*, 573 F.3d 75, 81 n.7 (1st Cir. 2009).

### D. *Harms incident to litigation do not constitute irreparable injury.*

SpaceX's final irreparable harm argument concerns the burdens of litigation,[95] which even *Axon* itself did not find sufficient to justify immediate court intervention.[96] Neither the "expense and annoyance of litigation" nor "litigation expense, even substantial and unrecoupable cost . . . constitute irreparable injury."[97] The Fifth Circuit has long recognized that these supposed harms are part of the social burden of living under government.[98] SpaceX also speculates that NLRB proceedings will tarnish its reputation and will give the government "settlement leverage." But these are simply burdens incident to litigation:

> Obviously, the rule requiring exhaustion of the administrative remedy cannot be circumvented by asserting that . . . the mere holding of the prescribed administrative hearing would result in irreparable damage. Lawsuits [] often prove to have been groundless; but no way has been discovered of relieving a defendant from the necessity of a trial to establish the fact.[99]

Regardless, SpaceX's concern over reputational harm rings hollow, as filing this lawsuit has only drawn further attention to the ULP charges pending against it.[100] And its fear of governmental bulldozing similarly falls flat given that SpaceX has sufficient resources to file a federal court complaint just one day after the ULP complaint issued. SpaceX cites to no case indicating that such burdens warrant emergency relief.

---

[95] Pl Mot. at 20-21

[96] 598 U.S. at 192.

[97] *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) (cleaned up).

[98] *See Bradley Lumber Co. of Ark. v. NLRB*, 84 F.2d 97, 100 (5th Cir. 1936) (distraction of NLRB proceeding was "not the irreparable damage which equity will interfere to prevent"). Accordingly, SpaceX's assertion that the Board's administrative proceeding "distracts from its important missions," including those as a federal contractor, PI Mot. at 4-5, is unavailing.

[99] *Myers*, 303 U.S. at 51-52.

[100] *See, e.g.*, Micah Maidenberg, *SpaceX Sues Labor Board over Employee Firings*, Wall Street Journal (Jan. 4, 2024), https://www.wsj.com/tech/spacex-sues-labor-board-over-employee-firings-0a41e3ef; Nick Niedzwiadek & Olivia Olander, *Musk's SpaceX Seeks to Blow Up Federal Labor Enforcer*, Politico (Jan. 4, 2024), https://www.politico.com/news/2024/01/04/musks-spacex-seeks-to-blow-up-nlrb-00133919.

## II. SpaceX is not likely to succeed on any of its claims.

### A. *Because venue in the Southern District of Texas is improper, the case should be dismissed or transferred; declaratory relief is unavailable to SpaceX.*

For the reasons asserted in Defendants' Motion to Transfer Venue,[101] venue is improper in this Court. A venue defense "bear[s] on the district court's power to issue [an] injunction because the court would lack authority to grant relief if…venue was improper."[102] The typical and appropriate practice of district courts is to decide venue before resolving a preliminary injunction motion. Should a court find venue improper, it can either dismiss or transfer the action, and leave resolution of the motion for preliminary relief to the proper court.[103] This Court should follow that approach and transfer the action pursuant to Defendant's motion.

In addition, because SpaceX has engaged in forum shopping, this Court can rightfully withhold declaratory relief from SpaceX. Declaratory relief is discretionary, and courts must balance such factors as "whether there is a pending [alternative] action in which all of the matters in controversy may be fully litigated," "whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant," and "whether the plaintiff engaged in forum shopping in bringing the suit."[104] Notably, courts have repeatedly denied declaratory judgments plaintiffs have sought

---

[101] Doc. 29.

[102] *Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127, 1135 (9th Cir. 2005) (addressing, but rejecting, threshold argument that venue was improper prior to reaching merits of preliminary injunction); *cf. Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470-71 (5th Cir. 1985) (subject-matter jurisdiction is a prerequisite to a district court's exercise of discretion in ordering preliminary injunctive relief).

[103] *See, e.g., Glazier Grp., Inc. v. Mandalay Corp.*, No. CIV.A. H-06-2752, 2007 WL 2021762, at *1 (S.D. Tex. July 11, 2007) (granting motion to transfer under 28 U.S.C. § 1406 and declining to resolve motion for preliminary injunction); *Half Price Books, Recs., Mags., Inc. v. Riepe*, No. CIV.A.3:98-CV-0585-P, 1998 WL 329383, at *7 (N.D. Tex. June 12, 1998) (granting motion to transfer venue and denying without prejudice request to set preliminary injunction hearing).

[104] *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994).

against pending or imminent agency proceedings.[105] The Board previously argued in its Motion to Transfer that it appears that SpaceX filed the instant Complaint in this Court to obtain the perceived benefit of certain Fifth Circuit precedent.[106]

### B. SpaceX fails to show that any ALJ would have been removed but for removal protections (Count I); in addition, ALJ tenure protections are constitutional.

This Court need not reach the legal merits of Count I of SpaceX's complaint because SpaceX has not pled facts showing prejudice traceable to the challenged ALJ removal protections; for example, SpaceX has not alleged that an ALJ would have been removed but not for those protections.[107] In any event, the NLRB ALJs' removal protections are constitutional.

In *Jarkesy*,[108] a split Fifth Circuit panel found removal protections for SEC ALJs unconstitutional.[109] But Board ALJs are unlike those in *Jarkesy*. Board ALJs have no role in enforcement,[110] and no capacity for final decision-making authority.[111] Critically, they cannot

---

[105] *See*, *e.g.*, *Total Gas & Power N. Am., Inc. v. FERC*, 2016 WL 3855865, at *22-25 (S.D. Tex. July 15, 2016) (dismissing declaratory action filed shortly after FERC staff announced intent to recommend enforcement proceedings), *aff'd on other grounds*, 859 F.3d 325 (5th Cir. 2017); *Pom Wonderful LLC v. FTC*, 894 F. Supp. 2d 40, 44-45 (D.D.C. 2012); *Swish Mktg., Inc. v. FTC*, 669 F. Supp. 2d 72, 76-80 (D.D.C. 2009). A plaintiff who files a declaratory action in those circumstances is engaging in "forum shopping" because "[t]he essence of [the] claims is that a district court forum would be more favorable than the agency process." *Total Gas*, 2016 WL 3855865, at *24.

[106] *See* Doc. 29 at 1, 8, 10-12, 17, 19-20.

[107] *See* above at 8-11 (discussing SpaceX's failure to show irreparable harm as to Board and ALJ removability counts, due to lack of showing of causal harm).

[108] 34 F.4th at 463-65.

[109] *See also* 51 F.4th 644, 646-47 (5th Cir. 2022) (Haynes, J., dissenting from denial of petition for rehearing en banc).

[110] 29 U.S.C. § 153(d) (the General Counsel has final authority to investigate charges, issue complaints, and prosecute claims before the Board."); 5 U.S.C. § 3105 (ALJs "may not perform duties inconsistent with their duties and responsibilities as [ALJs]"). Nor do Board ALJs have rulemaking authority. 29 U.S.C. § 156 (vesting the agency's rulemaking authority in the Board).

[111] 29 U.S.C. § 160(c). In ULP adjudications, parties may file exceptions to an ALJ's decision on any contested issue. 29 C.F.R. §§ 102.46(a), 102.69(c)(2).

bind the agency.[112] Even if the Board were to adopt an ALJ decision, that order does not come with *any* legal consequences unless it is enforced by a circuit court of appeals.[113] In contrast, the Fifth Circuit in *Jarkesy* concluded that "SEC ALJs exercise considerable power," finding *inter alia* that they "may punish contemptuous conduct[,] and often their decisions are final and binding."[114] Thus, the powers exercised by Board ALJs are distinguishable from those discussed in *Jarkesy*, or even those at issue in *Space Exploration Technologies, Corp. v. Bell*.[115] But to the extent this Court thinks *Jarkesy* applies here, Defendants respectfully note their disagreement with the Fifth Circuit's decision, which remains pending before the Supreme Court,[116] and respectfully preserve this argument for appeal.

SpaceX claims that the removal protections granted to ALJs—in place for over 50 years[117]—are unconstitutional.[118] They are not. Courts have long recognized Congress's ability to constrain the President's removal powers as to adjudicators. Article II grants the President the power to appoint "lesser officers," "includ[ing] the ability to remove" them.[119] However, "the power of Congress to regulate removals" is "incidental to the exercise of its constitutional power

---

[112] The Board has no authority to decline a procedurally proper request to review an ALJ's decision and not even an unreviewed ALJ decision has precedential effect. *Carpenters Loc. 370 (E. Contractors Ass'n)*, 332 NLRB 174, 175 n.2 (2000) (citing *ESI, Inc.*, 296 NLRB 1319 n.3 (1989), *Anniston Yarn Mills*, 103 NLRB 1495 (1953)).

[113] *Dish Network Corp.*, 953 F.3d at 375 n.2.

[114] *Jarkesy*, 34 F.4th at 464 (citing *Lucia v. SEC*, 138 S. Ct. 2044, 2053-54 (2018)).

[115] 2023 WL 8885128, at *1 (finding that decisions by ALJs within the Office of the Chief Administrative Hearing Officer are "final" and "may be appealed only to a U.S. court of appeals").

[116] *See SEC v. Jarkesy*, 143 S. Ct. 2688 (2023).

[117] The Civil Service Reform Act was enacted in 1978. *See* Pub. L. 95-454, 92 Stat. 1137 (1978) (codified at 5 U.S.C. § 7521). An editorial note appended to Section 7521 traces ALJ removal protections back to at least 1966. *See* Pub. L. 89-554, 80 Stat. 528 (1966).

[118] Compl. ¶¶ 1-6, 51-56; Doc. 37 at 1-2, 7-8.

[119] *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2197 (2020).

to vest appointments."[120] The key inquiry in removal cases like this one is whether Congress has "interfere[d] with the President's exercise of the 'executive power' and his …duty to 'take care that the laws be faithfully executed' under Article II."[121]

Here, Congress has not violated presidential authority under Article II. The Supreme Court has repeatedly recognized that Congress may regulate removals of inferior officers.[122] The Court has also recognized that the scope of the President's constitutional power to remove and control adjudicators differs from the scope of his power to remove and control other executive officers. For example, in *Morrison*, the Court observed that tenure protection may be "necessary to the proper functioning" of "an official performing 'quasijudicial' functions."[123]

The limited restriction announced in *Free Enterprise Fund* as to removal does not change this.[124] SpaceX misreads that case, asserting that it establishes a categorical rule that multiple levels of removal protection are always unconstitutional.[125] Not so.[126] *Free Enterprise Fund* held unconstitutional the "highly unusual" and "sharply circumscribed" dual-layer removal

---

[120] *Myers v. United States*, 272 U.S. 52, 161 (1926); *see United States v. Perkins*, 116 U.S. 483, 485 (1886).

[121] *Morrison v. Olson*, 487 U.S. 654, 689 (1988).

[122] In *Perkins v. United States*, 116 U.S. at 484-85, the Court upheld a restriction on the Secretary of the Navy's power to remove a naval officer. In *Morrison v. Olsen*, 487 U.S. at 685-96, the Court upheld a restriction on the Attorney General's power to remove an independent counsel.

[123] *Morrison*, 487 U.S. at 691 n.30; *see also Wiener v. United States*, 357 U.S. 349, 355-56 (1958) (holding that Congress could limit the President's power to remove members of the War Claims Commission, an "adjudicatory body," because of "the intrinsic judicial character of the task with which the Commission was charged"); *Humphrey's Ex'r*, 295 U.S. at 629 (finding it "plain under the Constitution that illimitable power of removal is not possessed by the President in respect of officers" charged with "quasi-judicial" duties).

[124] 561 U.S. 477 (2010).

[125] PI Mot. at 8.

[126] *Free Enter. Fund*, 561 U.S. at 505-07, 507 n.10.

protections of the leadership of a particular agency.[127] It "did not broadly declare all two-level for-cause protections for inferior officers unconstitutional."[128] Nor did it rule on the constitutionality of ALJ or other civil service protections.[129] As the Court observed, ALJs "perform adjudicative rather than enforcement or policymaking functions."[130]

Further, unlike the "novel" and "rigorous" removal limitations in *Free Enterprise Fund*,[131] the removal protection scheme for NLRB's ALJs does nothing to strip the President of executive power. As noted above, at page 20, note 110, ALJs' duties do not overlap with the NLRB's "enforcement or policymaking functions."[132] Only the NLRB's General Counsel possesses the "final authority" to allege ULPs and advance legal theories in support of those allegations,[133] and she *is* removable at will by the President.[134] As for policymaking, that is ultimately left to the Board, which may reverse or vacate any ALJ finding it disagrees with as an exercise of its plenary power to issue final decisions.[135]

Nor do the removal protections afforded to MSPB and NLRB members change this analysis. The Supreme Court has repeatedly upheld statutory removal restrictions that provide

---

[127] 561 U.S. at 505.

[128] *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1132 (9th Cir. 2021).

[129] *Free Enter. Fund*, 561 U.S. at 506-07 & n.10.

[130] 561 U.S. at 507 n.10.

[131] *Id.* at 496, 503 (PCAOB members were removable only under "an unusually high standard" that would preclude removal for violations of all but a handful of laws).

[132] *Id.* at 507 n.10.

[133] 29 U.S.C. § 153(d); *see Raley's*, 337 NLRB 719, 719 (2002).

[134] *Exela Enter. Sols. v. NLRB*, 32 F.4th 436, 441-45 (5th Cir. 2022); *NLRB v. Aakash, Inc.*, 58 F.4th 1099, 1103-05 (9th Cir. 2023).

[135] 29 U.S.C. §§ 153(d), 156, 160(a), (c); *Myers*, 303 U.S. at 48; *Garner v. Teamsters, Chauffeurs & Helpers Loc. Union No. 776*, 346 U.S. 485, 490 (1953).

for review by the federal courts, whose judges are not removable by the President *at all*.[136] If review by Article III judges—who are clearly less accountable to the President than MSPB or NLRB members—is constitutionally permissible, it strains the imagination to think that removal protections for MSPB or NLRB members would be unconstitutional.

For these reasons, Congress's longstanding grant of qualified decisional independence to ALJs through for-cause removal protections does not violate the Constitution. In addition, for the reasons set forth in section I(A)(1), above, SpaceX cannot obtain relief in this case because it cannot show that the mere presence, without more, of removal restrictions for ALJs inflicts any causal harm. For that reason as well, SpaceX fails to state a claim upon which relief can be granted and thus is unlikely to succeed on the merits.

### C. Board members' removal protections (Count II) are constitutional under Humphrey's Executor *and Fifth Circuit law.*

SpaceX's Article II challenge to Board member removability in Count II fares even worse on the merits than its challenge to ALJ removability in Count I. Here, Plaintiff argues that *Humphrey's Executor* should be overturned,[137] a point that the Fifth Circuit has rejected twice in the last two months.[138] SpaceX also seeks to distinguish this case from *Humphrey's Executor* on two grounds.[139] First, Plaintiff alleges that Board members are unconstitutionally insulated from removal because they "wield substantial executive power."[140] As a "quintessential" example of such executive power, SpaceX points to how a majority of the Board, as a body, can authorize

---

[136] *See Morrison*, 487 U.S. at 663-64; *Perkins*, 116 U.S. at 484-85.

[137] PI Mot. at 10.

[138] *Consumers' Rsch. v. Consumer Prod. Safety Comm'n,* No. 22-40328, 2024 WL 177326, at *2 (5th Cir. Jan. 17, 2024); *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1046-47 (5th Cir. 2023).

[139] Compl. ¶ 73; PI Mot. at 8-10.

[140] PI Mot. at 2; *see also id*. at 8-10; Compl. ¶¶ 7-13, 65-71, 73-74.

the General Counsel to petition a district court for injunctive relief under Section 10(j) of the NLRA.[141] SpaceX also seeks to distinguish the NLRA from *Humphrey's Executor* by claiming that the removal protections NLRB members enjoy are stricter than those insulating commissioners of the Federal Trade Commission ("FTC"), since unlike those commissioners, Board members cannot be removed for "inefficiency."[142]

But the Fifth Circuit's recent decision in *Consumers' Research v. Consumer Prod. Safety Commission* easily disposes of Count II.[143] There, the Fifth Circuit held that *Humphrey's Executor* not only remains good law, it broadly "protects *any* 'traditional independent agency headed by a multimember board.'"[144] *Humphrey's Executor* "permitted Congress to give for-cause removal protection to a multimember body of experts who were balanced along partisan lines, appointed to staggered terms, performed only quasi-legislative and quasi-judicial functions, and were said not to exercise any executive power."[145] Indeed, the Fifth Circuit was clear that *Humphrey's Executor* extends further still and even shields what today would be deemed *substantial* executive power by a multimember expert agency.[146]

In reviewing a challenge to the Consumer Product Safety Commission ("CPSC"), the Fifth Circuit considered that the CPSC possesses the power "to promulgate safety standards and

---

[141] PI Mot. at 2, 9. Aside from 29 U.S.C. § 160(j), SpaceX points broadly to 29 U.S.C. §§ 154, 159, and 160 to claim that Board members "exercise substantial executive power through their administrative, policymaking, and prosecutorial authority," without noting how these functions are distinct from those of traditional independent agencies headed by a multimember board.

[142] Compl. ¶ 72; PI Mot. at 2, 9-10.

[143] 2024 WL 177326, at *6.

[144] *Id.* (quoting *Seila Law*, 140 S. Ct. at 2198) (emphasis added); *see also Illumina*, 88 F.4th at 1047.

[145] *Consumers' Rsch,* 2024 WL 177326, at *6 (quoting *Seila Law*, 140 S.Ct. at 2187).

[146] *Id.* at *7-8; *see also Illumina,* 88 F.4th at 1047 (although the FTC's powers may have changed since *Humphrey's Executor* was decided, it does not run afoul of Article II because it is not vested with "*purely* executive authority") (emphasis added).

ban hazardous products, … to launch administrative proceedings, issue legal and equitable relief, and [to] commence civil actions in federal courts," including actions seeking injunctive relief and even those seeking civil monetary penalties.[147] Such powers are no less than those SpaceX allege here to be so substantial as to exceed the scope of *Humphrey's Executor*.[148] Indeed, beyond the Board's quasi-legislative power to promulgate rules, the Board cannot initiate administrative proceedings,[149] seek civil monetary penalties,[150] or order legal relief.[151] Nor are its orders self-enforcing.[152]

In comparison, in *Consumers' Research*, the Fifth Circuit found that although the CPSC "exercises substantial executive power (in the modern sense)," there are three reasons that *Humphrey's Executor* shields the CPSC from constitutional infirmity.[153] "First, [p]erhaps the most telling indication of a severe constitutional problem with an executive entity is a lack of historical precedent to support it."[154] "In other words, historical pedigree matters," and unlike the agencies in *Seila Law* and *Free Enterprise Fund*, the Fifth Circuit concluded CPSC "has history

---

[147] *Consumers' Rsch,* 2024 WL 177326, at *2 (citing 15 U.S.C. §§ 2056(a), 2057, 2064, 2076, 2069(a)–(b), 2071(a)); *see also id.* at *10 (Jones, J., concurring in part and dissenting in part) (noting that the CPSC "imposes heavy penalties for violations of its charging statutes, and commences civil actions in federal court seeking injunctive relief and monetary penalties.").

[148] PI Mot. at 9.

[149] 29 U.S.C. § 160(b) (individuals may file ULP charges, but formal Board action depends on the General Counsel or her delegate first finding merit to a charge and issuing a complaint); 29 U.S.C. § 159(c) (individuals must file an election petition to initiate the Board's representation election proceedings).

[150] *See, e.g.*, *Republic Steel Corp. v. NLRB*, 311 U.S. 7, 10 (1940) ("The [NLRA] is essentially remedial. It … does not prescribe penalties or fines.").

[151] *Jones & Laughlin Steel*, 301 U.S. at 48 (Board seeks only equitable relief, its proceedings are "not in the nature of a suit at common law"); *Agwilines*, 87 F.2d at 150-51 (Board proceedings are "equitable in their nature").

[152] 29 U.S.C. §160(e), (f).

[153] 2024 WL 177326, at *8.

[154] *Id*. (quoting *Seila Law*, 140 S.Ct. at 2201) (cleaned up).

on its side."[155] If that is true of an agency founded in 1972,[156] there can be no question as to the NLRB's historic pedigree, which was founded in 1935 and modeled after the FTC, and then survived an immediate constitutional challenge in 1937.[157]

"Second, the [CPSC] does not share the defining feature that the Supreme Court in *Seila Law* relied on to hold the CFPB unconstitutional."[158] It is not a *single-Director* agency vesting significant power in the hands of a *single individual* accountable to no one.[159] Nor is the NLRB.

"Third, [CPSC] does not have any of the features that combined to make the CFPB's structure 'even more problematic' in *Seila Law*." As with the NLRB, CPSC's "staggered appointment schedule means that each President *does* have an opportunity to shape [its] leadership and thereby influence its activities."[160] Nor does the NLRB or CPSC "receive funds outside the appropriations process" such that the President would be denied influence over their activities "via the budgetary process."[161] Thus, the Board lacks any of the features that the Fifth Circuit deems potentially outside the scope of *Humphrey's Executor.*

SpaceX also claims that *Humphrey's Executor* does not apply because NLRB members "are removable only 'for neglect of duty or malfeasance in office,' but not for other causes like inefficiency."[162] But this very proposition was just rejected by the Fifth Circuit in *Consumers'*

---

[155] *Id.*

[156] Pub. L. 92–573, § 4, Oct. 27, 1972.

[157] *Jones & Laughlin Steel.*, 301 U.S. at 1; *Dish Network*, 953 F.3d at 375 n.2.

[158] *Consumers' Rsch,* 2024 WL 177326, at *8.

[159] *Id.* Moreover, the single officer with "final authority" over investigations and prosecutions at the NLRB is independent of the Board and removable by the President at will. *See* 29 U.S.C. § 153(d); *Exela Enter. Sols.*, 32 F.4th at 445.

[160] *Id.*

[161] *Id.*

[162] PI Mot. at 9-10 (quoting 29 U.S.C. § 153(a) and contrasting that with *Humphry's Ex'r*, 295 U.S. at 620, which quotes 15 U.S.C. § 41).

*Research*, as CPSC commissioners have precisely the same tenure protections as the NLRB Members: "[t]he President may remove [CPSC members] *only* for 'neglect of duty or malfeasance in office'—that is, only for cause." [163] Thus, under Fifth Circuit law, it makes no difference that NLRB members are not removable for inefficiency under 29 U.S.C. § 153(a).

### D. SpaceX's Seventh Amendment claim (Count III) is beyond this Court's subject-matter jurisdiction and contrary to controlling law.

As a threshold matter, SpaceX's Seventh Amendment claim related to potential NLRA remedies is jurisdictionally barred under the applicable legal standard.[164] Here, SpaceX seeks to assert jurisdiction by pointing to a possible future order that might require SpaceX to pay its discharged employees for items such as "interest and late fees on credit cards" as part of a make-whole remedy under *Thryv*.[165] First, contesting particular remedies does not amount to a "structural" challenge to agency decisionmaking, such that meaningful review would be foreclosed.[166] Second, rather than question the Board's "power generally," as required by *Axon*, SpaceX's challenge goes only to "how that power [would be] wielded,"[167] and thus, this challenge is not collateral. And under the third *Axon* factor, the Board's power to fashion remedies as "affirmative action" under 29 U.S.C.§ 160(c) is one the Supreme Court has long

---

[163] *Consumers' Rsch.,* 2024 WL 177326, at *2 (emphasis added) (quoting 15 U.S.C. § 2053(a), which states, "Any member of the Commission may be removed by the President for neglect of duty or malfeasance in office but for no other cause.").

[164] *Axon*, 598 U.S. at 189, 191-95 (discussing whether (1) precluding district court jurisdiction would foreclose all meaningful judicial review of the claim, (2) the claim was wholly collateral, and (3) the claim is outside of the area of agency expertise); *see* above n.47.

[165] PI Mot. at 11 (claiming this to be among the subset of make-whole remedies in *Thryv,* 372 NLRB No. 22, that would run afoul of the Seventh Amendment).

[166] *Id.* at 191. Indeed, in *Jones & Laughlin Steel*, 301 U.S. at 22, 48-49, the Supreme Court rejected a similar Seventh Amendment challenge in the normal course of review of final Board orders under Section 10(f) of the Act.

[167] *Id.* at 193.

recognized as within a core area of Board expertise.[168] Accordingly, SpaceX's Seventh

Amendment allegation falls outside this Court's subject-matter jurisdiction; it may only be

considered on review of a final Board order by a circuit court.[169]

Moreover, the Seventh Amendment claim fails on its merits. The Supreme Court has

made clear that the Seventh Amendment is "no bar" to the power of Congress to create new

rights, "and remedies therefor," and to place the enforcement of such rights in an administrative

agency.[170] The dispositive inquiry is whether the proceeding in question involves "public rights"

versus "private rights."[171] The Board's proceedings involve quintessential public rights: the Act's

prohibitions against interference with employees' concerted activities for mutual aid or

protection are purely statutory creations designed to advance broader governmental policies.[172]

---

[168] "The Board's [remedial] power is a broad discretionary one, subject to limited judicial review
. . . . The Board's order will not be disturbed unless it can be shown that the order is a patent
attempt to achieve ends other than those which can fairly be said to effectuate the policies of the
Act." *Fiberboard Paper Products v. NLRB*, 379 U.S. 203, 216 (1964) (quoting *Va. Elec. &
Power Co. v. NLRB*, 319 U.S. 533, 539 (1943) (internal quotations omitted)).

[169] 29 U.S.C. § 160(e), (f); *see also Myers*, 303 U.S. at 48, 49 (at the conclusion of NLRB ULP
cases: "*all questions of the jurisdiction of the Board* and the regularity of its proceedings, *all
questions of constitutional right or statutory authority* are open to examination by the court")
(emphasis added), and 51.

[170] *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 461 (1977). This Court recently refused to issue a
preliminary injunction on a similar Seventh Amendment claim raised by SpaceX in a different
employment-discrimination case: *Space Exploration Technologies, Corp. v. Bell*. No. 1:23-CV-
00137, 2023 WL 8885128, at *5–6 (S.D. Tex. Nov. 8, 2023). In that administrative enforcement
case, which involved a broad range of remedies including civil penalties, this Court found that
the relevant statute—8 U.S.C. § 1324b—protects public rights and that the Seventh Amendment
therefore did not apply. *Id.* at *1, *5–6. Here, SpaceX seeks to enjoin proceedings that do not
even concern the civil monetary penalties that the Fifth Circuit took issue with in *Jarkesy*. 34
F.4th at 454 ("actions seeking civil penalties are akin to special types of actions in debt from
early in our nation's history which were distinctly legal claims").

[171] *Oil States Energy Servs. LLC v. Greene's Energy Grp. LLC*, 138 S. Ct. 1365, 1373 (2018).

[172] *See Va. Elec.*, 319 U.S. at 543 (the Board's orders "vindicate public, not private rights").

Over eighty years ago, the Supreme Court held an indistinguishable "contention under the Seventh Amendment [to be] without merit" in *NLRB v. Jones & Laughlin Steel Corp.*[173] The right to a jury trial does not extend to cases under the NLRA.[174] The Fifth Circuit reached this same conclusion even earlier. In *Agwilines, Inc. v. NLRB*, it held that the NLRA "does not [confer] private rights. It is only to rights and remedies as they were generally known and enforced at common law by jury trial that the amendment applies."[175] Indeed, the NLRA's substantive rights "were not only unknown, they were *obnoxious* to the common law."[176]

SpaceX quarrels with certain make-whole remedies available under *Thryv*. But the Supreme Court explained that *Jones & Laughlin* provided two "separate ground[s]" for rejecting the Seventh Amendment argument: first, the right to a jury trial simply does not apply to the Board's administrative enforcement of the public rights created in the Act; and second, the Board's award of "monetary relief" is often intertwined with reinstatement such that the Seventh Amendment is not even implicated.[177] SpaceX's argument ignores the first holding, which does not turn on the type of relief at issue.

But even considering the nature of the relief, make-whole remedies are the type of "affirmative action" the Board may require to effectuate labor policy under Section 10(c) of the

---

[173] 301 U.S. 1, 48-49 (1937). As the Court held, the unique statutory rights enforced by the Board are "unknown to the common law," and a Board proceeding "is not a suit at common law or in the nature of such a suit." *Id.* The Board's orders are "imposed for violation[s] of the statute" and are not like "money judgment[s] . . . under the common law." *Id; accord Atlas Roofing*, 430 U.S. at 453 (1977).

[174] 301 U.S. at 48; *see also Curtis v. Loether*, 415 U.S. 189, 194-95 (1974) (explaining that *Jones & Laughlin* held jury-trial right inapplicable to NLRB administrative adjudications).

[175] 87 F.2d at 150.

[176] *Id.* (emphasis added).

[177] *Atlas Roofing*, 430 U.S. at 453-54 & n.10; *see Jones & Laughlin*, 301 U.S. at 22 (Seventh Amendment has no application where monetary remedies are "incident to equitable relief").

NLRA, as noted above.[178] Even if the Board eventually orders backpay along with any of the other make-whole remedies from *Thryv* that SpaceX protests,[179] they would be remedies "incident to equitable relief."[180] And SpaceX cannot distinguish *Thryv* from the remedies that the Supreme Court and the Fifth Circuit have long found proper.[181]

In short, not only has the Supreme Court deemed SpaceX's Seventh Amendment claim to be "without merit,"[182] this claim is wholly outside this Court's subject-matter jurisdiction.[183] Equally clear is the Fifth Circuit's jurisdictional warning for district courts to avoid "over-the-shoulder supervision of" Board proceedings.[184] As such, this Court cannot take up SpaceX's invitation to use this forum to ask the Supreme Court to revisit *Jones & Laughlin*.[185] In any event, there is no likelihood of success on the merits as to this Seventh Amendment claim.

---

[178] 29 U.S.C. § 160(c).

[179] PI Mot. at 1-2, 11-14 (citing repeatedly to *Thryv, Inc.*, 372 NLRB No. 22 (Dec. 13, 2022)). SpaceX refers to *Thryv* remedies as akin to "consequential damages." PI Mot. at 12. But as the Board noted in *Thryv*, terms of art like "consequential damages," as used in other areas of the law, are inapt descriptions of make-whole relief designed to undo the effects of an unfair labor practice and advance the policies of the Act. 372 NLRB No. 22, slip op. at 13.

[180] *Jones & Laughlin*, 301 U.S. at 22.

[181] *See, e.g., NLRB v. Strong*, 393 U.S. 357, 359 (1969) (as to payment of fringe benefits, "making the workers whole for losses suffered on account of an unfair labor practice is part of the vindication of the public policy which the Board enforces."); *see also NLRB v. Mia. Coca-Cola Bottling Co.*, 360 F.2d 569, 575 (5th Cir. 1966) (interim employment expenses indirectly attributable to discharge is properly factored into the Board's make-whole relief); *S. Tours, Inc. v. NLRB*, 401 F.2d 629, 633 (5th Cir. 1968) ("[T]he Board is empowered to effectuate the broad policies of the Act by restoring the situation as nearly as possible to that which would have obtained but for the illegal conduct.").

[182] *Jones & Laughlin Steel*, 301 U.S. at 49.

[183] *Myers*, 303 U.S. at 48-51.

[184] *Bokat*, 363 F.2d at 673 (district courts play "a very very minor role" under the NLRA).

[185] PI Mot. at 14 n.2.

**E. Not only is jurisdiction lacking to hear SpaceX's combined-functions claim (Count IV), the Fifth Circuit recently rejected an indistinguishable argument.**

Because Count IV's combined-functions claim is exclusively focused on the NLRA's Section 10(j),[186] it fails to meet the *Axon* standard for subject-matter jurisdiction in this Court,[187] as Section 10(j)'s injunctive relief is not sought as part of the Board's regular proceedings.[188] And even if the Board were to authorize the General Counsel to initiate such a proceeding as to SpaceX, that would hardly be evidence that the Board was "wielding authority unconstitutionally in all or a broad swath of its work."[189] Indeed, even Article III jurisdiction over this claim is questionable, considering that the instant Complaint preceded any action or any request for action by the five-seat Board as to the ULP case against SpaceX.[190]

Aside from these jurisdictional considerations, case law, including that of the Fifth Circuit, universally rejects the proposition that the mere combination of prosecutorial and adjudicative functions in a single agency violates due process.[191] As the Fifth Circuit recently

---

[186] PI Mot. at 14-17; Compl. ¶¶ 108-138.

[187] 598 U.S. at 189, 191-93 ("here-and-now injury" providing for jurisdiction requires structural constitutional challenge objecting to an agency's "power generally, not to anything particular about how that power was wielded"); *see also Myers*, 303 U.S. at 48, 51; *Bokat*, 363 F.2d at 673.

[188] The Board may seek injunctive relief under Section 10(j) only if its usual processes may be rendered ineffective due to the passage of time. *See* 29 U.S.C. § 160(j); 29 C.F.R. § 101.37; *Boire*, 515 F.2d at 1188. It is quite rare for the Board to institute such proceedings. In fiscal year 2023, out of 19,869 unfair-labor-practice charges filed by the public, Regional Offices submitted 156 cases for consideration of such relief; of these, the General Counsel submitted only 15 for Board authorization, which was granted 14 times, resulting in 7 Section 10(j) petitions that were filed in court. *NLRB Performance and Accountability Report, FY 2023*, NLRB, at 27 and 86, available at https://www.nlrb.gov/reports/agency-performance/performance-and-accountability (last visited on Jan. 31, 2024).

[189] *Axon*, 598 U.S. at 189.

[190] Compl. at 25; PI Mot. at 26.

[191] *See, e.g., Air Prods. & Chems., Inc. v. FERC*, 650 F.2d 687, 709-10 (5th Cir. 1981) (courts have "uniformly held" that combining investigative, prosecutorial, and judicial functions does not establish a due process violation).

found in a case rejecting a challenge alleging that the FTC improperly serves as both prosecutor and judge, "the Supreme Court has held that administrative agencies can, and often do, investigate, prosecute, and adjudicate rights without violating due process."[192] It explained that, "courts cannot 'presume bias' merely from the institutional structure of an agency."[193] The Fifth Circuit's rationale fully encompasses SpaceX's argument here, where an adjudicatory agency may merely authorize court litigation seeking temporary relief while an independent officer initiates and prosecutes the administrative action. And as various circuit courts have concluded, seeking injunctive relief under Section 10(j) does not violate the Board's obligation to avoid prejudging the facts of a labor dispute.[194] SpaceX's reliance on *Williams v. Pennsylvania*, a death-penalty case, is easily distinguishable, given the nature of the case and the far more substantive involvement of the prosecutor.[195]

### III. The balance of the equities and the public interest factors counsel against granting a preliminary injunction.

As shown above, SpaceX has failed to meet its burden as to irreparable harm and likelihood of success. But even if SpaceX could establish these required elements, it cannot show that its alleged harm outweighs the harm an injunction would inflict on the public and those not

---

[192] *Illumina*, 88 F.4th at 1047 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975))

[193] *Id*. (quoting *United States v. Benitez-Villafuerte*, 186 F.3d 651, 660 (5th Cir. 1999)).

[194] *Flamingo Hilton-Laughlin v. NLRB*, 148 F.3d 1166, 1174 (D.C. Cir. 1998); *Kessel Food Mkts., Inc. v. NLRB*, 868 F.2d 881, 887 (6th Cir. 1989); *Eisenberg v. Holland Rantos Co.*, 583 F.2d 100, 104 n.8 (3d Cir. 1978); *NLRB v. Sanford Home for Adults*, 669 F.2d 35, 37 (2d Cir. 1981).

[195] 579 U.S. 1, 8 (2016), cited in PI Mot., at 15. The stakes here cannot compare. *See Gibson v. Tex. Dep't of Ins.–Div. of Workers Comp.*, 700 F.3d 227, 239 (5th Cir. 2012) (requirements of due process are "flexible and call for such procedural protections as particular situation demands" (cleaned up)). Further afield is SpaceX's citation to *Horne v. Polk*, 394 P.3d 651 (Ariz. 2017), a *state* court decision. PI Mot. at 15-16. In *Horne*, a special attorney general made the final agency decision to affirm her own order over an ALJ's recommendation, without a board or commission reviewing that decision. 394 P.3d at 653–55. SpaceX cannot show such due process concerns here, where the harm is at best speculative.

before the Court.[196] The standard burdens of administrative litigation cannot justify an injunction that would preclude the public's "strong interest in enforcing the federal labor laws."[197]

The NLRB was created and empowered by Congress to initially adjudicate and, where appropriate, remedy unlawful labor practices to "safeguard[] commerce from injury."[198] Congress's intent was to protect the public interest rather than to vindicate private rights.[199] Here, the requested injunction would frustrate Congress's intent to protect the Act's "public rights."[200] That frustration would be especially severe here given that the Act's procedures are the sole mechanism for enforcing the NLRA.[201] The peaceful resolution of industrial disputes depends on an effective means to vindicate those rights. The fact that SpaceX's work is important to the national interest only heightens the public interest in effectuating Congress's policy of ensuring labor peace by protecting employee rights. Even in the midst of the Space Race in the 1960s, such policy questions were properly determined by the Board.[202]

Moreover, granting an injunction on ALJ or Board removability grounds would not only frustrate the NLRB's enforcement efforts, but would burden the already busy federal courts, as it would inevitably encourage any employer or labor union unhappy with scrutiny of their labor

---

[196] *See Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451, 457 (5th Cir. 2016).

[197] *See Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 747 n.14 (1983).

[198] 29 U.S.C. §§ 151, 160; *see UAW Loc. 283 v. Scofield*, 382 U.S. 205, 220 (1965).

[199] *See, e.g., Vaca v. Sipes*, 386 U.S. 171, 182-83 n.8 (1967).

[200] *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 366 (1940).

[201] *Nathanson v. NLRB*, 344 U.S. 25, 27 (1953) ("The Board is the public agent chosen by Congress to enforce the [NLRA]."); *Amal. Util. Workers v. Consol. Edison Co. of N.Y.*, 309 U.S. 261, 270 (1940) (Board is the "sole authority to secure" the prevention of ULPs).

[202] *Aerojet Gen. Corp.*, 144 NLRB 368, 371 (1963) (barring petition to unseat incumbent union as bargaining representative at missile and rocket manufacturer where union had agreed to suspend strike at request of President and Secretary of Labor during contract dispute).

practices to seek preliminary injunctions against NLRB proceeding.[203] It is axiomatic that "the public has a powerful interest in the enforcement of duly enacted laws."[204] As the Fifth Circuit has repeatedly held, interfering with the enforcement of "statutes enacted by representatives of [the] people" is a "form of irreparable injury" to the government.[205] Depriving employees of the sole mechanism to vindicate their NLRA rights cannot serve the public interest, especially when SpaceX may obtain an adequate legal remedy if the Board ultimately issues an adverse decision.[206] Likewise, the public interest is not served by enabling a federal contractor's ability to violate federal labor policy, merely because it asserts that the Board's administrative proceeding "distracts from its important missions."[207] But it is not for a federal contractor to choose which federal laws are most in the public interest or warrant prioritizing.

## CONCLUSION

For the forgoing reasons, SpaceX's motion for a preliminary injunction should be denied, if this matter is not transferred as previously requested by the NLRB.

Respectfully submitted,

---

[203] Indeed, for FY 2023, the Regions found merit in 41.1 percent of the 19,869 ULP charges filed, which means that in a typical year, 8,166 respondents could file in district court seeking to enjoin the proceeding. *See* above, n.188, Performance and Accountability Report at 27.

[204] *League of United Latin Am. Citizens v. Abbott*, 601 F. Supp. 3d 147, 184 (W.D. Tex. 2022) (internal punctuation and citations omitted).

[205] *See, e.g., Tex. All. for Ret. Ams. v. Hughs*, 976 F.3d 564, 569 (5th Cir. 2020); *Valentine v. Collier*, 956 F.3d 797, 803 (5th Cir. 2020); *accord Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013).

[206] *See* above, n.169, discussing the comprehensive nature of appellate court review available at the conclusion of NLRB proceedings.

[207] PI Mot. at 4-5.

ALAMDAR S. HAMDANI
*United States Attorney*
*Southern District of Texas*

By: <u>Bejamin S. Lyles</u>
BENJAMIN S. LYLES
*Assistant United States Attorney*
S.D. Tex. ID No. 3062156
State Bar No. 24094808
1701 W. Bus. Highway 83, Suite 600
McAllen, TX 78501
Telephone: (956) 618-8010
Facsimile: (956) 618-8016
E-mail: Benjamin.Lyles@usdoj.gov
*Attorney-in-Charge for Defendants*

Dated this 2nd day of February, 2024.

NATIONAL LABOR RELATIONS BOARD
*Contempt, Compliance, and*
 *Special Litigation Branch*

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*

DANIEL BRASIL BECKER
*Trial Attorney*

GRACE L. PEZZELLA
*Trial Attorney*

<u>s/*David P. Boehm*</u>
DAVID P. BOEHM
*Trial Attorney*
D.C. Bar No. 1033755 – *pro hac vice*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
Telephone: (202) 273-4202
Email: David.boehm@nlrb.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

<u>s/*David P. Boehm*</u>
DAVID P. BOEHM
*Trial Attorney*
D.C. Bar No. 1033755 – *pro hac vice*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
Telephone: (202) 273-4202
Email: David.boehm@nlrb.gov

Dated this 2nd day of February, 2024.