## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

|  |  |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board, <br><br> Defendants. | Case No.  1:24-cv-00001 |

### BRIEF OF CHARGING PARTIES AS *AMICI CURIAE* IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Page

ARGUMENT ............................................................................................................. 1

I.  The Commencement of the Hearing Before an ALJ Will Not Cause Irreparable
    Harm .............................................................................................................. 1

    A.  Only Count I Concerning Removability of ALJs is Even Arguably
        Implicated by Commencement of the Hearing Before an ALJ............................ 2

    B.  The Claim Concerning the Removability of the ALJ is Not Grounds for
        Finding Irreparable Harm ................................................................................ 3

        1.  If the Removal Protections Are Unconstitutional, They Are
            Presently Inoperable.................................................................................. 4

        2.  SpaceX Has Not Alleged that the ALJ Would Be Removed Either
            By the President or the Board If This Court Holds They Have
            Authority to Do So..................................................................................... 4

        3.  The Statutory Removal Protection is Severable ....................................... 6

        4.  There Will Be No "Here-and-Now" Irreparable Injury That Could
            Possibly Justify Injunctive Relief ............................................................. 7

        5.  At Most, This Court Could Enjoin Invocation of the Removal
            Protections............................................................................................... 8

II. SpaceX is Not Likely to Prevail on the Merits on Any of Its Claims.............................. 8

    A.  Count I: SpaceX is Not Likely to Prevail on the ALJ Claim................................ 8

    B.  Count II: SpaceX is Not Likely to Prevail on the Board Member Claim ............. 9

    C.  Count III: SpaceX is Not Likely to Prevail on the Seventh Amendment
        Claim............................................................................................................ 10

        1.  The Court Lacks Jurisdiction Over This Claim ...................................... 10

            a.  Precluding District Court Jurisdiction Would Not Foreclose
                Meaningful Judicial Review ...................................................... 11

            b.  The Seventh Amendment Claim is Not "Wholly Collateral"
                to the Board's Review Procedures ............................................. 13

            c.  The Seventh Amendment Claim is Not Outside the
                NLRB's Expertise ..................................................................... 13

        2.  SpaceX's Seventh Amendment Challenge is Meritless.......................... 14

    D.  Count IV: SpaceX is Not Likely to Prevail on the Mixed Functions Claim........ 17

III. The Balance of Hardships Favors the NLRB and the Charging Parties ........................ 19

IV. The Public Interests Favors the NLRB and the Charging Parties.................................. 20

CONCLUSION..................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967)........................................................................................2

*Axon Enterprises, Inc. v. FTC*,
   598 U.S. 175 (2023)...........................................................7, 11, 12, 13

*Bank of Louisiana v. FDIC*,
   919 F.3d 916 (5th Cir. 2019) ......................................................................13

*Boeing Airplane Co. v. NLRB*,
   217 F.2d 369 (9th Cir. 1954) ......................................................................20

*Boeing Co. v. Int'l Ass'n of Machinists & Aerospace Workers*,
   504 F.2d 307 (5th Cir. 1974) ......................................................................20

*Burgess v. FDIC*,
   639 F.Supp.3d 732 (N.D. Tex. 2022) ..........................................................5

*Cmty. Fin. Servs. Assoc. of Am. v. CFPB*,
   51 F.4th 616 (5th Cir. 2022) ...............................................................4, 5, 8

*Collins v. Dept. of the Treasury*,
   83 F.4th 970 (5th Cir. 2023) .................................................................5, 8

*Collins v. Yellen*,
   141 S. ct. 1761 (2021).........................................................................4, 7

*Consumers' Research v. CPSB*,
   No. 22-40328, 2024 WL 177326 (5th Cir. January 17, 2024)..........................9, 10

*Eisenberg v. Holland Rantos Co.*,
   583 F.2d 100 (3d Cir. 1978).......................................................................18

*Elgin v. Dep't of Treasury*,
   567 U.S. 1 (2012).....................................................................................13

*Flamingo Hilton-Laughlin v. NLRB.*,
   148 F.3d 1166 (D.C. Cir. 1998)...................................................................18

*Free Enterprise Fund v. PCAOB*,
   561 U.S. 477 (2010)....................................................................................6

*Granfinanciera, S.A. v. Nordberg*,
   492 U.S. 33 (1989)....................................................................................16

*Humphrey's Executor v. U.S.*,
   295 U.S. 602 (1935)....................................................................................9

**TABLE OF AUTHORITIES**
(continued)

Page

*Jarkesy v. SEC,*
34 F.4th 446 (5th Cir. 2022) ..................................................................9, 15, 16, 17

*Kessel Food Mkts., Inc. v. NLRB,*
868 F.2d 881 (6th Cir. 1989) ...................................................................................18

*Lopez v. City of Houston,*
617 F.3d 336 (5th Cir. 2010) .....................................................................................2

*Nat'l Licorice Co. v. NLRB,*
309 U.S. 350 (1940)..................................................................................................16

*NLRB v. Food & Commercial Workers,*
484 U.S. 112 (1987)....................................................................................................1

*NLRB v. Jones & Laughlin Steel Co.,*
301 U.S. 1 (1937)..............................................................................14, 15, 16, 17

*NLRB v. Sanford Home for Adults,*
669 F.2d 35 (2d Cir. 1981)........................................................................................18

*NLRB v. Seven-Up Bottling Co.,*
344 U.S. 344 (1953)..................................................................................................14

*Phelps Dodge Corp v. NLRB,*
313 U.S. 177 (1941)..................................................................................................14

*SEC v. Jarkesy,*
143 S. Ct. 2688 (2023)................................................................................................9

*Seila Law LLC v. CFPB,*
140 S. Ct. 2183 (2020)........................................................................................6, 7, 9

*SpaceX v. Bell,*
No. 1:23-cv-00137, 2023 WL 8885128 (S.D. Tex. 2023)..........................6, 7, 8, 16

*Thryv, Inc.,*
372 NLRB No. 22 (2022) .........................................................................................12

*Thunder Basin Coal Co. v. Reich,*
510 U.S. 200 (1994)..................................................................................................11

*Virginia Elec. & Power Co. v. NLRB,*
319 U.S. 533 (1943)..................................................................................................16

*Withrow v. Larkin,*
421 U.S. 35 (1975)..............................................................................................18, 19

**Statutes**

29 U.S.C. § 153(a) .........................................................................................................9

**TABLE OF AUTHORITIES**
(continued)

Page

29 U.S.C. § 160(c) ........................................................................14, 16

29 U.S.C. § 160(f) ........................................................................11

29 U.S.C. § 160(j) ........................................................................17

29 U.S.C. § 166 ........................................................................6

**Other Authorities**

*Boeing Marks 30th Anniversary of Apollo 11*,
    https://boeing.mediaroom.com/1999-07-14-Boeing-Marks-30th-Anniversary-
    of-Apollo-11-Built-Major-Components-for-Lunar-Mission (visited Jan 23,
    2024) ........................................................................20

*History of the IAM*, https://www.goiam.org/about/history-of-the-iam/ (visited Jan.
    22, 2024) ........................................................................20

**Regulations**

29 C.F.R. § 102.46(a) ........................................................................3

29 C.F.R. § 102.48(a) ........................................................................3

SpaceX seeks extraordinary relief on the grounds that an entirely speculative and abstract violation of its yet-to-be-established constitutional rights will occur if an ordinary hearing before an administrative law judge (ALJ) is allowed to commence on March 5. Moreover, SpaceX claims that this speculative and abstract violation of its rights somehow outweighs the concrete interest of the eight fired employees in the timely adjudication of their federal statutory rights, likely resulting in reinstatement with backpay.[1] SpaceX argues in support of this extraordinary request that an administrative structure established by the United States Congress that has existed since 1935 and has been upheld by the United States Supreme Court and numerous lower federal courts is unconstitutional. Granting such relief would not only cause unjustified harm to the fired employees, it would throw this nation's entire system of labor relations, one Congress adopted to ensure industrial peace, into chaos and invite every union and employer being prosecuted for committing unfair labor practices to come knocking on this Court's door.

The Court should deny the motion for a preliminary injunction.

## ARGUMENT

### I.     The Commencement of the Hearing Before an ALJ Will Not Cause Irreparable Harm

Only one thing will happen on March 5 – a hearing will begin before an ALJ. SpaceX claims that ALJs should be removable at will by the President or, at least, removable for cause by an official who is removable at will be the President. Complaint Count I. We address that claim below and the appropriate remedy should it be successful, but it is important to recognize

---

[1] The NLRB's Regional Director has already found merit in the charge that SpaceX violated the law in firing the employees as that is a predicate for the issuance of a complaint.  *See NLRB v. Food & Commercial Workers*, 484 U.S. 112, 119 (1987).

first that every one of the other claims asserted by SpaceX will not be implicated by the commencement of the hearing and, in fact, may never be implicated.

### A. Only Count I Concerning Removability of ALJs is Even Arguably Implicated by Commencement of the Hearing Before an ALJ

In addition to its claim about the removability of ALJs, SpaceX claims that the Members of the National Labor Relations Board (NLRB or Board) should also be removable at will by the President (Count II), that it is entitled to a jury trial because the Board may award compensatory damages (Count III), and that the NLRB is improperly constituted because it exercises adjudicatory, prosecutorial and legislative functions (Count IV). Even if SpaceX were likely to prevail on any of these claims (which it is not, as explained below), none of them is implicated by the commencement of the hearing before an ALJ and each of them is entirely speculative. For this reason, each of these claims is unripe and cannot support a showing of irreparable harm.

The ripeness doctrine "through avoidance of premature adjudication, [prevents courts] from entangling themselves in abstract disagreements over administrative policies, and also . . . protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967). Where a "purported injury is 'contingent [on] future events that may not occur as anticipated, or indeed may not occur at all,' the claim is not ripe for adjudication." *Lopez v. City of Houston*, 617 F.3d 336, 342 (5th Cir. 2010) (citation omitted).

Each of SpaceX's claims, except that which relates to ALJ's removability, relies precisely on speculative "future events that . . . may not occur at all." Count II, which relates to the President's authority to remove *Board* members and Count IV, concerning the mixed functions of the *NLRB*, are not implicated by the commencement of a hearing before an *ALJ*. Under the NLRA, the NLRB may never hear or decide the case. Only if a party seeks review of

an ALJ decision does the Board even consider a case; otherwise, the Board never hears the case. *See* 29 C.F.R. §§ 102.46(a), 102.48(a). And, even if a party ultimately seeks review of a final decision by the ALJ, the resulting Board consideration of the matter is not imminent. If, after the hearing an issuance of a decision by the ALJ, exceptions are filed with the Board, SpaceX can renew its motion at that time.

Nor is SpaceX's Seventh Amendment claim (Count III) implicated by the commencement of the hearing before the ALJ. SpaceX concedes that, consistent with the Seventh Amendment, an ALJ could (1) hear the case against it; (2) make factual findings as to liability; and (3) issue an order recommending certain remedies, such as the reinstatement of the fired workers with backpay. *See* Compl. ¶¶ 88, 95. Under SpaceX's own theory, it would sustain an injury only *if* (1) it were found liable; and (2) the ALJ recommended and the Board chose to impose enhanced pecuniary remedies that went beyond backpay and reinstatement. Both of these are speculative events that have not yet occurred, and, indeed, may never occur.

Counts II, III, and IV are not ripe and cannot support a showing of irreparable harm.

>    **B.      The Claim Concerning the Removability of the ALJ is Not Grounds for Finding Irreparable Harm**

The claim concerning the ALJ is also not a basis for finding irreparable harm because (1) if the removal protections are unconstitutional they are presently inoperable, (2) SpaceX has presented no evidence that either President Biden or the NLRB would remove any ALJ appointed to conduct the hearing even if the statutory removal protection was declared unconstitutional, (3) the Supreme Court and Fifth Circuit have made clear that the only appropriate remedy for this form of constitutional violation (other than declaratory relief) is to sever the offending job security provision from the remainder of the statute, and (4) at most

SpaceX is entitled to an injunction against invocation of the removal protections. Thus, SpaceX's only arguably ripe claim provides no basis for finding irreparable harm.

### 1. If the Removal Protections Are Unconstitutional, They Are Presently Inoperable

The Supreme Court has made clear that in the precise context of a challenge to removal protections of agency officials that "an unconstitutional provision is never really part of the body of governing law." *Collins v. Yellen*, 141 S. ct. 1761, 1788 (2021). "[T]he Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment." *Id*. at 1789-90. Thus, both the President and the NLRB are free now to remove any ALJ. No action of this Court is necessary. SpaceX will not be subject to even the abstract injury it claims if the hearing commences.

### 2. SpaceX Has Not Alleged that the ALJ Would Be Removed Either By the President or the Board If This Court Holds They Have Authority to Do So

In *Collins*, the Court made clear that unconstitutional removal protection only causes cognizable harm to a private party meriting vacatur of an agency decision if it somehow deterred the President or other superior officer from removing the ALJ. "[S]uppose," the Court speculated, "the President had made a public statement expressing displeasure with actions taken by [protected officer] and had asserted that he would remove the [officer] if the statute did not stand in the way." *Id*. at 1789.  Following this analysis, the Fifth Circuit has held that where "a party challeng[es] agency action" on the grounds that agency actors are impermissibly insulated from removal, it "must show not only that the removal restriction transgresses the Constitution's separation of powers but also that the unconstitutional provisions caused (or would cause) them harm." *Cmty. Fin. Servs. Assoc. of Am. v. CFPB*, 51 F.4th 616, 632 (5th Cir.

2022). Drawing from *Collins*, the Fifth Circuit has established "three requisites for proving

[such] harm":

> A substantiated desire by the President to remove the unconstitutionally insulated
> actor, (2) a perceived inability to remove the actor due to the infirm provision, and
> (3) a nexus between the desire to remove and the challenged actions taken by the
> insulated actor.

*Cmty. Fin. Servs,* 51 F.4th at 632. "The last prong is satisfied upon a showing that but for the

removal restriction, [the] President [] would have removed [the agency actor at issue] *and* that

[the agency] would have acted differently as to the challenged action." *Collins v. Dept. of the*

*Treasury*, 83 F.4th 970, 982 (5th Cir. 2023) (emphasis in original, quotation marks omitted).

These requisites must be met whether seeking prospective or retrospective relief. *Cmty. Fin.*

*Servs.*, 51 F.4th at 631.

SpaceX makes no attempt to satisfy this three-part test. Nowhere in its complaint or its

motion for preliminary injunction does it make even an un-"substantiated" claim that the

President or the NLRB desire to remove the ALJ assigned to this matter,[2] and that if they did

remove the assigned ALJ, a different ALJ would act differently. This dooms SpaceX's claim.

*Collins v. Treasury*, 83 F.4th at 98 (dismissing claim for failing to allege sufficient facts to show

harm).  And it dooms the preliminary injunction request. *Burgess v. FDIC*, 639 F.Supp.3d 732,

747 (N.D. Tex. 2022) (declining to enjoin proceeding before ALJ insulated by removal

protections because plaintiff provided no evidence that removal protections inflicted the kind of

harm required by *Collins*).

---

[2]  Nor could it make such a demonstration since no ALJ has been assigned to this case as of this
date.

### 3.     The Statutory Removal Protection is Severable

"[W]hen confronting a constitutional flaw in a statute, [courts] try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact." *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 508 (2010) (cleaned up). "Statutes are generally severable if the remainder of the law is capable of functioning independently and thus would be fully operative as a law." *SpaceX v. Bell*, No. 1:23-cv-00137, 2023 WL 8885128, at *5 (S.D. Tex. 2023) (cleaned up). Where that is so, courts "must sustain" a statute's "remaining provisions unless it is evident that the Legislature would not have enacted those provisions independently of that which is invalid." *Free Enterprise Fund*, 561 U.S. at 509. To meet that burden on a removal protections claim, a party must show that it is "evident" that Congress "would have preferred no [agency] at all to [an agency] whose members are removable at will." *Id.*; *see also Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2210 (2020) (same).

The NLRA contains an express severability clause. *See* 29 U.S.C. § 166. Therefore, the Court need not speculate here—the text of the statute makes clear Congress's intent that if the removal protections of ALJs (or Board members) "shall be held invalid, the remainder of this subchapter . . . shall not be affected thereby." *Id.*

In light of this plain textual command, SpaceX points to "nothing in the statute's text or history" that makes it "evident" that Congress would have chosen not to rely on ALJs to conduct hearings under the Act if the ALJs could not be insulated from removal. *Free Enterprise Fund*, 561 U.S. at 509. That SpaceX points to references in the legislative history or academic articles that discuss the NLRB's or the MSPB's independence does nothing more than "confirm that Congress preferred an independent [NLRB and MSPB] to [] dependent one[s]; [] they shed little light on the critical question whether Congress would have preferred a dependent [agency] to *no agency at all*." *Seila Law*, 140 S. Ct. at 2210 (emphasis in original). Because SpaceX can't show

-6-

that Congress would have preferred not to rely on ALJs to relying on removable ALJs, its

request for preliminary injunction fails. *Bell*, 2023 WL 8885128, at *5 (declining to enjoin

because the removal protections were severable).

### 4.   There Will Be No "Here-and-Now" Irreparable Injury That Could Possibly Justify Injunctive Relief

SpaceX attempts to rely on *Axon Enterprises, Inc. v. FTC*, 598 U.S. 175 (2023), to argue

that preliminary relief is warranted because it would otherwise "be[] subjected to

unconstitutional agency authority by an unaccountable ALJ[,]" which is a "here-and-now

injury[.]" Mot. for PI 18 (cleaned up). But SpaceX conflates an alleged injury sufficient to confer

jurisdiction in an action for declaratory relief, *Axon*, 598 U.S. at 191, or confirm ripeness, *Seila*

*Law*, 140 S. Ct. at 2196, with a showing of harm that is irreparable, entitling a party to

preliminary relief enjoining agency proceedings. *See Collins*, 141 S. Ct. at 1788 n.24 ("What we

said about standing . . . should not be misunderstood as a holding on a party's entitlement to

relief based on an unconstitutional removal restriction."). If a preliminary injunction was

justified, the Court could not have held in *Collins* that "the unlawfulness of the removal

provision does not strip the [insulated agency actor] of the power to undertake the other

responsibilities of his office[.]" *Id.* at n.23. Accordingly, even if SpaceX has standing to seek a

declaratory judgment that the ALJ must be removable at-will, this Court may not grant

preliminary relief that allows SpaceX to escape (or delay) being subject to proceedings by a

validly-appointed ALJ fully entitled to undertake the responsibilities of his or her office—relief

that far exceeds what SpaceX could possibly receive were it to succeed on the merits.

The Fifth Circuit has held that removal protections, even if they are unconstitutional, can

only support a remedy beyond declaratory relief if a plaintiff alleges a desire to remove, a

perceived inability to remove, and a likelihood that removal would make a difference. *Cmty. Fin.*

*Servs.*, 51 F.4th at 632. And the Court has reconfirmed that holding post-*Axon*. *See Collins*, 83 F.3d at 982-83 (affirming dismissal of complaint based on failure to sufficiently allege this form of harm). Because SpaceX does not attempt to meet the three requisites, it concedes that appearing before the ALJ will not cause any harm, much less irreparable harm that would require the proceedings to be enjoined.

### 5. At Most, This Court Could Enjoin Invocation of the Removal Protections

Because any alleged constitutional infirmity caused by removal protections can be remedied by simply declaring those provisions void and severing them, SpaceX is not entitled to the extraordinary relief of a preliminary injunction to stop the proceeding before the ALJ. *See Bell*, 2023 WL 8885128, at *5 ("Plaintiff has not shown it is entitled to [a preliminary] injunction instead of severance on its removal claim.") At most, if it were requested to do so, the Court could enjoin the invocation of the for-cause provisions, making clear to the Board and the President that they are free to remove the ALJ if they wish to do so while allowing the proceedings to go forward. But SpaceX has not requested that form of relief in its motion.

### II. SpaceX is Not Likely to Prevail on the Merits on Any of Its Claims

### A. Count I: SpaceX is Not Likely to Prevail on the ALJ Claim

As demonstrated above, because SpaceX has failed to allege any of the "three requisites" established by *Cmty. Fin. Servs.*, 51 F.4th at 632, the Court cannot possibly provide SpaceX the preliminary relief it seeks. Accordingly, the Court should not reach any conclusions concerning the likelihood of success of the merits in adjudicating the present motion. Indeed, SpaceX's claim is entirely premised on the Fifth Circuit's decision in *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), Mot. for PI 7-8, which is now pending before the Supreme Court. *SEC v. Jarkesy*, 143 S. Ct. 2688 (2023) (granting certiorari). The Court should await the Supreme Court's

-8-

resolution of *Jarkesy* before addressing the merits of Count I, if necessary, for example, to dispose of SpaceX's request for declaratory relief.

### B.    Count II: SpaceX is Not Likely to Prevail on the Board Member Claim

The President holds wide power to remove executive branch actors, yet the Supreme Court has long recognized an exception that allows "Congress [to] create expert agencies led by a group of principal officers removable by the President only for good cause." *Seila Law*, 140 S. Ct. at 2191-92 (cleaned up), *citing Humphrey's Executor v. U.S.*, 295 U.S. 602 (1935). And "while the Court has more than once declined to extend *Humphrey's*, the exception itself has persevered[.]" *Consumers' Research v. CPSB*, No. 22-40328, 2024 WL 177326, at *6 (5th Cir. January 17, 2024) (cleaned up).  "The contours of the *Humphrey's Executor* exception depend upon the characteristics of the agency before the Court." *Id*. at *7 (cleaned up). As the Court in *Seila Law* explained, it found in *Humphrey's Executor* that the FTC was "non-executive" in nature based on the following factors:

> Composed of five members—no more than three from the same political party— the Board was designed to be non-partisan and to act with entire impartiality.  The FTC's duties were neither political nor executive, but instead called for the trained judgment of a body of experts informed by experience.  And the Commissioners' staggered, seven-year terms enabled the agency to accumulate technical expertise and avoid a complete change in leadership at any one time.

140 S. Ct. at 2198-99 (cleaned up).

Aside from the NLRB members' having five-year (instead of seven-year) terms, the NLRB mirrors these characteristics. 29 U.S.C. § 153(a).  SpaceX does not dispute that but argues that the NLRB does exercise executive functions. Mot. for PI 9-10. But even if that were so, that characteristic itself doesn't remove the Board from the *Humphrey's Executor* exception.

Just weeks ago, the Fifth Circuit dismissed a separation-of-powers challenge to the Consumer Product Safety Board (CPSB), an agency structured nearly identically to the NLRB

-9-

and whose members can be removed for only the same reasons as the NLRB members: "for neglect of duty or malfeasance in office." *Consumers' Research*, 2024 WL 173326, at *2. Even finding that the CPSB exercised substantial executive functions, the Circuit Court held the agency still fell within the *Humphrey's Executor* exception because the agency 1) didn't present a historically unprecedented structure, and instead was "a prototypical traditional independent agency, run by a multimember board"; 2) didn't have a single-director structure, which the Circuit Court described at the "defining feature" that led the Supreme Court to find the CFPB's structure unconstitutional in *Seila Law*; and 3) didn't share characteristics that made the CFPB's structure even more problematic, namely that the staggered terms of the CPSB members allowed the President to shape that agency's leadership and that the CPSB received its funding through the normal appropriations process. *Id*. at *8 (cleaned up). Each of these characteristics applies to the NLRB. As such, the NLRB "fits squarely within what [the Fifth Circuit] described just a few years ago as the recognized exception for independent agencies whose leadership consists of a multi-member body of experts." *Id*. at *9 (cleaned up). Accordingly, *Consumers' Research* forecloses SpaceX's challenge to the NLRB's removal protections.

### C.    Count III: SpaceX is Not Likely to Prevail on the Seventh Amendment Claim

#### 1.    The Court Lacks Jurisdiction Over This Claim

This Court need not even consider the merits of SpaceX's Seventh Amendment claim because governing Supreme Court precedent makes clear that SpaceX is jurisdictionally barred from raising this claim in district court. Congress granted the NLRB exclusive jurisdiction over unfair labor proceedings and channeled all judicial review to the courts of appeals. *See* 29 U.S.C. § 160(f). As a general rule, Congress's provision for "review in a court of appeals following the

-10-

agency's own review process . . . divests district courts of their ordinary jurisdiction over the covered cases." *Axon*, 598 U.S. at 185. Here, SpaceX has failed to follow this procedure.

To bring this claim in district court, SpaceX must therefore establish an exception to this general rule. Such claims are governed by *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), where the Supreme Court identified three relevant factors that courts must consider. These are: (1) whether precluding district court jurisdiction would "foreclose all meaningful judicial review"; (2) whether the claim is "wholly collateral" to the agency's review procedures; and (3) whether the claim is "outside the agency's expertise." *Id.* at 212-13 (cleaned up).

The Supreme Court has held that these factors will typically be met where a claim, if accepted, would "prevent [the agency] from exercising *any* power," presents a "challenge[] . . . to the *structure or very existence* of an agency," or implies that "an agency is wielding authority unconstitutionally in *all or a broad swath* of its work." *Axon*, 598 U.S. at 189 (emphasis added). SpaceX's Seventh Amendment challenge to a specific class of remedies is not such a claim.

> ### a.   Precluding District Court Jurisdiction Would Not Foreclose Meaningful Judicial Review

To determine whether a litigant may receive meaningful judicial review in the courts of appeals following an agency proceeding, the Supreme Court focuses on the nature of the injury alleged. For claims that "maintain in essence that the agencies, as currently structured, are unconstitutional in much of their work," such an injury inures at the very inception of an "illegitimate proceeding, led by an illegitimate decisionmaker," and "is impossible to remedy once the proceeding is over, which is when appellate review kicks in." *Axon*, 598 U.S. at 180, 191. In short, district court review is warranted when the petitioner "would have the same claim had it *won* before the agency." *Id.* at 191.

-11-

Compare this sort of claim to what SpaceX alleges here. SpaceX readily concedes that, consistent with the Seventh Amendment, the NLRB can (1) hear the case against it; (2) make factual findings as to liability; and (3) order certain remedies, such as the reinstatement of the fired workers with backpay, all in the context of an administrative proceeding with no jury. *See* Compl. ¶¶ 88, 95. Instead, SpaceX solely takes issue with the Board's recent decision in *Thryv, Inc.*, 372 NLRB No. 22 (2022), where the NLRB interpreted its remedial authority to include "direct or foreseeable pecuniary harms that . . . employees suffer as a result of [an employer's unfair labor practice]"; *see also* Compl. ¶¶ 87-88. SpaceX contends that it is entitled to a trial by jury—but only in the hypothetical event the Board awards *this* category of pecuniary relief.

Accordingly, unlike a party who challenges "subjection to [agency] process regardless of its outcome, or of other decisions made within it," *Axon*, 598 U.S. at 192, SpaceX's claimed Seventh Amendment injury is *entirely* dependent on the proceedings' outcome and the (remedial) "decisions made within it." If the Board concludes its proceedings and finds that SpaceX did not commit unfair labor practices, SpaceX concedes that it suffers no injury. The same is true if the Board finds that SpaceX has committed unfair labor practices, but orders only reinstatement and backpay. Only if the Board establishes liability and concludes that pecuniary relief *other than* reinstatement or backpay is appropriate, does SpaceX's asserted Seventh Amendment injury occur.

This garden-variety challenge to the appropriateness of certain forms of relief can easily be remedied by a reviewing court of appeals if it were ever to become real.[3] Following the

---

[3] The fact that SpaceX's challenge is constitutional is irrelevant. Litigants are routinely required to route constitutional claims through statutory mechanisms. *See, e.g., Elgin v. Dep't of Treasury*, 567 U.S. 1, 13 (2012) (finding that statutory review schemes are presumptively exclusive, "even for employees who bring constitutional challenges to federal statutes").

-12-

established statutory review procedure, a court would simply decline to enforce any portion of the Board's remedial order that it found to offend the Seventh Amendment.

Accordingly, the first *Thunder Basin* factor must be weighed decisively against district court jurisdiction.

### b.    The Seventh Amendment Claim is Not "Wholly Collateral" to the Board's Review Procedures

For much the same reasons, SpaceX's Seventh Amendment challenge is not "wholly collateral" to the standard review procedures provided for the NLRA. A "collateral" claim arises when a litigant "object[s] to [an agency's] power generally, not to anything particular about how that power was wielded" in a particular enforcement action or any particular "actions taken in the agency proceedings." *Axon*, 598 U.S. at 192-93. Where, instead, a claim alleges "agency misdeeds *during* the enforcement proceedings themselves," courts routinely find that standard statutory review mechanisms apply. *Bank of Louisiana v. FDIC*, 919 F.3d 916, 928 (5th Cir. 2019).  This factor, too, counsels against district court jurisdiction.

### c.    The Seventh Amendment Claim is Not Outside the NLRB's Expertise

Lastly, the question of the appropriateness of certain remedies in an unfair labor practice proceeding is peculiarly within the NLRB's expertise. Congress granted the Board flexible and discretionary authority "to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of [the NLRA]." 29 U.S.C. § 160(c). The Supreme Court has emphasized that, rather than defining "the whole gamut of remedies to effectuate these policies in an infinite variety of specific situations," Congress intended to "leave[] the adaptation of means to end to the empiric process of administration . . . committed to the Board, subject to limited judicial review." *Phelps Dodge Corp v. NLRB*, 313 U.S. 177, 194

(1941); *see also NLRB v. Seven-Up Bottling Co.*, 344 U.S. 344, 346 (1953) ("In fashioning

remedies to undo the effects of violations of the Act, the Board must draw on enlightenment

gained from experience.").

Like any agency, the Board must take care to ensure that its remedial authority does not

transgress constitutional boundaries. Over nearly a century of case-by-case adjudication, Board

remedial awards have scrupulously adhered to the boundaries of the Seventh Amendment. The

agency's expertise in these matters points decisively in favor of permitting the Board to tackle

the remedial issues raised by SpaceX in the first instance.

### 2.    SpaceX's Seventh Amendment Challenge is Meritless

SpaceX relies primarily on the Fifth Circuit's *Jarkesy* decision to argue that certain of the

potential remedies the NLRB may order violate the Seventh Amendment's right to a jury trial.[4]

Mot. for PI 11-14. But the Supreme Court directly rejected just such a Seventh Amendment

challenge to the NLRB's authority to issue remedial awards in its landmark decision in *NLRB v.*

*Jones & Laughlin Steel Co.*, 301 U.S. 1 (1937).

In *Jones & Laughlin*, the employer challenged the award of backpay, claiming it was the

equivalent of money damages and so required a jury trial. 301 U.S. at 48. The Court explained

that the Seventh Amendment "preserves the right which existed under the common law when the

amendment was adopted." *Id*. "Thus it has no application to cases where recovery of money

damages is an incident to equitable relief even though damages might have been recovered in an

---

[4] SpaceX's complaint that it is entitled to a jury trial is, at the very least, ironic. SpaceX required
the Charging Parties to sign employment agreements waiving their Seventh Amendment rights to
a jury trial and consenting to arbitration on all claims arising out of their employment. *See,*
*e.g.,* ECF No. 20, Decl. of Scott Beck, ¶ 16.  Presumably, if the Charging Parties were able to
bring ULP-type claims in federal or state court, SpaceX would invoke this provision and the case
would be decided by an arbitrator, without a jury.

action at law. It does not apply where the proceeding is not in the nature of a suit at common law." *Id*. (cleaned up).

The Court then stated that "[t]he instant case is not a suit at common law or in the nature of such a suit. The proceeding is one unknown to the common law. It is a statutory proceeding. Reinstatement of the employee and payment for time lost are requirements imposed for violation of the statute and are remedies appropriate to its enforcement." *Id*. at 48-49. As such, "[t]he contention under the Seventh Amendment is without merit." *Id*. at 49.

The Fifth Circuit's decision in *Jarkesy* is entirely consistent with *Jones & Laughlin*. That decision defines the analysis as follows:

> First, a court must determine whether an action's claims arise 'at common law' under the Seventh Amendment.  Second, if the action involves common-law claims, a court must determine whether the Supreme Court's public-rights cases nonetheless permit Congress to assign it to agency adjudication without a jury trial.

34 F.4th at 453 (cleaned up). *Jarkesy* further explains that

> the relevant considerations include: (1) whether Congress created a new cause of action, and remedies therefor, unknown to the common law, because traditional rights and remedies were inadequate to cope with a manifest public problem; and (2) whether jury trials would go far to dismantle the statutory scheme or impede swift resolution of the claims created by statute.

*Id*. (cleaned up). The *Jarkesy* court concluded that "The rights that the SEC sought to vindicate in its enforcement action here arise 'at common law' under the Seventh Amendment." *Id*.

By contrast, *Jones & Laughlin* makes clear that claims under the NLRA are not claims that arise under common law. Make-whole remedies for interference with protected concerted activities were unknown to the common law. Even where they may "somewhat resemble compensation for private injury," the Supreme Court has emphasized that they are "remedies created by statute . . . designed to aid in achieving the elimination of industrial conflict," which need not necessarily "observe conventional common law or chancery principles" or even always

-15-

reflect with certainty "the amount of damages actually sustained." *Virginia Elec. & Power Co. v. NLRB*, 319 U.S. 533, 543 (1943). Instead, they reflect the NLRB's remedial authority to take "such affirmative action . . . as will effectuate the policies" of the NLRA. 29 U.S.C. § 160(c).[5]

But even if one were to credit SpaceX's argument that so-called *Thryv*-like remedies—the only remedies it contends are legal remedies, *see* Compl. ¶¶ 17-20—are akin to common law remedies, *see* Mot. for PI 11-14, SpaceX's Seventh Amendment argument fails under the second prong of the analysis. The NLRA created public rights. *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 362 (1940). Moreover, it's obvious that a jury requirement would go far to dismantle the statutory scheme, as the statutory scheme provides no option for a jury trial. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 n. 4 (1989) (describing what amounts to the Fifth Circuit's second prong as a "distinct inquiry into whether Congress has permissibly entrusted the resolution of certain disputes to an administrative agency or specialized court of equity, and whether jury trials would impair the functioning of the legislative scheme"); *also Bell*, 2023 WL 8885128, at *5-6 (denying motion for preliminary injunction based on Seventh Amendment claim against civil penalties sought for discrimination against citizenship status because "Congress may create new statutory duties for civil penalties to enforce 'public rights' that are not subject to the Seventh Amendment").

Once again, this stands in marked contrast to the SEC's securities fraud enforcement scheme at issue in *Jarkesy*. There, the Fifth Circuit observed that "the statutory scheme itself allows the SEC to bring enforcement actions either in-house or in Article III courts, where the

---

[5] This differs markedly from the securities fraud claims at issue in *Jarkesy*. As that court noted, "common-law courts have heard fraud actions for centuries, even actions brought by the government," and "the Supreme Court has often looked to common-law principles to interpret fraud and misrepresentation under securities statutes." 34 F.4th at 455.

jury-trial right would apply," and noted that "Congress could have purported to assign such proceedings *solely* to administrative tribunals, but it did not." 34 F.4th at 455-56. Not only *could* such actions be brought before courts and heard by juries—they have been in practice. Accordingly, the Fifth Circuit could plausibly determine that jury trials would not "go far to dismantle the statutory scheme" or "impede swift resolution" of statutory claims (which again, mirrored common-law fraud claims long heard by juries). *Id.* (citation omitted).

*Jones & Laughlin* is controlling here and SpaceX is not likely to prevail on the merits.

**D.    Count IV: SpaceX is Not Likely to Prevail on the Mixed Functions Claim**

In Count IV of its Complaint, SpaceX alleges a violation of the separation of powers and a deprivation of due process because the Board purportedly has legislative, executive and judicial functions. The alleged executive function is the approval of the initiation of proceedings under section 10(j). That power is expressly vested in the Board by the Act. *See* 29 U.S.C. § 160(j).  The alleged legislative function is the policy-making inherent in adjudication:  "the NLRB adjudicative process often involves significant quasi-legislative authority under which the NLRB Members can decide to adopt new interpretations of the NLRA's requirements." Compl. ¶ 124. That is the sole allegation concerning the Board's legislative function and SpaceX's Motion does not cite any authority or address the legislative function allegation in any way.

The due process claim based on the mixing of prosecutorial and adjudicatory authority has been specifically rejected by four courts of appeals. *See Flamingo Hilton-Laughlin v. NLRB.*, 148 F.3d 1166, 1174 (D.C. Cir. 1998); *Kessel Food Mkts., Inc. v. NLRB*, 868 F.2d 881, 887-88 (6th Cir. 1989); *NLRB v. Sanford Home for Adults*, 669 F.2d 35, 37 (2d Cir. 1981); *Eisenberg v. Holland Rantos Co.*, 583 F.2d 100, 104 n. 8 (3d Cir. 1978). And the courts of appeals have specifically rejected the challenge brought by SpaceX because it is inconsistent with the

-17-

Supreme Court's decision in *Withrow v. Larkin*, 421 U.S. 35 (1975). *See Flamingo*, 148 F.3d at 1174; *Kessel*, 868 F.2d at 888 (*Withrow* "dispositive").

In *Withrow*, a unanimous Court held that vesting a state medical board with authority both to investigate via a hearing and to suspend a doctor's medical license was consistent with due process. The Supreme Court reasoned:

> The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.
>
> Very similarly claims have been squarely rejected in prior decisions of this Court.

421 U.S. at 47. The Court made clear that there is no "broad rule that the members of an administrative agency may not investigate the facts, institute proceedings, and then make the necessary adjudications." *Id*. at 53. After all, the Court further explained:

> Judges repeatedly issue arrest warrants on the basis that there is probable cause to believe that a crime has been committed and that the person named in the warrant has committed it. Judges also preside at preliminary hearings where they must decide whether the evidence is sufficient to hold a defendant for trial. Neither of these pretrial involvements has been thought to raise any constitutional barrier against the judge's presiding over the criminal trial and, if the trial is without a jury, against making the necessary determination of guilt or innocence. Nor has it been thought that a judge is disqualified from presiding over injunction proceedings because he has initially assessed the facts in issuing or denying a temporary restraining order or a preliminary injunction.

*Id*. at 56.

Finally, in language that is directly on point, the Court stated:

> It is also very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings. This mode of procedure does not . . . violate due process of law.

-18-

*Id*. at 56. SpaceX is not likely to succeed on the merits of any of its claims.

### III.     The Balance of Hardships Favors the NLRB and the Charging Parties

SpaceX makes only a cursory effort to argue that the balance of hardships tips in its direction. But that balance tips sharply in favor of the NLRB and the eight fired employees whose rights to engage in concerted, protected activity it is seeking to vindicate.

SpaceX is a company valued in the hundreds of billions of dollars which has been accused of firing employees who complained about sexual harassment in the workplace, in violation of congressionally-mandated public policy. While the Charging Parties are highly skilled, they are also highly-specialized employees who have a commitment to working in space exploration, where employment opportunities are extremely limited.[6] They have suffered financially as a result of the company's violations of public policy, and seek reinstatement to their prior positions. Every day that SpaceX successfully delays ALJ and Board proceedings is a day in which justice is denied them and in which the overall public policy in protecting workers' concerted activity is undermined.

Neither is SpaceX's "reputational harm" argument availing. It is wholly unsupported: the most SpaceX can do is speculate that the NLRB action is "likely to hurt SpaceX's reputation (Mot. for PI at 20). It also fails also to contend with history that proves government contractors can respond to disputes under federal labor laws *and* attract a workforce with the kind of "vigilance, discipline, and technical excellence" needed to charter new frontiers. Mot. for PI at 4-5, 20. Boeing is one such example. It has maintained a collective bargaining relationship with the International Association of Machinists and Aerospace Workers ("IAM") since 1936. Despite

---

[6] *See, e.g.,* ECF No. 19, Moline Decl. ¶ 4 ECF No. 20, Beck Decl. ¶ 3 (describing job titles).

being the subject of numerous charges before the NLRB, Boeing still built the first stage of the Saturn V rockets that sent NASA astronauts to the Moon in 1969.[7]

IV.    **The Public Interests Favors the NLRB and the Charging Parties**

Finally, the public interest strongly favors the NLRB. If this Court issues a preliminary injunction in this case, the enforcement of federal labor law will largely grind to a halt. Any party, employer or union, charged with an unfair labor practice that does business in Texas will come to this court seeking a preliminary injunction to halt the Board proceedings.

Congress adopted the NLRA to ensure industrial peace and protect the rights of both employers and employees. The preamble to the Act states that unfair practices by both unions and employees have the effect of "burdening or obstructing commerce by preventing the free flow of goods in such commerce through strikes and other forms of industrial unrest or through concerted activities which impair the interest of the public in the free flow of such commerce." Congress vested the NLRB with authority to prevent such unfair practices in order to protect "the interest of the public." It is therefore clearly in the public interest to permit the Board to do its job in this case.

## **CONCLUSION**

For the above-stated reasons, the motion for a preliminary injunction should be denied.

---

[7] *See*, *e.g.*, *Boeing Airplane Co. v. NLRB*, 217 F.2d 369, 371 (9th Cir. 1954); *Boeing Co. v. Int'l Ass'n of Machinists & Aerospace Workers*, 504 F.2d 307, 309 (5th Cir. 1974); *History of the IAM*, https://www.goiam.org/about/history-of-the-iam/ (visited Jan. 22, 2024); *Boeing Marks 30th Anniversary of Apollo 11*, https://boeing.mediaroom.com/1999-07-14-Boeing-Marks-30th-Anniversary-of-Apollo-11-Built-Major-Components-for-Lunar-Mission (visited Jan 23, 2024).

Dated: February 5, 2024          Respectfully submitted,
                                 /s/ Anne B. Shaver
                                 _____

                                 Anne B. Shaver (admitted *pro hac vice*)
                                 LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                 275 Battery Street, 29th Floor
                                 San Francisco, CA 94111-3339
                                 Phone: (415) 956-1000
                                 Fax: (415) 956-1008
                                 ashaver@lchb.com


                                 Laurie M. Burgess
                                 BURGESS LAW OFFICES, P.C.
                                 498 Utah Street
                                 San Francisco, CA 94110
                                 Phone: (312) 320-1718
                                 lburgess@burgess-laborlaw.com

                                 *Counsel for Charging Parties*

-21-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 5, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

*/s/ Anne B. Shaver*
Anne B. Shaver

2937196.1