**UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

SPACE EXPLORATION TECHNOLOGIES CORP.,

Plaintiff,

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,

Defendants.

Case No. 24-cv-0001

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1406(a) AND § 1404(a)**

## TABLE OF CONTENTS

Introduction .......... ii

Argument .......... 1

1. This Court should transfer the case before addressing the merits. .......... 1

2. Anticipatory forum-shopped suits, such as SpaceX's action here, can and should be transferred under 28 U.S.C. §§ 1406(a) or 1404(a). .......... 2

a. This case is not about anything occurring in Texas; it is about enjoining agency action in California. .......... 3

b. Despite its claims to the contrary, SpaceX's choice of venue is improper because it has filed an anticipatory suit to engage in forum-shopping. .......... 5

3. SpaceX's basis for asserting venue in the Southern District of Texas is vastly overshadowed by the events that transpired in California, making venue improper and justifying transfer under 28 U.S.C. § 1406(a). .......... 9

4. Even assuming venue was not improper under 28 U.S.C. § 1406(a), the Board has shown the requisite good cause in favor of transfer to the Central District of California under 28 U.S.C. § 1404(a). .......... 15

Conclusion .......... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aftab v. Gonzalez*,
597 F. Supp. 2d 76 (D.D.C. 2009) .......... 1

*Andrade v. Chojnacki*,
934 F. Supp. 817 (S.D. Tex. 1996) .......... 9

*Care One, LLC v. NLRB*,
No. 2:23-cv-03221, 2023 WL 4156859 (D.N.J. June 23, 2023) .......... 1, 14, 18

*Christopher A.O. v. Kijakazi*,
No. SACV 20-01356-AS, 2022 WL 1071511 (C.D. Cal. Mar. 11, 2022) .......... 7

*Corp. of Am. Holdings v. NLRB*,
942 F. Supp. 2d 1 (D.D.C. 2013) .......... 1, 18

*Curtis v. BP Am., Inc.*,
808 F. Supp. 2d 976 (S.D. Tex. 2011) .......... 1

*December 12, Inc.*,
273 NLRB 1 (1984) .......... 11

*Decker Coal Co. v. Pehringer*,
8 F.4th 1123 (9th Cir. 2021) .......... 8

*Defense Distributed v. Bruck*,
30 F.4th 414 (5th Cir. 2022) .......... 2, 15

*Distributed v. Platkin*,
55 F.4th 486 (5th Cir. 2022) .......... 2

*Evergreen Media Holdings, LLC v. Safran Co.*,
68 F. Supp. 3d 664 (S.D. Tex. 2014) .......... 18

*Experian Info. Sols., Inc. v. FTC*,
No. CIV. 3:00-CV-1631-H, 2001 WL 257834 (N.D. Tex. Mar. 8, 2001) .......... 9

*Frank's Tong Service, Inc. v. Grey Wolf Drilling Co., L.P.*,
No. H-07-637, 2007 WL 5186798 (S.D. Tex. Sept. 11, 2007) .......... 3, 7

*Hendricks v. Bank of Am., NA*,
408 F.3d 1127 (9th Cir. 2005) .......... 2

*In re Horseshoe Entm't*,
337 F.3d 429 (5th Cir. 2003) .......... 17

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) .......... 7, 15, 19

*Jarkesy v. SEC*,
34 F.4th 446 (5th Cir. 2022) .......... 8

*Lake City Stevedores, Inc. v. Steamship Lumber Queen*,
343 F. Supp. 933 (S.D. Tex. 1972) .......... 19

*Lamont v. Haig*,
590 F.2d 1124 (D.C.Cir.1978) .......... 9

*Long v. Grafton Exec. Search, LLC*,
263 F. Supp. 2d 1085 (N.D. Tex. 2003) .......... 13

*Maria C. v. Kijakazi*,
No. CV 21-3221-AS, 2022 WL 17216581 (C.D. Cal. June 13, 2022) .................................... 7
*Maysaroh Am. Arab Commc'ns & Translation Ctr., LLC*,
51 F. Supp. 3d 88 (D.D.C. 2014) ............................................................................... 9, 14
*McCuin v. Tex. Power & Light Co.*,
714 F.2d 1255 (5th Cir. 1983) ........................................................................................ 7
*Mill Creek Press, Inc. v. Thomas Kinkade Co.*,
No. 3:04-CV-1213-G, 2004 WL 2607987 (N.D. Tex. Nov. 16, 2004) ................................ 3, 7
*Mission Ins. Co. v. Puritan Fashions Corp.*,
706 F.2d 599 (5th Cir.1983) ............................................................................... 2, 3, 7, 8
*Mizell v. Prism Comput. Corp.*,
27 F. Supp. 2d 708 (S.D. Miss. 1998) ........................................................... 15, 17, 19
*909 Corp. v. Vill. of Bolingbrook Police Pension Fund*,
741 F. Supp. 1290 (S.D. Tex. 1990) ............................................................................ 3, 7
*Nken v. Holder*,
556 U.S. 418 (2009) ...................................................................................................... 16
*Onyeneho v. Allstate Ins. Co.*,
466 F. Supp. 2d 1 (D.D.C. 2006) ................................................................................. 7, 9
*Pac. Mar. Ass'n v. NLRB*,
905 F. Supp. 2d 55 (D.D.C. 2012) ............................................................................. 1, 18
*Paragon Indus., L.P. v. Denver Glass Mach., Inc.*,
No. CIV.A. 3-07CV2183-M, 2008 WL 3890495 (N.D. Tex. Aug. 22, 2008) ............... 2, 3, 7, 8
*Reyes De Perez v. Cont. Freighters, Inc.*,
No. 5:06-cv-02, 2006 WL 3053400 (S.D. Tex. Oct. 26, 2006) ........................................ 16
*Sangha v. Navig8 ShipManagement Priv. Ltd.*,
882 F.3d 96 (5th Cir. 2018) ............................................................................................ 2
*Schmid Labs., Inc. v. Hartford Accident & Indem. Co.*,
654 F. Supp. 734 (D.D.C. 1986) ..................................................................................... 7
*Seariver Mar. Fin. Holdings, Inc. v. Pena*,
952 F. Supp. 455 (S.D. Tex. 1996) ............................................................................... 10
*Sherwin-Williams Co. v. Holmes Cnty.*,
343 F.3d 383 (5th Cir. 2003) ........................................................................................... 8
*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
549 U.S. 422 (2007) ........................................................................................................ 1
*Sioux City & New Orleans Barge Lines, Inc. v. Miss. Towing Corp.*,
221 F. Supp 737 (S.D. Tex. 1963) ........................................................................... 15, 19
*Space Exploration Technologies Corp. v. Bell.*,
2023 WL 8885128 (S.D. Tex. 2023) ............................................................................... 5
*Spiegelberg v. Collegiate Licensing Co.*,
402 F. Supp. 2d 786 (S.D. Tex. 2005) ........................................................... 16, 17, 18
*State St. Cap. Corp. v. Dente*,
855 F. Supp. 192 (S.D. Tex. 1994) ............................................................................... 16
*Texas v. United States*,
95 F. Supp. 3d 965 (N.D. Tex. 2015) ....................................................................... 13, 14
*Total Gas & Power N. Am., Inc. v. FERC*,
2016 WL 3855865 (S.D. Tex. July 15, 2016) ................................................................. 9

*Total Gas & Power N. Am., Inc. v. FERC*,
859 F.3d 325 (5th Cir. 2017) ........ 9

*Turner & Newall, PLC v. Canadian Universal Ins. Co.*,
652 F. Supp. 1308 (D.D.C. 1987) ........ 7, 19

*Uffner v. La Reunion Francaise, SA*,
244 F.3d 38 (1st Cir. 2001) ........ 13

*Zoltar Satellite Systs., Inc. v. LG Elecs. Mobile Commc'ns Co.*,
402 F. Supp. 2d 731 (E.D. Tex. 2005) ........ 15, 19

**Statutes**

28 U.S.C. § 1391 ........ 7

28 U.S.C. § 1391(e)(1)(C) ........ 5

28 U.S.C. § 1391(e)(1)(D) ........ 5

28 U.S.C. § 1391(e)(2) ........ 5

28 U.S.C. § 1404(a) ........ passim

28 U.S.C. § 1406(a) ........ passim

29 U.S.C. §§ 107, 113 ........ 16

**Rules**

Fed. R. Civ. P. 45(c) ........ 17

**Other Authorities**

15 Fed. Prac. & Proc. Juris. § 3854 ........ 19

## INTRODUCTION

The California office of a California company fires eight employees, almost all of them based in California. The California regional office of a federal agency reviews the matter, finds merit to charges alleging that the firings were unlawful, and issues a complaint setting the case for a California hearing. According to SpaceX, a challenge to this proceeding may be heard in Texas. This not only sounds wrong, it *is* wrong. A close analysis of the applicable factual and legal considerations confirms that SpaceX's venue arguments are meritless.

SpaceX should not be permitted to use this Texas forum to halt proceedings with virtually no connection to Texas. SpaceX's contrary arguments establish, at most, a nexus that is insubstantial in relation to the totality of events at issue here. This is dispositive under 28 U.S.C. §1406(a), as is SpaceX's effort to forum-shop this anticipatory suit—reason enough to grant Defendants' motion and transfer the matter to the Central District of California. But even if venue is proper under 28 U.S.C. §1406(a), this Court should still transfer under 28 U.S.C. §1404(a), as Defendants have shown the requisite good cause, particularly in the interest of justice.

## ARGUMENT

### 1. This Court should transfer the case before addressing the merits.

"Adjudicative efficiency favors resolving the venue issue before addressing" any other issue.[1] A case may be transferred before determining other threshold or merits issues,[2] and this

[1] *Aftab v. Gonzalez,* 597 F. Supp. 2d 76, 79 (D.D.C. 2009); *see also* Doc. 29 at 9 n.49.

[2] *See, e.g., Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007); *Curtis v. BP Am., Inc.*, 808 F. Supp. 2d 976, 983 (S.D. Tex. 2011); *Care One, LLC v. NLRB,* No. 2:23-cv-03221, 2023 WL 4156859, at *6 (D.N.J. June 23, 2023); *Lab. Corp. of Am. Holdings v. NLRB,* 942 F. Supp. 2d 1 (D.D.C. 2013); *Pac. Mar. Ass'n v. NLRB,* 905 F. Supp. 2d 55, 58-59 (D.D.C. 2012) (transferring to the District of Oregon); and cases cited therein.

Court has "considerable leeway" in deciding this order of operations issue.[3] Because a determination of proper venue is "a logical predicate to" granting preliminary relief, this Court should decide Defendants' Motion to Transfer as the first order of business.[4]

In response, SpaceX claims, somehow, that ruling on the preliminary injunction motion before or together with the motion to transfer would not create any procedural complications.[5] But it then concedes that should the Court resolve SpaceX's motion for a preliminary injunction, and either simultaneously or subsequently grant Defendants' transfer motion, parties could appeal the injunction ruling in the Fifth Circuit on a case that has been transferred to the Central District of California.[6] That is precisely the headache that ruling *first* on the transfer would avoid. This Court should transfer the case and leave the Central District of California, which is where the controversy arose, to consider the complex constitutional claims raised by SpaceX.[7]

**2. Anticipatory forum-shopped suits, such as SpaceX's action here, can and should be transferred under 28 U.S.C. §§ 1406(a) or 1404(a).**

As previously noted,[8] the Fifth Circuit and various Texas courts, including this Court, have long recognized that a plaintiff's choice of venue should be accorded little to no weight "when a party files a declaratory judgment action, in anticipation of suit by its adversary."[9]

---

[3] *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 100 (5th Cir. 2018) (cleaned up).

[4] *Hendricks v. Bank of Am., NA*, 408 F.3d 1127, 1134 (9th Cir. 2005) (cleaned up).

[5] Doc. 64 at 19.

[6] *Id*. at 19-20.

[7] *Defense Distributed v. Bruck*, 30 F.4th 414, 421 (5th Cir. 2022), and *Def. Distributed v. Platkin*, 55 F.4th 486, 489 (5th Cir. 2022), Fifth Circuit mandamus cases, do not aid SpaceX's cause. Those cases, where claims were severed and transferred to another court which refused to give back jurisdiction, show the need for transfer motions to be decided as early as possible.

[8] Doc. 29 at 10-11.

[9] *Paragon Indus., L.P. v. Denver Glass Mach., Inc.*, No. CIV.A. 3-07CV2183-M, 2008 WL 3890495, at *4 (N.D. Tex. Aug. 22, 2008); *see also Mission Ins. Co. v. Puritan Fashions Corp.,*

"Anticipatory suits are disfavored because they are an aspect of forum-shopping."[10] They "deprive a potential plaintiff of his choice of forum, [and are] also one of the compelling circumstances courts cite when declining to apply the first-filed rule."[11] That is because such anticipatory suits "subvert[] the real plaintiff's advantage in choosing the forum" and create "disincentives to responsible litigation by rewarding the winner of a race to the courthouse."[12]

Here, SpaceX's suit is an "action for declaratory and injunctive relief."[13] It is aimed at interfering with litigation by the real plaintiffs: the General Counsel of the National Labor Relations Board (NLRB), who alleges that SpaceX unlawfully terminated eight employees for their involvement in drafting and distributing an Open Letter, and the Board itself, should it authorize action in the Central District of California under Section 10(j). The General Counsel, not SpaceX, is the party seeking to alter the present status quo, and hence the real plaintiff.

***a. This case is not about anything occurring in Texas; it is about enjoining agency action in California.***

This case stems from eight ULP charges filed with the NLRB's Region 31, based in Los Angeles, California.[14] The charges were filed on behalf of eight employees who were terminated

---

706 F.2d 599, 602 n.3 (5th Cir.1983); *Frank's Tong Service, Inc. v. Grey Wolf Drilling Co., L.P.*, No. H-07-637, 2007 WL 5186798, *4 (S.D. Tex. Sept. 11, 2007).

[10] *Mission Ins. Co.,* 706 F.2d at 602 n.3.

[11] *Frank's Tong Service, Inc.*, 2007 WL 5186798, *4.

[12] *Paragon Indus.*, 2008 WL 3890495, at *4 (discussing *Mill Creek Press, Inc. v. Thomas Kinkade Co.,* No. 3:04-CV-1213-G, 2004 WL 2607987, *7 (N.D. Tex. Nov. 16, 2004)); *see also 909 Corp. v. Vill. of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1292 (S.D. Tex. 1990) ("The Court cannot allow a party to secure a more favorable forum by filing an action for declaratory judgment when it has notice that the other party intends to file suit in a different forum.").

[13] Doc. 1 ("Compl.") at 1.

[14] Doc. 29 at 3 n.16; Doc. 18 ¶¶ 3-4; Doc. 74 at 6 (citing Doc. 20 ¶¶ 13-14; Doc. 22 ¶¶ 12-13; Doc. 21 ¶¶ 12-13; Doc. 19 ¶¶ 14-15 & Doc. 19-1).

by SpaceX for their involvement in drafting and distributing an Open Letter ("Terminated Employees").[15] Seven of the Terminated Employees lived in California and all eight reported to or were supervised by managers at the SpaceX facility in Hawthorne, California (the "Hawthorne Facility").[16] The Open Letter was sent from and drafted in California after a series of meetings at the Hawthorne Facility and nearby locations.[17] SpaceX's principal place of business is the Hawthorne Facility, where SpaceX is also headquartered.[18]

Following a year-long investigation by Region 31, the Region advised SpaceX that the Agency was considering Section 10(j) injunction proceedings, which would be filed in the Central District of California.[19] The Region also found merit to the charges and issued an administrative complaint ("ULP Complaint"), on behalf of the General Counsel.[20] That complaint alleges a course of unlawful conduct by SpaceX supervisors and agents taking place nearly entirely at the Hawthorne Facility.[21] The ULP Complaint contains no reference to Texas; it includes a notice setting a hearing on March 5, 2024 in Los Angeles.[22]

---

[15] Doc. 29 at 3 n.16; Doc. 74 at 5 (citing Doc. 20 ¶ 9; Doc. 22 ¶ 8; Doc. 21, ¶ 8; Doc. 19 ¶ 10).

[16] Doc. 29 at 3 n.16 (noting seven of eight Terminated Employees lived in California and worked at the Hawthorne Facility; the eighth resided in Washington but was managed from Hawthorne.).

[17] Doc. 74 at 5 (citing Doc. 20 ¶ 9; Doc. 22 ¶ 8; Doc. 21, ¶ 8; Doc. 19 ¶ 10); Doc. 21 ¶ 10.

[18] Doc. 29 at 3-4 n.17.

[19] *Id*. at 4 n.20.

[20] *Id*. at 4 n.21.

[21] *Id*. at 4-5 n.22-25; *see also* Doc. 31 (sealed exhibit to Doc. 29, "ULP Compl.") ¶¶ 6, 8-10, 12-13, 19-20, 24-28 (concerning conduct alleged to have occurred at the Hawthorne Facility over several days); ULP Compl. ¶¶ 21-23 (regarding conduct affecting one employee that was alleged to have occurred in Redmond, Washington on a single day); Doc. 73 at 5-6 (alleging that various named SpaceX supervisors and agents attended meetings with Terminated Employees in Hawthorne as part of a retaliatory campaign leading to their termination).

[22] Doc. 29 at 5 n.26, n.27.

None of the Terminated Employees "have any relationship with the State of Texas."[23] None of the named Defendants reside there.[24] Indeed, not even SpaceX resides in Texas.[25] It is a resident of California.[26] And there is no question that SpaceX could have brought the instant action in the Central District of California, where it resides, under 28 U.S.C. § 1391(e)(1)(C), and where the overwhelming majority of operative events giving rise to SpaceX's suit occurred, under 28 U.S.C. § 1391(e)(1)(D).[27] SpaceX does not contest any of these points except to claim venue is also proper in Texas. But, as will be shown below in Section 3, SpaceX's attempt to establish a basis for venue in the Southern District of Texas is not only insubstantial, it is also eclipsed by the overwhelming weight of events arising out of the Central District of California.

***b. Despite its claims to the contrary, SpaceX's choice of venue is improper because it has filed an anticipatory suit to engage in forum-shopping.***

SpaceX attempts to mask its forum-shopping by pointing to *Space Exploration Technologies Corp. v. Bell*.[28] SpaceX claims that *Bell* involved a very similar constitutional challenge by SpaceX with similar venue facts.[29] But venue was not litigated in *Bell*, thus the district court had no occasion to opine on whether venue was proper. Moreover, *Bell* involved

[23] *Id*. at 3 n.16 (quoting Doc. 18 ¶12).

[24] Doc. 29 at 6, and cases authorities therein.

[25] 28 U.S.C. § 1391(e)(2) (a corporate plaintiff resides "only in the judicial district in which it maintains its principal place of business.").

[26] With several of the Terminated Employees alleging that SpaceX forced them to sign employment agreements requiring them to adjudicate all employment related disputes in California, SpaceX apparently also has a strong preference for litigation in California. Doc. 73 at 11 (citing Doc. 20 ¶¶ 16-17, Doc. 22 ¶¶ 15-16, Doc. 21 ¶ 16; Doc. 19 ¶¶ 17-18).

[27] Most importantly, the Central District of California is where Region 31's year-long investigation was based, where an action for Section 10(j) relief would be filed, and where the hearing that SpaceX seeks to enjoin is scheduled to take place.

[28] No. 1:23-cv-00137, 2023 WL 8885128 (S.D. Tex. 2023) (Olvera, J.).

[29] Doc. 64 at 10.

materially different venue facts. In *Bell*, the administrative complaint expressly challenged SpaceX's "nationwide recruitment efforts."[30] That complaint also expressly alleged that "SpaceX discriminated against asylees and refugees throughout its hiring process, including during recruiting, screening, and selection, in violation of the Immigration and Nationality Act."[31] Importantly, the administrative complaint did not identify any individual applicant by name, contained few geographic markers indicating a focal point of activity, and did not specify a location for an administrative hearing.[32]

In stark contrast, the NLRB's administrative case is principally focused on SpaceX's termination of eight employees from SpaceX's headquarters in California. The ULP Complaint includes numerous allegations of SpaceX agents taking specific actions in California against those eight employees because of the Open Letter drafted and sent from California. Meanwhile, SpaceX's Texas suit seeks to enjoin the Board's Region 31 in Los Angeles from proceeding with a hearing scheduled to take place there and to enjoin the Board from filing a petition before the Central District of California under Section 10(j) of the National Labor Relations Act. *Bell* is thus of little value in guiding this Court's venue analysis.

SpaceX also cites to *Bell* to claim that it chose this forum because of its familiarity with the complex constitutional issues raised in both cases.[33] But it's far from clear that this Court has any advantage in experience; the Central District of California has addressed numerous

---

[30] OCAHO Compl. ¶ 36, *Space Expl. Techs. Corp. v. Bell*, No. 1:23-cv-00137 (S.D. Tex. Sept. 26, 2023), ECF No. 11-2.

[31] *Id*. ¶ 1; *see also id.* ¶ 13.

[32] The administrative complaint in *Bell* never identified any alleged discriminatee by name. It did not name anyone alleged to have engaged in misconduct. And despite many specific allegations of misconduct, OCAHO Compl. ¶¶ 30-33, 39-53, it barely had any geographic markers. It referred to California thrice, Georgia twice, and Delaware once. *Id.* ¶¶ 7, 12, 34, 41, 47.

[33] Doc. 64 at 10.

removability-based challenges to agency action.[34] Those challenges are not on all fours here, but neither is *Bell*, where SpaceX attacked a different statutory scheme establishing a very different adjudicatory structure and providing quite different remedial powers. Moreover, none of the counts in *Bell* alleged—as SpaceX does here—that unlawful bias necessarily results if agency adjudicators authorize litigation seeking temporary injunctive relief. Thus, the experience this Court has from *Bell* is of limited benefit.

SpaceX's invocation of *McCuin v. Texas Power & Light Co.* is also inapt.[35] There, the Fifth Circuit noted that a plaintiff's motive in choosing a forum "is ordinarily of no moment."[36] However, the Fifth Circuit has recognized that courts have an important role to play in preventing forum-shopping, especially in anticipatory suits such as this.[37] SpaceX quibbles with Defendants' citation to out-of-circuit cases.[38] But they comport with numerous Texas and Fifth Circuit decisions warning courts against entertaining forum-shopped suits.[39]

---

[34] *See e.g. Maria C. v. Kijakazi*, No. CV 21-3221-AS, 2022 WL 17216581, at *3 (C.D. Cal. June 13, 2022); *Christopher A.O. v. Kijakazi*, No. SACV 20-01356-AS, 2022 WL 1071511, at *8 (C.D. Cal. Mar. 11, 2022).

[35] Doc. 64 at 17-18 (citing *McCuin v. Tex. Power & Light Co.*, 714 F.2d 1255, 1261 (5th Cir. 1983)).

[36] *McCuin*, 714 F.2d at 1261-62.

[37] *Mission Ins.,* 706 F.2d at 602 n.3; *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) ("[C]ourts should prevent plaintiffs from abusing their [choice of venue] privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a).").

[38] Doc. 64 at 18 (citing Doc. 29 at 19 n.92, which in turn cites to *Onyeneho v. Allstate Ins. Co.,* 466 F. Supp. 2d 1, 5 (D.D.C. 2006), *Turner & Newall, PLC v. Canadian Universal Ins. Co.,* 652 F. Supp. 1308, 1312 (D.D.C. 1987), and *Schmid Labs., Inc. v. Hartford Accident & Indem. Co.,* 654 F. Supp. 734, 736 (D.D.C. 1986).

[39] *Mission Ins.,* 706 F.2d at 602 n.3; *In re Volkswagen*, 545 F.3d at 313; *Paragon Indus.*, 2008 WL 3890495, at *4; *Frank's Tong Serv.*, 2007 WL 5186798, at *4; *Mill Creek Press.,* 2004 WL 2607987, at *7; *909 Corp.*, 741 F. Supp. at 1292.

As to SpaceX's claim that Defendants "cite no authority that authorizes a district court to transfer a case so that one of the litigants can avoid applicable circuit precedent,"[40] this has it precisely backwards. It is SpaceX that seeks to avoid the properly applicable Ninth Circuit precedent by manufacturing venue in the wrong circuit.[41] Moreover, Defendants repeatedly cite to the Fifth Circuit's decision in *Mission Insurance Co. v. Puritan Fashions Corp.*, in which the Fifth Circuit lists three indications that the case was forum-shopped, all of which came down to avoiding applicable circuit law.[42] And in *Mission Insurance*, the Fifth Circuit took the more aggressive step of outright dismissing the anticipatory suit.[43]

Finally, SpaceX asserts that Defendants' discussion of anticipatory suits is off base because that doctrine only applies where two lawsuits involve the same issues.[44] But SpaceX *has* raised the four Counts in its complaint in this case as affirmative defenses in the Region's ULP

---

[40] Doc. 64 at 18.

[41] *Compare, e.g., Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1132 (9th Cir. 2021) (rejecting the notion that "all two-level for-cause protections for inferior officers [are] unconstitutional"), *with Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022) (reaching opposite conclusion and holding that "[t]wo layers of for-cause protection" is forbidden under "Supreme Court precedent"), *cert. granted*, 143 S. Ct. 2688 (argued Nov. 29, 2023).

[42] *See* 706 F.2d at 602 n.3 (dismissing Texas suit and identifying three examples of more favorable precedent available in a California suit); Doc. 29 at 10 nn.52-53.

[43] 706 F.2d at 602 n.3.

[44] Doc. 64 at 18 (citing *Paragon Indus.*, 2008 WL 3890495, at *4 (N.D. Tex. Aug. 22, 2008), and *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 391 (5th Cir. 2003)).

proceedings.[45] In sum, Fifth Circuit case law as to forum-shopped anticipatory suits is directly applicable and this Court should transfer this action to the Central District of California.[46]

**3. SpaceX's basis for asserting venue in the Southern District of Texas is vastly overshadowed by the events that transpired in California, making venue improper and justifying transfer under 28 U.S.C. § 1406(a).**

In asserting venue here, SpaceX asks this Court to ignore the "overwhelming majority" of events taking place in California.[47] But the proper analysis calls for a "commonsense appraisal" of the "totality of events" to determine which have "operative significance in that case."[48] And

---

[45] Exhibit A (SpaceX's Answer to the ULP Complaint) at 8-9 (also raising elsewhere in its affirmative defenses additional claims that are not before this Court). SpaceX's fifth affirmative defense to the ULP complaint raises the same issue of ALJ removability as in Count I. *Id*. at 8. Its sixth and seventh affirmative defenses similarly mirror Count II as to Board member removability. *Id*. at 8-9. SpaceX's eighth affirmative defense regarding the Seventh Amendment parrots Count III. *Id*. at 9. Finally, its ninth and tenth affirmative defenses as to due process considerations associated with a possible suit seeking injunctive relief under Section 10(j), are essentially the same claim as in Count IV. *Id.*

[46] *See* above at n.51; *see also Total Gas & Power N. Am., Inc. v. FERC*, 2016 WL 3855865, at *22-25 (S.D. Tex. July 15, 2016) (dismissing declaratory action filed shortly after FERC staff announced intent to recommend enforcement proceedings; plaintiff who files a declaratory action in those circumstances is engaging in "forum shopping" because "[t]he essence of [the] claims is that a district court forum would be more favorable than the agency process"), *aff'd on other grounds*, 859 F.3d 325 (5th Cir. 2017).

[47] *See Maysaroh Am. Arab Commc'ns & Translation Ctr., LLC*, 51 F. Supp. 3d 88, 93-95 (D.D.C. 2014) (transferring case under 28 U.S.C. § 1406(a) despite allegations of forced labor within its district because "the overwhelming majority of events giving rise to plaintiff's claims occurred" in another district); *Andrade v. Chojnacki*, 934 F. Supp. 817, 827 n.18 (S.D. Tex. 1996) (district courts "should not accept venue if the activities that transpired in the forum district were insubstantial in relation to the totality of events giving rise to Plaintiffs' claims").

In *Maysaroh,* 51 Supp. 3d at 93, the district court expressly distanced itself from the "*most substantial*" event standard that SpaceX says [at Doc. 64 at 8] the Southern District of Texas improperly applied in *Andrade*, 934 F. Supp. at 827 n.18. But however the standard is articulated, the Board has shown not only that the most substantial events took place in the Central District of California, but also that the overwhelming weight of events giving rise to SpaceX's suit arose (and is arising) out of the Central District of California. *See Experian Info. Sols., Inc. v. FTC*, No. CIV. 3:00-CV-1631-H, 2001 WL 257834, at *3 (N.D. Tex. Mar. 8, 2001) (prior consent order in district court did not support venue to review agency action challenged on constitutional grounds).

[48] *Lamont v. Haig*, 590 F.2d 1124, 1134 & n.62 (D.C.Cir.1978).

significantly, the relevant inquiry focuses on where a defendant engaged in the conduct that gives rise to a plaintiff's claims.[49] As shown below, SpaceX continually attempts to shift focus to impacts of Defendants' administrative proceedings to itself, but *Seariver* explains why this Court's focus should remain on where Defendants' complained-about activities took place.

SpaceX begins its defense by pounding on keystrokes. It insists that *at least* 215 people in this district interacted electronically with the Open Letter and that they did so for a total of 1,560 to 2,263 "intentional interactions."[50] SpaceX does not say how this compares with interactions among those at SpaceX's headquarters in California, where the employees organized the Open Letter. Nor does SpaceX acknowledge that these 215 individuals based in the Southern District of Texas make up a tiny fraction of its "more than 13,000 employees" nationwide.[51] Regardless, the interactions among SpaceX employees in this district with an Open Letter drafted and sent from California are as sound a basis for venue as the murmurings among Texas employees after Sunday's Super Bowl or their clicks on any article critical of SpaceX in the *L.A. Times.* As for the meetings that SpaceX chose to call in response to the Open Letter,[52] this voluntary action does not give rise to its claims, and again focuses on the locus of the wrong party's actions.

SpaceX's invocation of President Gwynne Shotwell sending emails from McGregor, Texas also fails to establish venue here.[53] First, SpaceX does not contest the claim that Shotwell was based out of SpaceX's headquarters in California when the events giving rise to the ULP

---

[49] *See Seariver Mar. Fin. Holdings, Inc. v. Pena*, 952 F. Supp. 455, 460 (S.D. Tex. 1996) ("[B]y referring to 'events or omissions giving rise to the claim,' it is likely that Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff.") (cleaned up).

[50] Doc. 64 at 4.

[51] Compl. ¶ 35.

[52] Doc. 64 at 4-5.

[53] *Id*. at 5.

complaint transpired.[54] Rather, Shotwell's affidavit only establishes that her primary place of employment is currently in McGregor, Texas and that she was in McGregor when she sent two emails on June 15, 2022 and June 16, 2022.[55] Second, even if Shotwell's location on those days were relevant to the Board's ULP proceedings,[56] it would not serve as a basis for asserting venue here given that McGregor falls outside of the Southern District of Texas.[57] Third, Shotwell's emails were sent to SpaceX employees in California. The first was specifically addressed to California-based employee Paige Holland-Thielen with an unmistakable command to cease distributing the Open Letter or face consequences of such "insubordination."[58] SpaceX fired Holland-Theilen the next day at an in-person meeting in Hawthorne, California.[59] Thereafter, Shotwell emailed employees company-wide that SpaceX had already terminated employees for their involvement in the Open Letter.[60] SpaceX says this email went to employees in the Southern District of Texas "among others,"[61] which presumably includes far more California employees based in SpaceX's headquarters. In short, these two McGregor, Texas-sent emails

---

[54] Doc. 29 at 18 n.86 (citing Doc. 19 ¶ 12 (stating Shotwell was based in Hawthorne around the time of declarant's termination)).

[55] Doc. 64-3 ¶¶ 2-5.

[56] *See December 12, Inc.*, 273 NLRB 1 (1984) (ULP trial held in Los Angeles, where fired musician was based, even though some operative events occurred on tour in Australia).

[57] As an afterthought, SpaceX asserts that venue would be proper in the Western District of Texas, based on Shotwell's emails. Doc. 64 at 8. But venue would be improper there for the same reasons as here. Venue is improper when it has been forum-shopped in anticipation of suit elsewhere, and when the great majority of relevant events occurred outside the forum. *See* above at 2-3, 9-10.

[58] Doc. 64-3 ¶¶ 3, 5; Doc. 64-4.

[59] Doc. 22 ¶ 10.

[60] Doc. 64-3 ¶¶ 4, 5; Doc. 64-5.

[61] Doc. 64 at 5.

(allegedly designed to stifle concerted activity arising in California) are not just a tiny part of the events precipitating the NLRB proceeding, they *were not sent from this District*.

SpaceX's third ground for asserting a substantial connection to the Southern District of Texas is that the ULP complaint allegedly reveals that the NLRB views SpaceX's violations as having taken place nationwide and thereby justify nationwide remedies.[62] But the ULP complaint cites to conduct at or near SpaceX's Hawthorne facility 18 times,[63] never once references Texas,[64] and contains a single sentence noting that Shotwell sent "an email to all employees" announcing SpaceX's termination of those involved in the Open Letter.[65]

The Region's complaint seeks an order requiring SpaceX to post an electronic notice to all of its employees.[66] But SpaceX cites not a single case for the proposition that the hypothetical future need to remedy unlawful action in a particular location can give rise to venue in that location. That unprincipled approach would have no bounds; it would, for example, mean there was venue against *any* nationwide entity for *any* lawsuit challenging *any* corporatewide practice *anywhere* the entity had *any* location (since, by definition, such a practice would need to be remedied there). SpaceX itself might come to rue such a rule soon enough; there is no telling what Pandora's box of consequences might come from it, and this Court should not be the first to crack open that lid.

SpaceX's fourth claim as to a substantial nexus for venue is that the ULP proceeding is "making demands of personnel across many facilities" as well as senior leadership for their

---

[62] *Id*.

[63] ULP Compl. ¶¶ 2(a), 2(d), 6, 8-10, 12-16, 19-20, 24-28.

[64] A notice accompanying the ULP Complaint was sent to four SpaceX attorneys, one of whom had an address in Texas. Doc. 19-2 at 12.

[65] ULP Compl. ¶ 11.

[66] ULP Compl. At 8.

involvement in terminating eight California-based employees.[67] But this suffers from the same defect as its third claim above. SpaceX's choice to assign parts of its case to personnel in Texas as opposed to those based in California is irrelevant; otherwise parties could lay venue virtually anywhere.[68]

To support its argument for laying venue here, SpaceX points to three cases, misconstruing the weight of events in each.[69] In *Uffner*, the court found that a ship sinking in the forum was a "substantial" event for venue purposes in a suit over insurance coverage.[70] Here, the analogous event (i.e. not the immediately proximate cause of suit, but the key event creating the controversy) was SpaceX's firing of eight of its employees, which occurred in California. *Uffner*, if anything, supports the NLRB's position. In *Long*, a defamation case, the plaintiff sued his former employer alleging that the out-of-state defendants there "made extraordinary and wrongful efforts to prevent [p]laintiff from obtaining employment in Texas in the staffing industry."[71] In other words, the core of the allegations involved speech directed at Texas and intended to have its primary effect there. Even further afield is *Texas v. United States*, which

---

[67] *Id.*

[68] SpaceX claims that Jamin Gallman was involved in the Open Letter events. Doc. 64 at 6. And Gallman's affidavit asserts that in addition to having previously worked at the Hawthorne Facility, he and other members of SpaceX's Human Resources team were involved in some undisclosed capacity "in the events leading up to and after the dissemination of the open letter." Doc. 37-1 ¶¶ 3, 14. But neither claim amounts to more than speculation that Defendants will compel his involvement in the Board's proceedings.

[69] Doc. 64 at 6 (citing *Uffner v. La Reunion Francaise, SA*, 244 F.3d 38, 43 (1st Cir. 2001), *Long v. Grafton Exec. Search, LLC*, 263 F. Supp. 2d 1085, 1090 (N.D. Tex. 2003), and *Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015)).

[70] 244 F.3d at 40, 43.

[71] *Long*, 263 F. Supp. 2d at 1087-89 (discussing phone calls and emails directed to Texas).

involved a nationwide rule promulgated through notice-and-comment rulemaking rather than an adjudication occurring (and relating to conduct that occurred) in another venue.[72]

In contrast to these cases, *Care One, LLC v. NLRB,* points to the proper course here.[73] There, as here, the district court was asked to consider questions as to the constitutionality of the NLRB's proceedings.[74] It ultimately concluded that the suit should be transferred to Connecticut, where the NLRB's administrative proceedings were taking place, rather than remain in New Jersey, where the plaintiff was headquartered and where there was a bankruptcy proceeding involving the entities at issue in the NLRB's Connecticut-based proceedings.[75] The court in *Care One* found that those bankruptcy proceedings "provide[] some connection to New Jersey," but concluded that transfer was proper because "the plaintiff's preferred forum had little connection with the operative facts of the lawsuit."[76] And elsewhere, courts have properly transferred cases under 28 U.S.C. §1406(a) where "the overwhelming majority of events giving rise to plaintiff's claims occurred" in a different venue.[77]

In sum, SpaceX's claims do not amount to a substantial basis for asserting jurisdiction here, given the overwhelming weight of the key events in the Central District of California,

---

[72] 95 F. Supp. 3d 965. That case did not involve transfer and Texas, as a party, may lay venue in a Texas district. *See id.* at 973.

[73] Doc. 29 at 9 n.48 (citing *Care One, LLC v. NLRB,* No. 2:23-cv-03221, 2023 WL 4156859, at *6 (D.N.J. June 23, 2023)).

[74] *Care One,* 2023 WL 4156859, at *2. While *Care One* was decided under 28 U.S.C. § 1404(a), *see id.*, its analysis of the relative weight of events is also instructive for a motion under 28 U.S.C. § 1406(a). *See Maysaroh Am.*, 51 F. Supp. 3d at 93-95 (considering weight of events under both statutes).

[75] *Id.* at *3.

[76] *Id*. (internal quotes and citations omitted).

[77] *See, e.g., Maysaroh Am.*, 51 F. Supp. 3d at 93-95 (transferring case despite allegations of forced labor within its district because "the overwhelming majority of events giving rise to plaintiff's claims occurred" in another district).

including the very hearing that that this suit seeks to enjoin. Rather, SpaceX seeks to leverage the Fifth Circuit's 2022 decision in *Jarkesy* in order to deny eight Terminated Employees a forum to contest their dismissal from SpaceX's California headquarters, for their California-based involvement in an Open Letter.

4. **Even assuming venue was not improper under 28 U.S.C. § 1406(a), the Board has shown the requisite good cause in favor of transfer to the Central District of California under 28 U.S.C. § 1404(a).**

"The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)."[78] To prevail on such a motion to transfer, the Board must "adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice."[79] Not only is the Central District of California the more convenient location for parties and non-parties, but it would be contrary to the interest of justice permit SpaceX to avail itself advantageous case law in a distant forum with virtually no connection to the dispute. Indeed, courts within this Circuit have repeatedly recognized that the "interest of justice component of § 1404(a) may, *in itself, be determinative* of the decision to allow a transfer, even when the convenience of the parties and witnesses would call for a different result."[80]

SpaceX claims that Defendants have failed to show that private interest factors point strongly in favor of transfer, largely because, according to SpaceX, no testimony will be needed

[78] *In re Volkswagen*, 545 F.3d at 313.

[79] *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022).

[80] *Mizell v. Prism Comput. Corp.*, 27 F. Supp. 2d 708, 714 (S.D. Miss. 1998) (emphasis added); *Sioux City & New Orleans Barge Lines, Inc. v. Miss. Towing Corp.*, 221 F. Supp 737, 740 (S.D. Tex. 1963) (interest of justice was determinative factor in ordering transfer); *cf. Zoltar Satellite Systs., Inc. v. LG Elecs. Mobile Commc'ns Co.*, 402 F. Supp. 2d 731, 735, 739 (E.D. Tex. 2005) ("most importantly," interest of justice favored transfer).

here.[81] SpaceX is mistaken. In this action, SpaceX has specifically sought injunctive relief, and it does not dispute that it must prove that the combined balance-of-hardship and public-interest factors[82] weigh in favor of an injunction. But addressing these factors must include an inquiry as to the effects of an injunction on SpaceX's Hawthorne workforce.[83] This inquiry would presumably include testimony from both party and non-party witnesses based in California, including the Terminated Employees, who can address how they would suffer substantial hardship should this Court enjoin a proceeding that might redress their terminations.[84] And "it is the convenience of non-party witnesses [including of the Terminated Employees], rather than that of party witnesses, that is the more important factor [as to] transfer of venue analysis."[85]

SpaceX's unsubstantiated claim that Brownsville is a more convenient venue for willing witnesses is risible.[86] SpaceX even suggests that it would be cheaper for non-party witnesses to get to Brownsville than Los Angeles because two of the Terminated Employees respectively signed their declarations from Berlin, Germany and Raleigh, North Carolina.[87] That appears highly unlikely even as to individuals based in Berlin or Raleigh,[88] but especially as to the

---

[81] Doc. 64 at 11-13.

[82] Doc. 37 at 21 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

[83] Doc. 29 at 15-16.

[84] *See* 29 U.S.C. §§ 107, 113 (requiring testimony "in open court" to support an injunction in labor disputes "regardless of whether or not the disputants stand in the proximate relation of employer and employee").

[85] *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 790-91 (S.D. Tex. 2005) (quoting *State St. Cap. Corp. v. Dente*, 855 F. Supp. 192, 198 (S.D. Tex. 1994)); *see also Reyes De Perez v. Cont. Freighters, Inc.*, No. 5:06-cv-02, 2006 WL 3053400, at *4 (S.D. Tex. Oct. 26, 2006) ("The convenience of non-party witnesses is of particular importance.").

[86] Doc. 64 at 13.

[87] Doc. 64 at 12-13 n.5.

[88] Google Maps searches run on February 8, 2024 for flights between Berlin, Raleigh, Brownsville, and Los Angeles automatically searched for round-trip tickets between February 24

Terminated Employees based in the Central District of California.[89] SpaceX ignores the fact that none of the Terminated Employees "have any relationship with the State of Texas."[90] As to SpaceX's witnesses, the law assigns less weight to their concerns than those of non-party witnesses.[91]

The availability of compulsory process also points towards venue in the Central District of California. Not only are the preferences of non-party witnesses more important than SpaceX's witnesses, but none of the Terminated Employees are subject to compulsory process here.[92]

As for the catchall private-interest factor, SpaceX argues that transfer could lead to delay,[93] but "vague generalities of possibility of delay" are not enough to deny transfer; what SpaceX must demonstrate is clear and convincing evidence of "rare and special circumstances" risking delay.[94] In sum, the balance of private-interest factors weighs strongly in favor of transfer to the Central District of California. That is where the operative events arose, where witnesses are more likely to be found, where Region 31 conducted its investigation, and where relief would be directed. Nor would this result be unfair to Space X: SpaceX is headquartered in California, has multiple attorneys for both the instant case and the separate administrative proceeding in

---

and February 28, 2024. Flights from Berlin to Los Angeles are projected to take over 14 hours and start at $674. Flights from Berlin to Brownsville are projected to take over 17 hours and start at $973, which is significantly longer and costs about 44% more. As for Raleigh, a trip to Los Angles would take about as long as a Brownsville flight but cost about 70% more. *See* Exhibit B.

[89] *See e.g.* Doc. 19 (Moline Declaration signed in Los Angeles, California); Doc. 20 (Beck Declaration signed in Manhattan Beach, California).

[90] Doc. 29 at 3 n.16 (quoting Doc. 18 ¶12).

[91] *See* above at n.113 (citing *Spiegelberg*, 402 F. Supp. 2d at 790-91, among others).

[92] Fed. R. Civ. P. 45(c); *see also Mizell*, 27 F. Supp. 2d at 714 (that all witnesses except plaintiff resided outside court's subpoena power supported transfer).

[93] Doc. 64 at 14-15.

[94] *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003) (internal quotations omitted).

California, and has allegedly required its California-based employees—at least in the pre-*Jarkesy* era—to address employment issues in California.[95]

As for the public interest, the local interest in having controversies surrounding labor disputes decided at home weighs heavily in favor of transfer to the Central District of California.[96] This Court and the people that it serves have no greater interest in the matter than any other district where SpaceX operates.[97] To the contrary, this district has relatively little interest, if any, in a ULP hearing scheduled to take place in California to resolve allegations that an employer residing in California unlawfully retaliated against its California employees for their involvement in an Open Letter that was drafted in California. By contrast, the Central District of California and its residents have a powerful interest in whether a major regional employer is held accountable for allegedly unlawful actions committed there.[98]

As for relative docket congestion, SpaceX cherry-picks statistics but has no response to the fact that median disposition times in the Central District of California are nearly half that of the Southern District of Texas, and that the number of cases pending per judge in the Central

---

[95] *See* above at 5, n.28; Doc. 19-2 at 13; *see also Spiegelberg*, 402 F. Supp. 2d at 791 (finding transfer appropriate where the plaintiff resided in the transferee forum); *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 679 (S.D. Tex. 2014) ("Plaintiffs will not be burdened by having to litigate in California, where they do business, where they have legal counsel, and where they are already participating in … a related dispute.").

[96] Doc. 29 at 17-18, and cases cited therein, including *Lab. Corp. of Am. Holdings*, 942 F. Supp. 2d at 4, and *Pac. Mar. Ass'n,* 905 F. Supp. 2d at 61.

[97] SpaceX claims that "it is deeply invested in the local Brownsville economy." Doc. 64 at 15. But SpaceX could likely say that of all the local economies in which it operates, including Hawthorne, where it is headquartered. And certainly the economic impact of terminating Hawthorne-based employees is felt most acutely there.

[98] *See Care One*, 2023 WL 4156859, at *7 (holding that the local interest factor plainly favored transfer to the district where the NLRB proceeding was pending).

District of California are more than one third lower than in this district.[99] And as noted above at pages 5-7, this Court has no comparative experience advantage in adjudicating this type of constitutional claim. Considering the importance of the local interest in this California dispute being decided there, the public interest factors weigh heavily in favor of transfer.

Finally, while SpaceX relies heavily on convenience,[100] transfer is warranted because "the interest of justice" heavily favors that further proceedings take place in the Central District of California.[101] Indeed, as noted above, it is reason enough to allow a transfer on its own.[102] In weighing whether the "interest of justice" favors transfer, courts consider whether the plaintiff has engaged in forum-shopping, [103] as laid out in Section 2 above and in our Motion to Transfer.

**CONCLUSION**

This Court should grant Defendants' motion and transfer the instant action to the Central District of California.

---

[99] *Compare* Doc. 64 at 14, *with* Doc. 29 at 19 n.91 (median disposition time in civil cases for the Central District of California is 4.4 months compared to 7.9 months in the Southern District of Texas—about 44% faster; meanwhile, the Central District of California has 489 pending cases per judgeship versus 768 for the Southern District of Texas—about 37% less).

[100] Doc. 64 at 1-2, 9, 11-14, 17.

[101] 28 U.S.C. § 1404(a).

[102] *Mizell*, 27 F. Supp. 2d at 714; *Sioux City*, 221 F. Supp at 740 (S.D. Tex. 1963); *Zoltar Satellite Systs.*, 402 F. Supp. 2d at 735, 739 (E.D. Tex. 2005); *see also* Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3854 n.3 (4th ed.) (compiling cases).

[103] *See Lake City Stevedores, Inc. v. Steamship Lumber Queen*, 343 F. Supp. 933, 935 (S.D. Tex. 1972) ("Judicial discretion over every motion to transfer should prevent a plaintiff from forum shopping"); *Turner & Newall*, 652 F. Supp. at 1312 (explaining that Section 1404(a) is designed to "prevent forum shopping"); *see also In re Volkswagen*, 545 F.3d at 313 (warning against abuse of the general venue statute).

Respectfully submitted,

ALAMDAR S. HAMDANI
*United States Attorney*
*Southern District of Texas*

By: s/Benjamin S. Lyles
BENJAMIN S. LYLES
*Assistant United States Attorney*
S.D. Tex. ID No. 3062156
State Bar No. 24094808
1701 W. Bus. Highway 83, Suite 600
McAllen, TX 78501
Telephone: (956) 618-8010
Facsimile: (956) 618-8016
E-mail: Benjamin.Lyles@usdoj.gov
*Attorney-in-Charge for Defendants*

Dated this 12th day of February, 2024.

NATIONAL LABOR RELATIONS BOARD
*Contempt, Compliance, and Special Litigation Branch*
KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*
DANIEL BRASIL BECKER
*Trial Attorney*
GRACE L. PEZZELLA
*Trial Attorney*

s/David P. Boehm
DAVID P. BOEHM
*Trial Attorney*
D.C. Bar No. 1033755 – *pro hac vice*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
Telephone: (202) 273-4202
Email:
David.boehm@nlrb.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

s/David P. Boehm
DAVID P. BOEHM
*Trial Attorney*
D.C. Bar No. 1033755 – *pro hac vice*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
Telephone: (202) 273-4202
Email: David.boehm@nlrb.gov

Dated this 12th day of February, 2024.