**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | |
|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.,**<br><br>　　　　**Plaintiff,**<br><br>　　　　　　v.<br><br>**NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,**<br><br>　　　　**Defendants.** | Civil Action No. 1:24-cv-00001 |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS**
**MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

ARGUMENT ..........................................................................................................4

I.    Most important to the Court's preliminary injunction analysis, SpaceX is likely to succeed on the merits of its constitutional claims.................................................4

    A.    *Jarkesy* ensures SpaceX will prevail on its ALJ removal-protection claim. ...........4

    B.    *Humphrey's Executor* does not foreclose SpaceX's Board Member removal-protection claim. .........................................................................7

    C.    The NLRB's provision of legal relief adjudicating private rights violates the Seventh Amendment. ..................................................................9

    D.    The NLRB Members' combination of prosecutorial and adjudicative roles against SpaceX violates the separation of powers and due process.....................15

II.   SpaceX will suffer irreparable harm without a preliminary injunction. .........................18

    A.    The unconstitutionality of the NLRB proceedings inflicts irreparable harm. ........................................................................18

        1.    SpaceX is irreparably harmed by being subject to ongoing proceedings before unconstitutionally insulated decisionmakers.............19

        2.    SpaceX will be irreparably harmed if it is deprived of it Seventh Amendment jury right................................................23

        3.    The NLRB Members' combination of prosecutorial and adjudicative roles irreparably harms SpaceX. .............................24

    B.    The unconstitutional NLRB proceedings inflict irreparable economic and reputational harm. ....................................................25

III.  The balance of harms and public interest favor a preliminary injunction. .......................26

IV.   Severability arguments cannot defeat SpaceX's right to a preliminary injunction. ..........28

CONCLUSION......................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpine Sec. Corp. v. FINRA,*
  No. 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023) ....................................................20

*Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.,*
  309 U.S. 261 (1940) .........................................................................................................13

*Axon Enter., Inc. v. FTC,*
  598 U.S. 175 (2023) ................................................................................................ *passim*

*Braidwood Mgmt., Inc. v. EEOC,*
  70 F.4th 914 (5th Cir. 2023) ............................................................................................16

*BST Holdings, L.L.C. v. OSHA,*
  17 F.4th 604 (5th Cir. 2021) .......................................................................................26, 27

*Burgess v. FDIC,*
  639 F. Supp. 3d 732 (N.D. Tex. 2022) ...........................................................................11, 23

*Burgess v. FDIC,*
  871 F.3d 297 (5th Cir. 2017) ...........................................................................................26

*Care One, LLC v. NLRB,*
  2023 WL 6457641 (D. Conn. Oct. 4, 2023) .......................................................................22

*Carr v. Saul,*
  141 S. Ct. 1352 (2021) ....................................................................................................28

*Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry,*
  494 U.S. 558 (1990) ....................................................................................................13, 14

*City of Arlington v. FCC,*
  569 U.S. 290 (2013) .........................................................................................................7

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB,*
  51 F.4th 616 (5th Cir. 2022) ...........................................................................................21

*Cochran v. SEC,*
  20 F.4th 194 (5th Cir. 2021) (en banc) ...................................................................19, 21, 25

*Collins v. Yellen,*
  141 S. Ct. 1761 (2021) ................................................................................................21, 23

*Consumers' Research v. CPSC*,
  91 F.4th 342 (5th Cir. 2024) ................................................................... *passim*

*Consumers' Research v. CPSC*,
  592 F. Supp. 3d 568 (E.D. Tex. 2022) ........................................................8, 21, 22

*Curtis v. Loether*,
  415 U.S. 189 (1974) ...................................................................................13

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
  661 F.2d 328 (5th Cir. 1981) ........................................................................18

*Def. Distributed v. U.S. Dep't of State*,
  838 F.3d 451 (5th Cir. 2016) ........................................................................27

*Doran v. Salem Inn, Inc.*,
  422 U.S. 922 (1975) ...............................................................................22, 28

*Free Enter. Fund v. PCAOB*,
  561 U.S. 477 (2010) ................................................................................. *passim*

*Granfinanciera, S.A. v. Nordberg*,
  492 U.S. 33 (1989) .....................................................................................14

*Humphrey's Executor v. United States*,
  296 U.S. 602 (1935) ...........................................................................1, 7, 8, 9

*Illumina, Inc. v. FTC*,
  88 F.4th 1036 (5th Cir. 2023) ...................................................................8, 17

*Int'l Union, United Auto., Aircraft & Agric. Implement Workers of Am. (UAW-CIO) v. Russell*,
  356 U.S. 634 (1958) ...................................................................................14

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022) .................................................................. *passim*

*Leachco, Inc. v. CPSC*,
  No. 22-cv-232, 2023 WL 4934989 (E.D. Okla. Aug. 2, 2023) ..............................23

*League of United Latin Am. Citizens v. Abbott*,
  601 F. Supp. 3d 147 (W.D. Tex. 2022) ...........................................................27

*League of Women Voters of U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) .........................................................................26

*Lefebure v. D'Aquilla*,
  15 F.4th 650 (5th Cir. 2021) ..........................................................................8

*Louisiana v. Biden,*
    55 F.4th 1017 (5th Cir. 2022) ........................................................27

*Lucia v. SEC,*
    138 S. Ct. 2044 (2018) ...............................................................5

*Miss. Power & Light Co. v. United Gas Pipe Line Co.,*
    760 F.2d 618 (5th Cir. 1985) .................................................22, 28

*Missouri v. Biden,*
    83 F.4th 350 (5th Cir. 2023) ........................................................18

*Mock v. Garland,*
    75 F.4th 563 (5th Cir. 2023) ......................................................1, 4

*Morrison v. Olson,*
    487 U.S. 654 (1988) ...................................................................6

*NLRB v. Jones & Laughlin Steel Corp.,*
    301 U.S. 1 (1937) ............................................................2, 13, 14

*NLRB v. Miami Coca-Cola Bottling Co.,*
    360 F.2d 569 (5th Cir. 1966) .......................................................15

*NLRB v. Strong,*
    393 U.S. 357 (1969) ..................................................................15

*Overstreet v. El Paso Disposal, L.P.,*
    625 F.3d 844 (5th Cir. 2010) .......................................................24

*S. Tours, Inc. v. NLRB,*
    401 F.2d 629 (5th Cir. 1968) .......................................................15

*Seila Law LLC v. CFPB,*
    140 S. Ct. 2183 (2020) ...................................................... *passim*

*Solugen Inc. v. M3 Chem. Grp. LLC,*
    529 F. Supp. 3d 685 (S.D. Tex. 2021) ..............................................11

*SpaceX v. Bell,*
    — F. Supp. 3d —, 2023 WL 8885128 (S.D. Tex. Nov. 8, 2023) ................... *passim*

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ...................................................................16

*Tex. All. for Retired Ams. v. Hughs,*
    976 F.3d 564 (5th Cir. 2020) .......................................................27

*Thomas v. Tex. Dep't of Crim. Just.*,
    297 F.3d 361 (5th Cir. 2002) .................................................................8

*Thryv*,
    372 N.L.R.B. No. 22 (Dec. 13, 2022) ........................................ *passim*

*Tull v. United States*,
    481 U.S. 412 (1987) .........................................................................10

*United States v. Nat'l Treas. Emps. Union*,
    513 U.S. 454 (1995) .........................................................................30

*United States v. Seale*,
    577 F.3d 566 (5th Cir. 2009) .................................................................7

*Ward v. Village of Monroeville*,
    409 U.S. 57 (1972) .....................................................................11, 23

*Webster v. Fall*,
    266 U.S. 507 (1925) ...........................................................................8

*Wenner v. Tex. Lottery Comm'n*,
    123 F.3d 321 (5th Cir. 1997) .............................................................22, 28

*WestRock Servs., Inc.*,
    366 N.L.R.B. No. 157 (Aug. 6, 2018) ..................................................5, 6

*Williams v. Pennsylvania*,
    579 U.S. 1 (2016) ....................................................................... *passim*

*Withrow v. Larkin*,
    421 U.S. 35 (1975) ...........................................................................17

**Statutes**

5 U.S.C. § 1202(d) .....................................................................................4

5 U.S.C. § 7521(a) ..................................................................................4, 29

15 U.S.C. § 78d(a) .....................................................................................5

29 U.S.C. § 153(a) .....................................................................................5

29 U.S.C. § 160(c) ...................................................................................12

29 U.S.C. § 160(j) ............................................................................2, 16, 24

**Other Authorities**

11A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE
§ 2948.1 (3d ed. 2023) ........................................................................................18

FED. R. CIV. P. 38 ...............................................................................................11

FED. R. CIV. P. 39 ...............................................................................................11

Michael J. Heilman, *The National Labor Relations Act at Fifty: Roots Revisited,
Heart Rediscovered*, 23 DUQ. L. REV. 1059, 1069 (1985)......................................30

*NLRB Bench Book* § 2-300,
https://www.nlrb.gov/sites/default/files/attachments/pages/node-174/april-
2023-bench-book.pdf............................................................................................6

U.S. CONST. amend V ..........................................................................................1

U.S. CONST. amend. VII .......................................................... *passim*

U.S. CONST. art. II ..........................................................1, 2, 4, 5

U.S. CONST. art. III .......................................................... *passim*

## INTRODUCTION

Facing serious claims that the NLRB's structure violates Article II, the Fifth Amendment, and the Seventh Amendment and Article III, Defendants try to change the subject. Likelihood of success on the merits is the "most important of the preliminary injunction factors." *Mock v. Garland*, 75 F.4th 563, 587 n.60 (5th Cir. 2023). Yet Defendants do not turn to the merits until the back half of their brief, and instead fixate on irreparable harm. They ask, even if SpaceX shows it is being subjected to an administrative proceeding that violates the Constitution several times over, where's the harm in that? Their view is that this Court has no power to protect SpaceX from these constitutional violations before they take place. Defendants' position is contrary to common sense and, not surprisingly, Supreme Court and Fifth Circuit precedent. The injuries that Defendants all but concede SpaceX is suffering because of the unconstitutionally structured NLRB proceeding can and should be remedied before they happen. The Court should issue a preliminary injunction immediately, and certainly before the currently scheduled March 5, 2024 start date for the administrative hearing, because all four factors are met.

***First***, SpaceX's constitutional claims are meritorious and likely to succeed. Defendants may be deemphasizing this most important factor because binding Fifth Circuit precedent assures SpaceX of success on at least one of its claims. The Fifth Circuit's opinion in *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023), is dispositive of Count I. Existing NLRB precedent recognizes that NLRB ALJs are like the SEC ALJs in *Jarkesy*, so Defendants' strained efforts to distinguish the two types of ALJs can only fail. The Fifth Circuit's conclusions about SEC ALJs are equally applicable here and establish that NLRB ALJs are unconstitutionally insulated from presidential control.

In contrast, this Court is not bound by any precedent on the NLRB Members' removal protections in Count II. Nothing in *Humphrey's Executor v. United States*, 296 U.S. 602 (1935),

1

or recent Fifth Circuit applications of that decision, analyzes removal protections as strict as those at issue here. The Court should therefore give a fresh look to this claim and recognize that the Board Members' insulation from presidential control violates Article II under *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020).

Count III is also likely to succeed. Under *Thryv*, 372 N.L.R.B. No. 22 (Dec. 13, 2022), the General Counsel seeks compensatory damages to provide relief to private individuals for the unfair labor practices charged in the administrative complaint. These legal damages for alleged private injuries are fundamentally different than the remedies the Board claimed at the time of *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937). *Jones & Laughlin* does not resolve whether the Seventh Amendment requires a jury in these circumstances. Under more recent precedent, it does.

As for Count IV: under *Williams v. Pennsylvania*, 579 U.S. 1 (2016), which Defendants brush off in one sentence, NLRB Members' prosecutorial act of authorizing injunctive relief under Section 10(j) precludes them from acting as adjudicators of the same allegations. For this reason, too, SpaceX is likely to prevail on the merits of its constitutional claims.

**Second**, SpaceX will be irreparably harmed if this Court permits the NLRB proceedings to continue despite these constitutional defects. As this Court has recognized, applying recent Supreme Court precedent, "being subjected 'to unconstitutional agency authority,' which 'is impossible to remedy once the proceeding is over,'" is sufficient to show a likelihood of "irreparable harm absent an injunction." *SpaceX v. Bell*, — F. Supp. 3d —, 2023 WL 8885128, at *4 (S.D. Tex. Nov. 8, 2023) (quoting *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023)). That should end the matter because the type of impossible-to-remedy harm that *Axon* addresses is **exactly** the type at issue here: "harm from 'having to appear in proceedings' before an unconstitutionally insulated ALJ." *Axon*, 598 U.S. at 191 (citation omitted). The irreparable-injury

2

question is that straightforward. And in any event, SpaceX has more than sufficiently established other tangible harms that cannot be remedied after the NLRB's administrative proceedings conclude—including the time and resources SpaceX must divert to the NLRB proceedings, as well as the ongoing harm they threaten to SpaceX's reputation.

*Third*, the balance of harms and public interest favor a preliminary injunction. SpaceX has much to lose if this Court denies its request for a preliminary injunction. Defendants have little (if anything) to lose if the Court grants it. There is no indication that Defendants will be prejudiced by a delay of the NLRB proceeding against SpaceX—particularly when the Region took over a year to file its administrative complaint. And if SpaceX is right that the NLRB's adjudication is unconstitutional, Defendants suffer no harm in not proceeding further. Nor does the public interest in enforcing the federal labor laws extend to enforcing them in an unconstitutional way.

The potential severing of some (or all) of the offending removal protections does not detract from SpaceX's need for a preliminary injunction now to preserve the status quo. Again, "'having to appear in proceedings' before an unconstitutionally insulated ALJ" is "a here-and-now injury" that "is impossible to remedy once the proceeding is over." *Axon*, 598 U.S. at 191 (citations omitted). The time to remedy this injury is now. Even if the Court can sever the offending removal protections when issuing final declaratory relief, the whole point of that declaratory relief is "to ensure that the [labor-law] requirements and … standards to which [SpaceX is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513 (2010). Such relief is of little use once the unaccountable agency official has handed off the administrative proceeding to others.

Because Defendants cannot refute SpaceX's satisfaction of all four preliminary injunction factors, this Court should enjoin Defendants from carrying out their administrative proceedings

against SpaceX pending full review of the merits of its constitutional claims.[1]

## ARGUMENT

**I.    Most important to the Court's preliminary injunction analysis, SpaceX is likely to succeed on the merits of its constitutional claims.**

In ignoring the merits until page 19 of their PI Opposition (Dkt. No. 69), Defendants give short shrift to the "most important of the preliminary injunction factors": the merits of SpaceX's claims. *Mock*, 75 F.4th at 587 n.60. And when Defendants finally do get to the merits, they miss their target. SpaceX is likely to succeed on the merits on at least one, if not all, of its claims.

### A.    *Jarkesy* ensures SpaceX will prevail on its ALJ removal-protection claim.

Under the Fifth Circuit's binding decision in *Jarkesy*, NLRB ALJs are unconstitutionally insulated from presidential control in violation of Article II. *See* PI Mot. 7–8. Defendants do not contest that if *Jarkesy*'s holding applies, SpaceX will succeed on the merits of Count I. Instead, they try to distinguish *Jarkesy* as being applicable only to SEC ALJs. But *Jarkesy* itself refutes Defendants' arguments, particularly given what the Board has already held about its own ALJs.

*Jarkesy*'s reasoning about SEC ALJs was "straightforward":

> SEC ALJs are inferior officers; they can only be removed by the SEC Commissioners if good cause is found by the Merits Systems Protection Board; SEC Commissioners and MSPB members can only be removed by the President for cause; so, SEC ALJs are insulated from the President by at least two layers of for-cause protection from removal, which is unconstitutional under *Free Enterprise Fund*.

34 F.4th at 464. Each step in this straightforward reasoning applies here. Defendants do not contest that NLRB ALJs are protected from without-cause removal by the same statute as the SEC ALJs. 5 U.S.C. § 7521(a). They do not contest that 5 U.S.C. § 1202(d) protects MSPB members from

---

[1] On February 7, 2024, SpaceX learned Judge Sharon L. Steckler will serve as ALJ for the hearing. Declaration of Harry I. Johnson III ("Johnson Decl.") (attached as Exhibit A), ¶ 11. SpaceX requests the preliminary injunction issue against both Judge Steckler and her co-Defendants.

without-cause removal in both cases. And they do not contest that NLRB Members have removal protection like the SEC Commissioners. *See* 29 U.S.C. § 153(a); 15 U.S.C. § 78d(a).

The only point of disagreement is whether NLRB ALJs and SEC ALJs are sufficiently similar kinds of officers. But *Jarkesy* and Board precedent decisively resolve that point against Defendants. In *Jarkesy*, the Fifth Circuit's assessment of SEC ALJs followed the Supreme Court's assessment of SEC ALJs in *Lucia v. SEC*, 138 S. Ct. 2044 (2018), which was a case applying Article II's Appointments Clause. *See Jarkesy*, 34 F.4th at 464 ("The Supreme Court decided in *Lucia* that SEC ALJs are 'inferior officers' under the Appointments Clause because they have substantial authority within SEC enforcement actions."). The *Lucia* Appointments Clause analysis was enough, for the Fifth Circuit, to resolve the removability issue as well: "if SEC ALJs are 'inferior officers' of an executive agency, as the Supreme Court in *Lucia* indicated was the case at least for the purposes of the Appointments Clause, they are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Id.* That reasoning makes the question here an easy one because the Board has already determined that NLRB ALJs are indistinguishable from SEC ALJs as "inferior officers" under the *Lucia* Appointments Clause analysis: "Although the Court's holding in *Lucia* was specific to SEC administrative law judges, its reasoning supports a determination that Board judges, like SEC judges, are inferior officers, and as such we agree that they must be appointed pursuant to the Appointments Clause." *WestRock Servs., Inc.*, 366 N.L.R.B. No. 157, slip op. at 1 (Aug. 6, 2018).

Defendants nonetheless try to manufacture some distinction by highlighting *Jarkesy*'s statement that SEC ALJs "may punish contemptuous conduct; and often their decisions are final and binding." 34 F.4th at 464 (citing *Lucia*, 138 S. Ct. at 2053–54). There are at least two problems. First, *Jarkesy*'s statement drew from *Lucia*—which, by the Board's own determination in

*WestRock*, applies equally to NLRB ALJs. Second, Defendants omit the crucial first part of *Jarkesy*'s statement, which stresses that "SEC ALJs exercise considerable power over administrative case records by controlling the presentation and admission of evidence." *Id.* No one can deny that NLRB ALJs perform the same adjudicative function. *See, e.g.*, *NLRB Bench Book* § 2-300, https://www.nlrb.gov/sites/default/files/attachments/pages/node-174/april-2023-bench-book.pdf. That is enough under *Jarkesy*, which explained that "quasi-judicial executive officers must be removable by the President." 34 F.4th at 464 (cleaned up). "So even if ALJs' functions are more adjudicative … , the fact remains that two layers of insulation impedes the President's power to remove ALJs based on their exercise of the discretion granted to them." *Id.* at 465. For this reason, Defendants get nowhere arguing that "the scope of the President's power to remove and control adjudicators differs from the scope of his power to remove and control other executive officers." PI Opp. 22 (invoking *Morrison v. Olson*, 487 U.S. 654, 689 (1988)). *Jarkesy* rejects the argument that administrative adjudicators can be shielded by multiple layers of for-cause removal protections. 34 F.4th at 464–65. That was the position of the *Jarkesy* dissent. *Id.* at 477 (Davis, J., dissenting) ("The ALJs' role is similar to that of a federal judge[.]").

In a last-ditch effort to escape this binding Fifth Circuit precedent, Defendants try the following argument: "[i]f review by Article III judges—who are clearly less accountable to the President than MSPB or NLRB members—is constitutionally permissible, it strains the imagination to think that removal protections for MSPB or NLRB members would be unconstitutional." PI Opp. 24. Apparently, the NLRB lacks imagination—or at least understanding of the separation of powers. It is a feature, not a bug, of Article III judges that they are independent of the President. *See* THE FEDERALIST NO. 78 (Alexander Hamilton). Executive branch officials are the opposite: they must be *dependent* on the President. *See Seila L.*, 140 S. Ct. at 2191–92.

That includes officials within the NLRB. The NLRB's ALJs are not Article III judges. They "are not mere neutral arbiters of federal [labor] law; they are integral pieces within the [NLRB's] powerful enforcement apparatus." *Jarkesy*, 34 F.4th at 465 n.20. Even if they "have some of the same 'tools of federal trial judges,' they use those tools at the direction of and with the power delegated to them by the [NLRB]." *Id.* (citation omitted). So NLRB ALJs must be accountable to the Executive, as *Jarkesy* instructs. *See also City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013) (explaining that, although administrative adjudications "take 'legislative' and 'judicial' forms, … they are exercises of—indeed, under our constitutional structure they *must be* exercises of—the 'executive Power'" (quoting Art. II, § 1, cl. 1)).

Defendants may not like *Jarkesy*. *See* PI Opp. 21. But they cannot avoid it. *Jarkesy* is binding precedent and shows SpaceX's likelihood of success on its ALJ removal-protection claim.

### B. *Humphrey's Executor* does not foreclose SpaceX's Board Member removal-protection claim.

NLRB Members are also unconstitutionally insulated from removal. *See* PI Mot. 8–10. Regardless of whether the Supreme Court should overrule *Humphrey's Executor* (as some Justices have suggested and SpaceX agrees), SpaceX's argument is that this Court should not extend *Humphrey's Executor* to circumstances that differ from the Federal Trade Commission ("FTC") as it was structured in 1935. Neither the Supreme Court nor the Fifth Circuit has ever applied *Humphrey's Executor* to NLRB ALJs, and neither should this Court.

Defendants' rebuttal relies almost entirely on *Consumers' Research v. CPSC*, 91 F.4th 342 (5th Cir. 2024). *Consumers' Research* is subject to a petition for en banc rehearing, and the Fifth Circuit promptly called for a response to the petition.[2] *See* Dkt Nos. 142 & 148, No. 22-40328 (5th

---

[2] Of course, if the Fifth Circuit grants rehearing, the grant will have the immediate effect of "vacating the … panel opinion and rendering it non-precedential." *United States v. Seale*, 577 F.3d 566, 570 (5th Cir. 2009) (per curiam).

Cir.). But even on its own terms, *Consumers' Research* does not support expanding *Humphrey's Executor* to NLRB Members. Contrary to Defendants' claim, PI Opp. 27–28, *Consumers' Research* does not address SpaceX's argument that *Humphrey's Executor* does not permit removal restrictions as strict as those that apply to the NLRB Members. A review of the Fifth Circuit briefing reveals that the parties in *Consumers' Research* did not address the difference in breadth between the removal restrictions for CPSC Commissioners and FTC Commissioners. *See* Response Brief for Appellees, *Consumers' Research*, 2022 WL 6164656. The panel opinion likewise did not address that difference. *See Consumers' Rsch.*, 91 F.4th at 346. The decision therefore does not foreclose that argument here. *Thomas v. Tex. Dep't of Crim. Just.*, 297 F.3d 361, 370 n.11 (5th Cir. 2002) ("Where an opinion fails to address a question squarely, we will not treat it as binding precedent."); *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

SpaceX does not ask this Court, and will not ask the Fifth Circuit, to "overturn[]" *Humphrey's Executor*. *Contra* PI Opp. 24. Although SpaceX has preserved that argument in case the Supreme Court decides to reconsider *Humphrey's Executor*, PI Mot. 10, SpaceX recognizes that no district or circuit court has authority to overturn, or even pare back, Supreme Court precedent. *See Lefebure v. D'Aquilla*, 15 F.4th 650, 660 (5th Cir. 2021). But that does not mean courts should extend *Humphrey's Executor*—particularly when the Supreme Court has repeatedly limited the doctrine, and certain Justices have expressly questioned it. *See, e.g.*, *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1046–47 (5th Cir. 2023) (recognizing *Seila Law*, 140 S. Ct. at 2206, as limiting *Humphrey's Executor*); *Seila L.*, 140 S. Ct. at 2198 ("*Rightly or wrongly*, the Court viewed the FTC (as it existed in 1935) as exercising 'no part of the executive power.'" (emphasis added)

(quoting *Humphrey's Ex'r*, 295 U.S. at 628)); *id.* at 2217 (Thomas, J., concurring in part and dissenting in part) ("After [*Seila Law*], the foundation for *Humphrey's Executor* is not just shaky. It is nonexistent.").

When read alongside recent Supreme Court precedent, neither *Humphrey's Executor* nor the Fifth Circuit's decision in *Consumers' Research* applies to NLRB Members. SpaceX is likely to succeed on its Board Member removal-protection claim.

### C.   The NLRB's provision of legal relief adjudicating private rights violates the Seventh Amendment.

Defendants do not deny that under the Board's *Thryv* decision—which is binding on the ALJ—the Board's "standard remedy" for the allegations in this case requires broad monetary relief "to compensate affected employees for all direct or foreseeable pecuniary harms that these employees suffer as a result of the [employer's] unfair labor practice." 372 N.L.R.B. No. 22, slip op. at 1; *see* PI Mot. 11–12. Yet they argue that any injury from the absence of a jury trial is "entirely speculative" because "no ALJ has recommended, nor has the Board ordered, any remedy, let alone the *Thryv*-type remedies on which SpaceX hangs its Seventh Amendment claims." PI Opp. 15. But there is nothing speculative about this claim.

SpaceX and Defendants know full well what remedies the General Counsel is seeking because the administrative complaint says: "all … relief as may be just and proper to remedy the unfair labor practices alleged." Dkt. No. 37-3, at 9. In unlawful-discharge cases, including the case against SpaceX, the Board's "standard remedy" now includes *Thryv* damages. 372 N.L.R.B. No. 22, slip op. at 6. The ALJ has no power to ignore *Thryv*, nor do Defendants claim otherwise.

The only possible question is whether the General Counsel's pursuit of compensatory monetary relief for employees' purported private injury likely constitutes a Seventh Amendment violation. The answer is yes. The Seventh Amendment guarantees that "[i]n Suits at common law,

where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. CONST. amend. VII. Defendants do not address, and therefore do not expressly contest, SpaceX's argument that "the NLRB proceeding against SpaceX involves claims that arise at common law within the meaning of *Jarkesy*[, 34 F.4th at 452,] and *Tull* [*v. United States*, 481 U.S. 412, 417 (1987)]." *See* PI Mot. 11; *see also* Dkt. No. 62-1 (PLF Amicus Br. 10–11) (explaining unfair labor practices sound in tort). Instead, Defendants make three claims: (1) this Court lacks jurisdiction to review the Seventh Amendment claim prior to the agency proceedings; (2) the Seventh Amendment is not a bar because the Board seeks to vindicate public rights; and (3) the *Thryv* remedies are incident to any equitable relief and permissible. None of these is correct.

**1. Jurisdiction.** Defendants make a cursory argument about *Axon*'s test for judicial review before the conclusion of agency adjudicatory proceedings, spending no more than one sentence on each *Axon* factor. Under *Axon*, in examining whether it can exercise jurisdiction, a court must evaluate (1) whether failing to consider the claim would foreclose "meaningful judicial review"; (2) whether the claim is "wholly collateral to the statute's review provisions"; and (3) whether the claim is "outside the agency's expertise." 598 U.S. at 185 (citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212–13 (1994)). Here, all three factors establish this Court has jurisdiction over SpaceX's Seventh Amendment claim.

Failing to consider the Seventh Amendment claim now would deprive SpaceX of meaningful judicial review. SpaceX suffers a "here-and-now" injury from being "subject[ed] to an unconstitutionally structured decisionmaking process," and that injury arises from "subjection to that process irrespective of its outcome, or of other decisions made within it." *Id.* at 191–92; *see also* PI Mot. 19. Contrary to Defendants' contention, SpaceX is mounting a structural challenge to the NLRB's procedures, not a statutory challenge to the NLRB's remedies. A Seventh Amendment

jury-trial right attaches before the start of a proceeding and regardless of whether any compensatory damages are in fact awarded through that trial. *See* U.S. CONST. amend. VII; FED. R. CIV. P. 38, 39 (setting forth procedures for preserving Seventh Amendment jury right before trial); *Solugen Inc. v. M3 Chem. Grp. LLC*, 529 F. Supp. 3d 685, 690 (S.D. Tex. 2021) (Eskridge, J.) (explaining the purpose of these rules is to protect the "fundamental right" to a jury). In this type of challenge, the question is who should sit as factfinder, regardless of the outcome or other decisions made in the case. *See Jarkesy*, 34 F.4th at 452 (the right is centered on the "jury [acting] as a fact-finding body" (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)).

The possibility that SpaceX could raise a Seventh Amendment complaint on a petition for review—were compensatory damages to be awarded—cannot remedy the Seventh Amendment injury now. This is the same scenario as *Axon*: if there is a right not to undergo the proceeding in the first place, regardless of the outcome, advance judicial review is appropriate because at least part of the right would be "effectively lost" if deferred until after trial. 598 U.S. at 191 ("Suppose a court of appeals agrees with Axon, on review of an adverse FTC decision, that ALJ-led proceedings violate the separation of powers. The court could of course vacate the FTC's order. But Axon's separation-of-powers claim is not about that order; indeed, Axon would have the same claim had it *won* before the agency."). With an ALJ, not a jury, as the factfinder, SpaceX would have the same Seventh Amendment claim—even if the NLRB finds no violation or awards no compensatory damages. SpaceX is entitled to a jury regardless of what the agency rules.

Defendants ignore SpaceX's authorities holding that loss of a jury right in administrative proceeding is a "here-and-now" injury warranting an injunction. *See* PI Mot. 19. For example, *Burgess v. FDIC*, 639 F. Supp. 3d 732, 749 (N.D. Tex. 2022), squarely held that a preliminary injunction should issue because loss of a jury trial right inflicts irreparable harm. And *Ward v.*

*Village of Monroeville*, 409 U.S. 57, 61–62 (1972), explained that when a party is entitled to a certain adjudicatory process in the first instance, a constitutionally infirm adjudicatory process cannot "be deemed constitutionally acceptable" simply because the government eventually offers that party a belated do-over that meets the constitutional requirements.

The second *Axon* factor—whether this claim is "wholly collateral" to the NLRB's review provisions, 598 U.S. at 186—also supports jurisdiction over SpaceX's Seventh Amendment claim. Defendants are wrong that SpaceX's "challenge goes only to how [the Board's] power would be wielded." PI Opp. 28. At this juncture, SpaceX is challenging the power of the Board "to proceed at all" when it offers no jury trial right or Article III decisionmaker. *Axon*, 598 U.S. at 192. SpaceX is not challenging a specific damages award. So, as in *Axon*, the collateralism factor favors review. *See id.* at 192–93.

Finally, SpaceX also meets the third factor, which is whether the claim is outside the agency's expertise. Much as in *Axon*, the Board here knows "nothing special about the [Seventh Amendment]." *Id.* at 194. Who sits as the factfinder in this case is an issue of "here-and-now harm" that "would remain no matter how much expertise could be 'brought to bear' on the other issues," *Id.* at 195. Whatever expertise the Board might have in fashioning remedies under 29 U.S.C. § 160(c), *see* PI Opp. 28–29, does not extend to the Constitution.

All three *Axon* factors favor review here. And even if not all three did, the factors on balance do. Thus, there is no question that this Court has jurisdiction to consider the Seventh Amendment claim.

**2. Public Rights.** Defendants contend that there is no Seventh Amendment problem because the NLRB proceeding involves "public rights" and they are acting to advance broader governmental policies. PI Opp. 29–30. Once again, Defendants' arguments conflict with the Fifth

Circuit's ruling in *Jarkesy*: the government cannot define public rights as any statutory rights enforced by an agency in an administrative proceeding. 34 F.4th at 457 ("Congress cannot change the nature of a right, thereby circumventing the Seventh Amendment, by simply giving the keys to the SEC to do the vindicating.").

Defendants rely heavily on *Jones & Laughlin*, 301 U.S. at 48–49. But that case does not address whether Board efforts to recover full compensatory damages for a private individual without a jury trial pass constitutional scrutiny. Defendants do not dispute that, when *Jones & Laughlin* was decided in 1937, the Board did not claim this power. In fact, just three years after *Jones & Laughlin*, the Supreme Court characterized the Board as a "public agent" precisely because the Board did not seek to give effect to a "private administrative remedy." *Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.*, 309 U.S. 261, 269 (1940). That is no longer true.

Defendants also cite *Curtis v. Loether*, 415 U.S. 189, 194–95 (1974). But that case likewise does not explain how this new assertion of power comports with the Seventh Amendment. Rather, *Curtis* says that "the Seventh Amendment is *generally* inapplicable in administrative proceedings." *Id.* at 194 (emphasis added). As *Jarkesy* explained, however, "Congress cannot convert any sort of action into a 'public right' simply by finding a public purpose for it and codifying it in federal statutory law." 34 F.4th at 456–57. Defendants do not explain how "making employees whole" through the monetary relief prescribed in *Thryv*, 372 N.L.R.B. No. 22, slip op. at 8, 10, 12, is a vindication of a public right. Nor can they, as this relief explicitly aims to remedy a private wrong. *See Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 573 (1990) (where the focus on the "wrong done the individual employee" and not the "public interest in effecting federal labor policy," a jury trial is required for the claim (citation omitted)).

Defendants therefore err in asserting (without support) that enforcing public rights "does

not turn on the type of relief at issue" and that SpaceX thus ignored the public rights doctrine from *Jones & Laughlin*. PI Opp. 30. SpaceX expressly argued that the Board is seeking to vindicate private rights rather than public rights. PI Mot. 1–2, 13–14. Defendants simply ignore—and never even discuss—the authorities SpaceX cited, including *Terry* and *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989).

Nor do Defendants address SpaceX's contention that compensatory damages are classic forms of "legal relief" that ordinarily require a jury trial. PI Mot. 12 (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993)). They offer no explanation how such monetary relief can remain on the "public rights" side of the line. They make no headway discussing the bygone era in which the NLRB did not claim this power. Logically, newly asserted agency powers require fresh constitutional analysis. *See* PI Mot. 13. Whether the Board acts to vindicate public rights when it seeks a classic form of legal relief—in the form of compensatory damages as a remedy for private individuals—is an open question for this Court. And Defendants have no answers.[3]

**3. Incidental to equitable relief.** *Thryv*'s monetary remedies are not simply incidental to equitable relief, as Defendants claim. Rather, they transgress the Supreme Court's observation that "Congress did not establish a general scheme authorizing the Board to award full compensatory damages for injuries caused by wrongful conduct." *Int'l Union, United Auto., Aircraft & Agric. Implement Workers of Am. (UAW-CIO) v. Russell*, 356 U.S. 634, 643 (1958). If "interest and late fees on credit cards" and "credit card debt," "penalties" based on early "retirement account" withdrawals, compensation for loss of a car or home, new or increased "transportation or childcare costs," and still other expenses can be classified as merely incidental to equitable relief, nothing

---

[3] This Court's decision in *Bell*, 2023 WL 8885128, at *5–6, does not assist Defendants. They do not disagree that *Bell* did not involve compensation sought for alleged pecuniary harms to the individual workers. *See* PI Opp. 29 n.170 (discussing *Bell*).

remains of the Constitution's limits on the NLRB's ability to adjudicate outside of Article III and without observing the Seventh Amendment. PI Mot. 11 (citing *Thryv*, 372 N.L.R.B. No. 22, slip op. at 9–10).

Defendants' cases do not support a contrary view. In *NLRB v. Strong*, 393 U.S. 357, 362 (1969), the Court did not address the Seventh Amendment at all. It merely upheld an award of fringe benefits that the employer would have paid under a contract had the employer not engaged in an unfair labor practice. Such a payment was akin to disgorging money unlawfully retained and thus a form of restitution. In *NLRB v. Miami Coca-Cola Bottling Co.*, 360 F.2d 569, 573, 575 (5th Cir. 1966), the court did not consider the Seventh Amendment either. It merely provided guidance on how to accurately calculate backpay. And finally, the statement in *Southern Tours, Inc. v. NLRB*, 401 F.2d 629, 633 (5th Cir. 1968), that the Board has the power to "restor[e] the situation as nearly as possible to that which would have obtained but for the illegal conduct" was made in the context of an order of reinstatement. Once again, there was no Seventh Amendment discussion. None of these cases suggests that the sweeping compensatory damages in *Thryv* are merely incidental to equitable relief.

In sum, the General Counsel is asking an ALJ, not a jury, to adjudicate a claim for *Thryv* compensatory damages to remedy private wrongs. The Board has crossed the line from public rights and equitable relief to private rights and legal relief. SpaceX has shown a likelihood of success that it is entitled to a jury trial in an Article III court.

### D. The NLRB Members' combination of prosecutorial and adjudicative roles against SpaceX violates the separation of powers and due process.

Based on the principles in *Williams v. Pennsylvania*, 579 U.S. 1 (2016), SpaceX argues that "[t]he Constitution does not permit the same agency officials to be both prosecutors and judges." PI Mot. 15. Defendants ignore this argument and instead address a different one: that "the

mere combination of prosecutorial and adjudicative functions in a *single agency* violates due process." PI Opp. 32 (emphasis added). The Court could address that broader argument but need not go so far. Here, Board Members' dual roles as prosecutors and adjudicators suffice to render the NLRB's proceedings structurally unconstitutional under existing Supreme Court doctrine.

Before they (briefly) address the merits, Defendants again assert that this Court lacks subject-matter jurisdiction. This assertion incorrectly presumes that it matters under *Axon* whether the constitutional violation occurs as "part of the Board's regular proceedings." PI Opp. 32. But what matters, instead, is that SpaceX "protest[s] the 'here-and-now' injury of subjection to an unconstitutionally structured decisionmaking process" and that a court of appeals' eventual review "would come too late to be meaningful." *Axon*, 589 U.S. at 191–92. This claim ripened when the NLRB Region indicated that it would "mak[e] a submission to the General Counsel's Injunction Litigation Branch about the appropriateness of Section 10(j) relief in this dispute." Dkt. No. 1 (Compl.) ¶ 128; *see, e.g.*, *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 932 (5th Cir. 2023) ("One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985)). Defendants' self-serving assertion that Section 10(j) proceedings are "quite rare" in general, PI Opp. 32 n.188, is irrelevant because they admit that such proceedings are already "being considered" against SpaceX *in this case*, Dkt. No. 29 (Mot. to Transfer), at 4, 11 n.59. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) (holding petitioners' pre-enforcement constitutional challenges were ripe where there was a history of past enforcement and a threat of future enforcement). And, notably, even in their PI Opposition they do not disclaim the possibility that a 10(j) proceeding may be authorized against SpaceX here.

On the merits, Defendants offer only a single sentence on the Supreme Court's decision in

*Williams*. They assert that the case "is easily distinguishable, given the nature of the facts and the far more substantive involvement of the prosecutor." PI Opp. 33. But the Court's ruling is a statement of general principle, not a narrow response to a particular set of facts: "The Court now holds that under the Due Process Clause there is an impermissible risk of actual bias when a judge earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case." *Williams*, 579 U.S. at 8. The rationale for this rule, which the Supreme Court articulated at length, applies with full force to Board Members who have previously authorized litigation seeking extraordinary, immediate injunctive relief against a charged party. And Defendants do not meaningfully argue otherwise. Just like the district-attorney-turned-judge in *Williams*, the Board Members cannot pivot from prosecutor to adjudicator in such a case. *See id.* at 9 ("The due process guarantee that 'no man can be a judge in his own case' would have little substance if it did not disqualify a former prosecutor from sitting in judgment of a prosecution in which he or she had made a critical decision.").

Defendants cite a series of off-point cases. For example, in *Illumina*, the plaintiff broadly claimed that an administrative agency—not any specific agency official—"violated [its] due process rights by serving as both prosecutor and judge." 88 F.4th at 1047. To be sure, several circuits have previously addressed due-process claims challenging the Board Members' dual roles. But no case considers the NLRB's 10(j) proceedings in light of the Supreme Court's recent guidance in *Williams*. *See* PI Opp. 33 (collecting cases issued between 1978 and 1998); *see also id.* at 17 n.90 (citing *Burnley v. Thompson*, 524 F.2d 1233 (5th Cir. 1975)). *Williams* provides authoritative guidance on how to apply *Withrow v. Larkin*, 421 U.S. 35 (1975)—the case on which Defendants' cited cases rely—in the scenario here. An adjudicator's "significant, personal involvement in a critical decision in [a defendant's] case [gives] rise to an unacceptable risk of

actual bias" that "so endanger[s] the appearance of neutrality that his participation in the case 'must be forbidden if the guarantee of due process is to be adequately implemented.'" *Williams*, 579 U.S. at 14 (quoting *Withrow*, 421 U.S. at 47). Surely Defendants can agree that it is important for the Board to have an appearance of neutrality as well.

## II.     SpaceX will suffer irreparable harm without a preliminary injunction.

### A.     The unconstitutionality of the NLRB proceedings inflicts irreparable harm.

This Court has already recognized that "[d]eprivation of a constitutional right 'unquestionably constitutes irreparable injury.'" *Bell*, 2023 WL 8885128, at *4 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Under Fifth Circuit precedent, that is enough for SpaceX to meet its burden. *See, e.g., Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (denial of constitutional rights "for even minimal periods of time constitutes irreparable injury"); *Missouri v. Biden*, 83 F.4th 350, 393 (5th Cir. 2023) (holding that deprivation of constitutional rights is sufficient to constitute irreparable harm), *cert. granted sub nom. Murthy v. Missouri*, 144 S. Ct. 7 (2023); 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (3d ed. 2023) (noting that where "deprivation of a constitutional right is involved, … most courts hold that no further showing of irreparable injury is necessary").

Defendants disregard this precedent and assert that "SpaceX does not allege the kind of constitutional injury that warrants injunctive relief." PI Opp. 7. They invoke a few out-of-circuit cases, but none involved challenges to ongoing unconstitutional agency proceedings. *See* PI Opp. 7 (citing *Siegel v. Lepore*, 234 F.3d 1163, 1178 (11th Cir. 2000) (en banc); *Pub. Serv. Co. of N.H. v. Town of W. Newbury*, 835 F.2d 380, 382 (1st Cir. 1987); *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 682 (7th Cir. 2012)). On the contrary, the injuries SpaceX asserts fall squarely within the sorts of constitutional injuries that support a claim for preliminary injunctive relief.

1.     **SpaceX is irreparably harmed by being subject to ongoing proceedings before unconstitutionally insulated decisionmakers.**

For SpaceX's removal-protection claim, the irreparable injury question is far simpler than Defendants make it seem. As this Court has recognized, *Axon* is clear that "[p]roceeding before 'an unaccountable ALJ' 'is a here-and-now injury' 'that is impossible to remedy once the proceeding is over.'" *Bell*, 2023 WL 8885128, at *2 (quoting *Axon*, 598 U.S. at 191). An appellate court "could of course vacate the [agency]'s order," but a "separation-of-powers claim" challenging unconstitutional removal protections "is not about that order." *Axon*, 598 U.S. at 191. Here, as in *Axon*, unless a preliminary injunction is granted, SpaceX will be subject to a proceeding before an unaccountable ALJ and unaccountable Board Members.

Defendants attempt to distinguish *Axon* as a case that dealt only with subject-matter jurisdiction and not the requirements for an injunction, and they cite out-of-circuit district court rulings distinguishing *Axon* on this basis. PI Opp. 8 (citing *Leachco, Inc. v. CPSC*, No. 22-cv-232, 2023 WL 4934989, at *2 (E.D. Okla. Aug. 2, 2023); *Kim v. FINRA*, No. 23-cv-2420, 2023 WL 6538544, at *13 & n.19 (D.D.C. Oct. 6, 2023)). But this attempt to narrow *Axon* makes no sense. *Axon* states that for jurisdictional purposes, the exact injury alleged here counts as a legally cognizable injury that is impossible to remedy later. What more could be needed to identify an irreparable injury?

This Court has already rejected that narrow reading of *Axon*, consistent with Fifth Circuit precedent on irreparable harm in constitutional cases. *Bell*, 2023 WL 8885128, at *2 (citing *Axon* and stating that "if Plaintiff can show that OCAHO ALJs are unconstitutionally insulated from removal, Plaintiff will be harmed by having to proceed before an unaccountable ALJ"); *see also Cochran v. SEC*, 20 F.4th 194, 212–13 (5th Cir. 2021) (en banc) (if removal claim is "meritorious," plaintiff should not be "forc[ed] to litigate before an ALJ who is unconstitutionally insulated from

19

presidential control"), *aff'd and remanded sub nom. Axon*, 598 U.S. at 175; *Alpine Sec. Corp. v. FINRA*, No. 23-5129, 2023 WL 4703307, at *3 (D.C. Cir. July 5, 2023) (Walker, J., concurring) (finding an injunction of an administrative adjudication pending appeal appropriate under *Axon* because the plaintiff was likely to prevail on claim that officers were unlawfully "shielded from removal").[4] Indeed, *Bell*'s discussion of irreparable harm draws directly from *Axon*'s discussion of jurisdiction over an ALJ removal-protection claim—precisely the sort of claim at issue in Count I here. *Bell*, 2023 WL 8885128, at *4 ("Plaintiff is being subjected 'to unconstitutional agency authority,' which 'is impossible to remedy once the proceeding is over.'" (quoting *Axon*, 598 U.S. at 191)); *see Axon*, 598 U.S. at 191 (endorsing challengers' theory that "'being subjected' to 'unconstitutional agency authority'—a 'proceeding by an unaccountable ALJ' and "unconstitutionally insulated ALJ"—"is impossible to remedy once the proceeding is over" (citations omitted)).

Defendants protest that "[r]eading *Axon* to require a preliminary injunction any time a party challenges administrative proceedings on constitutional grounds would not only disrupt timely law-enforcement efforts by federal agencies across the government, but also overwhelm the courts with preliminary injunction requests." PI Opp. 8. This concern is misplaced, because a litigant must also show a likelihood of success on the merits of its constitutional challenge. And if the litigant can do that, the government has no legitimate objection. The fact that *many* litigants may be able to establish that an arm of the government is subjecting them to unconstitutional agency proceedings is hardly a reason to let the government get away with it. On the contrary, *Axon* recognizes that a party in administrative proceedings before an unconstitutionally insulated

---

[4] Defendants brush aside Judge Walker's statement in *Alpine* as a solo opinion confined to the facts of that case. PI Opp. 10 n.60. But Judge Walker's concurrence is one of the only opinions on *Axon* by a circuit judge, and the statement applies just as well here.

decisionmaker will experience injury that cannot be repaired later and that it is within the particular expertise of the courts to redress such claims. *Axon*, 598 U.S. at 194–95.

Next, Defendants attempt to add to SpaceX's burden by demanding proof of: "(1) a substantiated desire by the President to remove the unconstitutionally insulated actor; (2) a perceived inability to remove the actor due to the infirm provision; and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor." PI Opp. 9 (quoting *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022) ("*CFSA*")). But *CFSA* is inapplicable. It addresses the requirements for invalidating or enjoining enforcement of an agency rule issued by officials who were unconstitutionally shielded from presidential oversight. *See CFSA*, 51 F.4th at 631–32. As the en banc Fifth Circuit has explained, the case on which *CFSA* relied—*Collins v. Yellen*, 141 S. Ct. 1761 (2021)—does not apply where the constitutional claimant "does not seek to 'void' the acts of any [administrative] official" but instead "seeks an administrative adjudication untainted by separation-of-powers violations." *Cochran*, 20 F.4th at 210 n.16. None of the appellate cases Defendants cite on this point require such a heightened showing under *Collins* to obtain relief from ongoing unconstitutionally structured proceedings.

Defendants' failure to identify applicable precedent is not surprising. The Supreme Court has clearly explained that litigants subjected to proceedings before unconstitutionally insulated agency officers "are entitled to declaratory relief sufficient to ensure that the [administrative] requirements and … standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513. The Fifth Circuit recently reiterated the propriety of such relief, without the heightened showing that Defendants demand. *Consumers' Rsch.*, 91 F.4th at 351 ("In a suit seeking to vindicate the President's removal power … , the plaintiff is entitled to declaratory relief sufficient to ensure that the requirements

and standards to which it is subject will be enforced only by a constitutional agency accountable to the Executive." (citation and alterations omitted)); *see also Consumers' Rsch. v. CPSC*, 592 F. Supp. 3d 568, 587 (E.D. Tex. 2022) (finding that *Free Enterprise Fund*, not *Collins*, controls removal-protection claims in declaratory judgment action), *rev'd on other grounds*, 91 F.4th 342.

The same reasoning extends to preliminary injunctive relief, at least until the Court can issue a final judgment. Defendants do not contest that a preliminary injunction is the only tool available at this juncture because there is no such thing as a preliminary declaration. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("prior to final judgment there is no established declaratory remedy comparable to a preliminary injunction; unless preliminary relief is available upon a proper showing, plaintiffs in some situations may suffer unnecessary and substantial irreparable harm"). A preliminary injunction is necessary to preserve the status quo and protect the Court's ability to later provide meaningful permanent relief. *Id.*; *see also Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997) ("Preliminary injunctions commonly favor the status quo and seek to maintain things in their initial condition so far as possible until after a full hearing permits final relief to be fashioned."); *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 627 (5th Cir. 1985) ("The purpose of a preliminary injunction is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits.").

Rather than grapple with the overwhelming Supreme Court and Fifth Circuit precedent, Defendants rely on several out-of-circuit cases. *See* PI Opp. 10 (citing *Care One, LLC v. NLRB*, 2023 WL 6457641, at *3–4 (D. Conn. Oct. 4, 2023); *Leachco*, 2023 WL 4934989, at *2; *Burgess*, 639 F. Supp. 3d at 747). *Care One* denied the preliminary injunction out of express disagreement with the Fifth Circuit's holding in *Jarkesy*. 2023 WL 6457641, at *3–4. Obviously, this Court cannot decline to follow that Fifth Circuit precedent. *Leachco*'s analysis of ALJs' removal

protections is similarly incompatible with *Jarkesy*'s, 2023 WL 4934989, at *2 & n.2, and as already discussed its attempt to confine *Axon* to questions of jurisdiction is unpersuasive and contrary to this Court's opinion in *Bell*. Finally, *Burgess*'s discussion of the removal-protection claim hinged on likelihood of success, and it overlooked *Free Enterprise Fund*'s holding that litigants raising this sort of claim are entitled to declaratory relief (without *Collins*'s heightened showing). *See* 639 F. Supp. 3d at 749. As noted, the Fifth Circuit just reaffirmed that conclusion in *Consumers' Research*. So *Burgess* cannot help Defendants here.

Without injunctive relief, SpaceX will be required to go through an unconstitutionally structured proceeding and will have no way to remedy that here-and-now constitutional injury in later proceedings. Accordingly, it has demonstrated irreparable injury.

> **2.    SpaceX will be irreparably harmed if it is deprived of it Seventh Amendment jury right.**

As addressed above, Defendants entirely neglect SpaceX's authority explaining why the harm of having to undergo trial before an unconstitutional factfinder is not reparable after-the-fact. *See Burgess*, 639 F. Supp. 3d at 749 ("Since the Court has determined that Plaintiff was entitled under the Seventh Amendment to a jury trial, the irreparable injury requirement is automatically satisfied without the need to consider Plaintiff's particular showings of irreparable harm."); *Ward*, 409 U.S. at 61–62 ("Petitioner is entitled to a neutral and detached judge in the first instance.").

Perhaps recognizing this, Defendants suggest that the scope of an injunction should only limit the Board and General Counsel from pursuing *Thryv* compensatory remedies. PI Opp. 16. But like the question of severability, PI Mot. 22–23, the scope of available ultimate relief is not the same question as what relief should issue preliminarily. Where SpaceX has shown a likelihood of success on the merits and irreparable harm, a preliminary injunction should issue while the parties litigate the scope of any permanent injunctive or declaratory relief.

###### 3. The NLRB Members' combination of prosecutorial and adjudicative roles irreparably harms SpaceX.

Defendants do not dispute that a violation of SpaceX's due-process rights, if shown, would harm SpaceX. Nor do they dispute that SpaceX would be entitled to relief for such an ongoing due-process violation. Instead, they primarily argue that SpaceX is not entitled to relief because "[i]ts theory of harm rests on a series of hypothetical occurrences." PI Opp. 16. But as SpaceX has explained, those occurrences are not purely hypothetical. The NLRB has already begun the process of seeking the Board's Section 10(j) approval. *See* Compl. ¶ 128; Mot. to Transfer 4, 11 n.59. Defendants make three additional arguments, but none undermines the irreparable harm SpaceX will suffer if the NLRB continues to pursue the threatened Section 10(j) injunctive relief.

First, Defendants assert that "Board members authorizing Section 10(j) litigation act to preserve the Board's ability to later order an effective remedy, not to prosecute the case on the merits." PI Opp. 17. The Board's motives are irrelevant; the standard for this claim is purely objective. *See Williams*, 579 U.S. at 4, 8–9. The Fifth Circuit has squarely held, moreover, that "the decision whether to pursue § 10(j) relief" is "prosecutorial in nature," not "adjudicatory." *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010).

Second, Defendants suggest that SpaceX should be "required to exhaust administrative remedies before bringing its claims to federal court." PI Opp. 17. That argument is a nonstarter when, as here, all three *Axon* requirements are satisfied. *See* 598 S. Ct. at 190–96.

Finally, Defendants contend that the deprivation of SpaceX's due-process rights can be "properly remedied by more process rather than an injunction." PI Opp. 17. But they fail to say how. Once the Board Members engage in prosecutorial decisionmaking that requires their recusal from adjudication, more process before those actors would compound the injury, not relieve it.

**B.      The unconstitutional NLRB proceedings inflict irreparable economic and reputational harm.**

SpaceX has also demonstrated several concrete harms that the ongoing NLRB proceedings have, and will, cause it to suffer. *See* PI Mot. 20–21 (citing Dkt. No. 37-1 (Gallman Decl.) ¶¶ 13–23). These harms are ongoing. SpaceX and its personnel are currently involved in preparation for the upcoming administrative hearing. Dkt. No. 64-8 (Harper Decl.) ¶ 14. SpaceX is actively engaged in motion practice before the Board as to its jurisdiction over the matter and the timing of any eventual hearing. SpaceX has answered the administrative complaint. On February 1 and February 7, 2024, mere weeks before the hearing's scheduled start, the Charging Parties and NLRB General Counsel each served a subpoena duces tecum, which together cover over 145 document requests and seek extraordinarily broad and largely irrelevant discovery to be conducted over a three-week window before the hearing. Johnson Decl., ¶¶ 6, 8. SpaceX has filed a petition to revoke the Charging Parties' subpoena and has another petition regarding the General Counsel's subpoena forthcoming; but complying would impose heavy burdens and costs on SpaceX. Johnson Decl., ¶¶ 7, 9-10; *see also* Gallman Decl., ¶¶ 13–14, 17; Harper Decl., ¶¶ 10–14.

Defendants claim that the Court should disregard these harms because they are the "burdens of litigation." PI Opp. 18. But this is not ordinary litigation. It is an administrative proceeding before an unconstitutionally insulated ALJ and Board Members, where SpaceX will also be denied its right to a jury trial and be prosecuted by the same entity that will ultimately adjudicate its case. SpaceX "challenges the entire legitimacy of [the] proceedings, not simply the cost and annoyance." *Cochran*, 20 F.4th at 209–10 (disagreeing with the government that plaintiff complained only about "mere litigation expense[s]"). The additional harms SpaceX has identified merely underscore the concrete ways that this illegitimate proceeding has and will continue to injure SpaceX absent an injunction. *See* Gallman Decl., ¶¶ 17, 20 (describing burdens the NLRB

proceeding is having on SpaceX's time and resources); Harper Decl., ¶¶ 12–14. This case is unlike the cases Defendants cite, where plaintiffs were not challenging the litigation itself as illegitimate.[5]

Defendants' attempt to rebut SpaceX's demonstration of reputational harm also fails. The Fifth Circuit has held that where the harm to reputation stems from constitutionally infirm proceedings, reputational harm from those proceedings is irreparable. *See Burgess v. FDIC*, 871 F.3d 297, 304 (5th Cir. 2017) (holding that a "decision pursuant to a constitutionally infirm hearing that injured petitioner's reputation" was "sufficient to satisfy irreparable injury" (quoting *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997)). The ongoing NLRB proceedings do just that, falsely accusing SpaceX of unfair labor practices and making it more difficult for SpaceX to compete in the competitive market for talent. Gallman Decl., ¶¶ 21–23. The fact that Defendants have left SpaceX no choice but "filing this lawsuit" (PI Opp. 18) merely adds to the injury. It does not make the injury one that SpaceX inflicted on itself. The constitutional, monetary, and reputational harms that SpaceX has identified are more than enough to show irreparable harm.

## III. The balance of harms and public interest favor a preliminary injunction.

The final two preliminary injunction factors tilt strongly in favor of SpaceX. Contrary to Defendants' contentions, Fifth Circuit precedent is clear that the government will suffer "no harm whatsoever" by being unable to continue unconstitutional proceedings. *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (government does not suffer any harm from inability to enforce an "an unlawful (and likely unconstitutional)" regulation); *see also League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (government suffers no cognizable harm

---

[5] Contrary to Defendants' assertion (at 18), *Axon* did not reject the idea that these harms constitute irreparable injury. The Supreme Court simply held that litigation costs, standing alone, were not enough to demonstrate the harm required for jurisdiction. 598 U.S. at 192. Where, as here, those costs were coupled with the unconstitutionality of the ongoing proceeding, *Axon* demonstrates that irreparable harm exists. *Id.*

from stopping "the perpetuation of unlawful agency action"). And an injunction would not "disserve the public interest," *Louisiana v. Biden*, 55 F.4th 1017, 1022 (5th Cir. 2022), because it is not in the public interest to allow the NLRB to resort to unconstitutional proceedings.

Defendants claim that "[t]he standard burdens of administrative litigation cannot justify an injunction that would preclude the public's strong interest in enforcing the federal labor laws." PI Opp. 34 (citation omitted). But that claim ignores that SpaceX has demonstrated harm beyond burdens of administrative litigation. And it ignores that there is no governmental interest in continuing unlawful agency action. *BST Holdings*, 17 F.4th at 61.[6]

Moreover, the request before the Court is for a preliminary injunction. The Court could (but should not) eventually rule that the enforcement proceedings may continue. Defendants have pointed to no prejudice that it would suffer were that to happen. The NLRB waited over a year— November 16, 2022 until January 3, 2024—to file a complaint on charges related to June 2022 events. Dkt. No. 1, Compl. ¶¶ 47–50. If Defendants' general "enforcement" concerns were enough to outweigh SpaceX's ability to vindicate its constitutional rights, no aggrieved party could ever obtain a preliminary injunction, because the government always has this abstract interest.

Defendants also suggest that granting the injunction "would burden the already busy federal courts." PI Opp. 34. Once again, Defendants are fighting *Axon*. The Supreme Court recognized that structural constitutional claims like SpaceX's are within federal courts' particular expertise, as they are "standard questions of administrative and constitutional law, detached from

---

[6] The cases Defendants cite involve markedly different circumstances. Some involve heightened national interests in voting and national security, which are not present here. *See Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451, 459 (5th Cir. 2016) (national defense); *League of United Latin Am. Citizens v. Abbott*, 601 F. Supp. 3d 147, 184 (W.D. Tex. 2022) (voting), *appeal dismissed sub nom. Brooks v. Abbott*, 143 S. Ct. 441 (2022). Others involve government requests to stay an injunction against a law's operation. *See Tex. All. for Retired Ams. v. Hughs,* 976 F.3d 564, 569 (5th Cir. 2020).

considerations of agency policy." 598 U.S. at 194 (citation omitted). Contrary to the NLRB's contention, "agency adjudications are generally ill suited to address structural constitutional challenges." *Carr v. Saul*, 141 S. Ct. 1352, 1360 (2021). If others wish to bring valid constitutional claims against the NLRB, the public interest is served by the courts providing all appropriate relief.

Because Defendants cannot show harms that come close to outweighing SpaceX's interest in vindicating its constitutional rights, and because the public interest supports preserving the separation of powers, SpaceX satisfies the final two requirements for a preliminary injunction.

## IV.   Severability arguments cannot defeat SpaceX's right to a preliminary injunction.

As anticipated, Defendants argue that SpaceX is not entitled to a preliminary injunction on its removal-protection claims on the theory that "severing any statutory removal restrictions found to be unconstitutional would be the appropriate remedy, not enjoining the Agency's operations." PI Opp. 11. But as SpaceX showed in its opening brief, this argument conflates preliminary and permanent relief. Even if it were proper at final judgment to sever one or more unconstitutional removal protections, that does not undermine SpaceX's entitlement to a preliminary injunction now. Both the Fifth Circuit and the Supreme Court have recognized that a preliminary injunction can be appropriate to preserve the status quo until the merits of a constitutional challenge are resolved. *See Doran*, 422 U.S. at 931; *Wenner*, 123 F.3d at 326. Defendants barely touch on this argument, except for trying to dismiss *Doran* as a case where the plaintiffs showed irreparable harm. PI Opp. 14 n.79. For the reasons discussed above in Section II, SpaceX has shown that, too.

Moreover, Defendants offer no response to SpaceX's observation that a future declaratory judgment in SpaceX's favor does nothing to alleviate SpaceX's current irreparable harm. Because the Court can only grant this declaratory relief at final judgment, in the interim SpaceX will continue to be subject to the "here-and-now injury" stemming from an unconstitutional administrative proceeding. *Axon*, 598 U.S. at 191. Defendants' argument threatens "the court's

ability to render a meaningful decision on the merits." *Miss. Power*, 760 F.2d at 627.

And even if severability were relevant at this juncture, this case presents a more much difficult severability issue than those in *Free Enterprise Fund*, *Seila Law*, and *Bell*. Indeed, Defendants' own severance proposal would not fix the constitutional problems. Defendants suggest the court could solve the ALJs' removal-protection problem by "sever[ing] the second half of the sentence in § 7521(a) after 'good cause,' as to the ALJ presiding over SpaceX's case." PI Opp. 12. But that would still leave the ALJ with two layers of removal protection, because they would still be removable "by the agency in which the [ALJ] is employed [*i.e.*, the NLRB] only for good cause." 5 U.S.C. § 7521(a). All this severing would do is remove the MSPB from the decision-making process, still leaving two layers of for-cause removal protection. That is one way this case differs markedly from *Bell*. There, it was clear that severing the ALJ's removal protection would leave the ALJ subject to oversight by an officer, the Attorney General, who was removable at will. *Bell*, 2023 WL 8885128, at *5. Here, there are three layers of removal protection, and it is far from clear which one(s) Congress would have wanted a court to sacrifice.

On this question of congressional intent, SpaceX presented substantial evidence that Congress was substantially concerned about the independence of both ALJs and the Board. PI Mot. 24–25. Without directly addressing this evidence, Defendants acknowledge "that Congress's goal of ALJ and Board independence is a consideration in the severance analysis here." PI Opp. 13. But they say "[t]he fact that the NLRA does not require the use of ALJs at all suggests that Congress would prefer severance of ALJs' removal protections over nonenforcement of the NLRA." *Id*. at 14. Defendants present a false dichotomy. Another live possibility—and potentially necessary additional step—is severing the NLRB Members' removal protections. And Defendants give no reason to think that Congress would have wanted the NLRA to remain enforceable by an

agency that is wholly accountable to the President. Congress established the Board to replace a precursor, the National Labor Board, which was directly accountable to the President. *See* Michael J. Heilman, *The National Labor Relations Act at Fifty: Roots Revisited, Heart Rediscovered*, 23 DUQ. L. REV. 1059, 1069 (1985). Were the Court to sever the Board Members' removal protections, it would make the current Board much more similar in this respect to the National Labor Board that Congress specifically established the NLRB to replace. This statutory backdrop differs significantly from *Seila Law*, where there was no similar history of a prior version of the CFPB that had been replaced by the newer version being challenged. *See* 140 S. Ct. at 2210.

Ultimately, the complex severance issues in this case demonstrate that the decision on how to address them should be left to Congress. *United States v. Nat'l Treas. Emps. Union*, 513 U.S. 454, 479 (1995) (acknowledging the "obligation to avoid judicial legislation"). At a minimum, those issues should be considered after the Court has had a full opportunity for briefing on severability as part of the final remedy at the end of this case. They present no obstacle to granting preliminary relief now to maintain the status quo and preserve the Court's ability to provide a meaningful final remedy. Preliminary relief is necessary to prevent the constitutional injury SpaceX faces in having to undergo unconstitutionally structured proceedings. The Court can, and should, enter that preliminary relief here.

## CONCLUSION

For all these reasons, the Court should enter a preliminary injunction against the NLRB's administrative proceedings against SpaceX.

Dated: February 12, 2024

Respectfully submitted,

By:     *s/ Catherine L. Eschbach*

**ROERIG, OLIVEIRA & FISHER, L.L.P.**
David G. Oliveira
10225 N. Tenth Street
McAllen, TX 78504
doliveira@rofllp.com
(956) 393-6300

**MORGAN, LEWIS & BOCKIUS LLP**
Catherine L. Eschbach
Attorney-In-Charge
Texas Bar No. 24097665
Southern District of Texas Bar No. 3846447
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5006
catherine.eschbach@morganlewis.com
(713) 890-5719

Harry I. Johnson, III (*pro hac vice*)
2049 Century Park East, Suite 700
Los Angeles, CA 90067-3109
harry.johnson@morganlewis.com
(310) 907-1000

Michael E. Kenneally (*pro hac vice*)
Amanda L. Salz (*pro hac vice*)
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004-2541
michael.kenneally@morganlewis.com
amanda.salz@morganlewis.com
(202) 739-3000

*Attorneys for Plaintiff*
*Space Exploration Technologies Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 12, 2024, I electronically filed the foregoing with the

Clerk of the Court using the ECF system, which will send notification to all parties of record.

<u>*s/ Catherine L. Eschbach*</u>
Catherine L. Eschbach